Michael Burshteyn (SBN 295320)
Marcelo Barros (SBN 339069)
**GREENBERG TRAURIG, LLP**
101 Second Street, Suite 2200
San Francisco, California 94105-3668
Telephone: 415.655.1300
michael.burshteyn@gtlaw.com
marcelo.barros@gtlaw.com

Vincent H. Chieffo (SBN 49069)
Nina D. Boyajian (SBN 246415)
**GREENBERG TRAURIG, LLP**
1840 Century Park East, Suite 1900
Los Angeles, CA 90067-2121
Telephone: 310.586.7700
chieffov@gtlaw.com
nina.boyajian@gtlaw.com

Additional Counsel On Following Page

*Attorneys for Defendant,*
KOI SECURITY INC.

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MEETINGTV INC.,<br><br>Plaintiff,<br><br>v.<br><br>KOI SECURITY INC.; KOI SECURITY LTD.; AMIT ASSARAF; IDAN DARDIKMAN; TUVAL ADMONI; GAL HACHAMOV; and DOES 1 – 10, Inclusive,<br>Defendants. | Case No. 3:26-cv-01705-AJB-MMP<br><br>Judge: Hon. Anthony J. Battaglia<br><br>**KOI SECURITY INC.'S NOTICE OF MOTIONS AND [1] MOTION TO DISMISS COMPLAINT PURSUANT TO FED. R. CIV. P. 8, 12(b)(2) and 12(b)(6), AND [2] SPECIAL MOTION TO STRIKE PURSUANT TO CCP § 425.16; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date: August 13, 2026<br>Time: 10:00 a.m.<br><br>Action Filed:  March 18, 2026<br>Trial Date:    Not set |

ACTIVE 722818961

Peter Wahby (*pro hac vice forthcoming*)
Holmes Hampton (*pro hac vice forthcoming*)
**GREENBERG TRAURIG, LLP**
2200 Ross Avenue, Suite 5200
Dallas, TX 75201
Telephone: 214.665.3667
peter.wahby@gtlaw.com
holmes.hampton@gtlaw.com

Candra Connelly (*pro hac vice pending*)
**GREENBERG TRAURIG, LLP**
10260 SW Greenburg Road, Suite 400
Portland, OR 97223
Telephone: 503.200.6200
Candra.Connelly@gtlaw.com

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD.**

**PLEASE TAKE NOTICE** that, on August 13, 2026, at 10:00 a.m., or as soon thereafter as the matter may be heard, before the Honorable Anthony J. Battaglia, United States District Judge for the Southern District of California, located in Courtroom 4A at the Edward J. Schwartz United States Courthouse, 221 West Broadway, San Diego, CA 92101, Defendant Koi Security Inc. ("Koi Corp.") will, and hereby does, move the Court: (1) to dismiss the Complaint pursuant to Fed. R. Civ. P. 8, 12(b)(2), and 12(b)(6); and (2) to strike the Complaint and to award Defendant Koi Corp. its reasonable attorneys' fees and costs per California Code of Civil Procedure § 425.16.

As set forth in the accompanying memorandum of law, dismissal under Rule 12(b)(2) is warranted because Koi Corp. is a Delaware corporation with no relevant ties to California.

Dismissal under Rule 8 is warranted because Plaintiff's 137-page, 680-plus-paragraph Complaint is an incomprehensible shotgun pleading that fails the "short and plain statement" requirement. It also improperly groups the Defendants, such that Koi Corp. is unable to discern which allegations are directed at which defendant.

Dismissal under Rule 12(b)(6) is warranted because Plaintiff fails to state a claim on each of its seven counts:

(i) The defamation claim fails as a matter of law for multiple reasons. *First*, the Complaint cannot plausibly allege that the report at issue regarding DarkSpectre (the "Report") states or implies that MeetingTV **is** the DarkSpectre threat actor or is acting in concert with it. The Report explicitly attributes the threat actor to a "well-resourced Chinese operation[.]" (Compl. ¶ 251.) It simply identifies some of Plaintiff's domain names and browser extensions as technical artifacts observed during investigations, alongside numerous other domains, IP addresses, extension identifiers, and account handles. *Second*, the Report's attribution is non-actionable analytical opinion protected by the First Amendment. *Third*, the Complaint fails to

i

ACTIVE 722818961

plead (because it cannot) the requisite degree of fault, plausible falsity, or causation;

(ii) The trade libel claim is derivative of the defamation claims and fails for the same reasons. Further, the Complaint fails to allege that the Report disparages MeetingTV's product quality. The Complaint fails to plead special damages required for a trade libel claim as well;

(iii) The intentional and negligent interference claims are derivative, barred by the First Amendment, and fail due to the same truth and causation flaws;

(iv) The civil conspiracy claim is not a standalone cause of action under California law;

(v) The UCL § 17200 claim fails because it too is derivative; and

(vi) The Lanham Act § 43(a) claim fails because the Report is not a "commercial advertising or promotion" as required by the statute, because Koi Corp. and MeetingTV are not competitors, and because MeetingTV cannot establish proximate causation under *Lexmark*.

Dismissal and striking of the Complaint is further warranted under California's anti-SLAPP statute, Cal. Code Civ. Proc. § 425.16. Because the speech Plaintiff complains of is constitutionally protected speech on a matter of public concern—security research—the first anti-SLAPP prong is satisfied. The burden then shifts to Plaintiff, who will not be able to show a probability of success on the merits given the multitude of deficiencies with respect to whether the alleged statements at issue are capable of being defamatory, as well as the problems with respect to opinion and causation identified in the 12(b)(6) analysis.

This Motion is based on this Notice of Motion, the accompanying Memorandum of Points and Authorities, the concurrently filed Declaration of Amit Assaraf, the pleadings and records on file in this Action, Koi Corp.'s Request for Judicial Notice, and such further argument and evidence as may be presented at the hearing on this motion.

This Motion is made following the conference of counsel that took place on April 21, 2026. During that conference, counsel for Koi Corp. raised the grounds for the motion

KOI SECURITY INC.'S MOTION TO DISMISS AND ANTI-SLAPP MOTION TO STRIKE

ACTIVE 722818961

and suggested that Plaintiff amend the Complaint to make it comprehensible.  Plaintiff has declined to do so, necessitating this motion.


Dated: April 28, 2026

By: ___/s/ Michael Burshteyn___

Michael Burshteyn
Marcelo Barros
Vincent H. Chieffo
Nina D. Boyajian
Peter Wahby (*pro hac vice forthcoming*)
Holmes Hampton (*pro hac vice forthcoming*)
Candra Connelly (*pro hac vice pending*)

**GREENBERG TRAURIG, LLP**
*Attorneys for Defendant*
*KOI SECURITY INC.*

KOI SECURITY INC.'S MOTION TO DISMISS AND ANTI-SLAPP MOTION TO STRIKE

ACTIVE 722818961

# TABLE OF CONTENTS

**Page(s)**

I.      INTRODUCTION .................................................................................................1

II.     FACTUAL BACKGROUND.............................................................................4

    A.      The Parties...................................................................................................4

    B.      Multiple Other Parties Uninvolved in this Litigation Flagged MeetingTV's Domains Months Before the Report's Publication................5

    C.      The Report at Issue Attributes the DarkSpectre Campaign to a Chinese Threat Actor—Not MeetingTV...................................................6

    D.      Based on MeetingTV's Representations, Koi Ltd. in Good Faith Supplemented its Report ...........................................................................7

III.    LEGAL STANDARD .........................................................................................8

IV.     ARGUMENT .......................................................................................................9

    A.      The Court Lacks Personal Jurisdiction Over Defendant Koi Corp..............9

        1.      Koi Corp. Is Not Subject to General Jurisdiction in California.......10

        2.      Koi Corp. Is Not Subject to Specific Jurisdiction in California ......10

    B.      Rule 8 Requires Dismissal Because the Complaint is an Incomprehensible Mess.............................................................................14

    C.      The Complaint Fails To State Any Claim Under Rule 12(b)(6)................15

        1.      Multiple Overarching Defects Infect All of Plaintiff's Claims .......15

            a.      Plaintiff Cannot Allege the Report is "Of and Concerning" MeetingTV Because It Does Not Identify MeetingTV as the Threat Actor...............................................15

            b.      The Report is Protected Opinion .........................................16

            c.      The Complaint On its Face Defeats Causation ....................18

            d.      Plaintiff Fails to Plead Actual Malice .................................19

        2.      The Complaint Fails to State a Claim For Defamation Per Se (Count I)..........................................................................................21

        3.      The Complaint Fails to State a Claim For Trade Libel (Count II)..............................................................................................21

iv

4.  The Complaint Fails to State a Claim for Either Intentional or Negligent Interference with Prospective Economic Advantage (Counts III and IV).................................................23

5.  The Complaint Fails to State a Claim For Civil Conspiracy (Count V) ..............................................................25

6.  The Complaint Fails to State a Claim For Violations of California's Unfair Competition Law (UCL) (Count VI) ...............26

7.  The Complaint Fails to State a Claim For False Advertisement Under the Lanham Act (Count VII)...................................28

    a.  The Report Is Outside The Scope of the Lanham Act Because It Is Not Commercial Speech ................................28

D.  California's Anti-SLAPP law mandates dismissal because the Complaint is an attempt to chill constitutionally protected speech and there is no probability of prevailing ..........................................29

1.  California's anti-SLAPP statute applies broadly in federal court....................................................................30

2.  The Complaint targets allegations at protected activity under the anti-SLAPP statute.................................................32

3.  Plaintiff cannot satisfy the requirement that it will prevail on the merits, even looking only to the Complaint and judicially noticeable facts...................................................34

E.  Plaintiff's Demand for Injunctive Relief is an Improper Prior Restraint .......................................................34

V.  CONCLUSION..................................................35

v

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Alfus v. Pyramid Tech. Corp.*,
764 F. Supp. 598 (N.D. Cal. 1991)................................................................26

*Anthem Blue Cross Life & Health Ins. Co. v. Halomd LLC*,
No. 25-CV-01467, 2026 U.S. Dist. LEXIS 79243 (C.D. Cal. Apr. 9, 2026) ................................................................................................................32

*Aquilina v. Certain Underwriters at Lloyd's Syndicate #2003*,
406 F. Supp. 3d 884 (D. Hawaii 2019) ("The Complaint . . . uses impermissible group pleading, which violates . . . Rule 8(a)")................14

*Ariix, LLC v. NutriSearch Corp.*,
985 F.3d 1107 (9th Cir. 2021) ................................................................28, 29

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)................................................................................18

*Automated Pet Care Prods., LLC v. PurLife Brands, Inc.*,
703 F. Supp. 3d 1022 (N.D. Cal. 2023) (Pitts, J.) ....................................28

*Axiom Foods, Inc. v. Acerchem Int'l, Inc.*,
874 F.3d 1064 (9th Cir. 2017) ................................................................12

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)................................................................................18

*Boehm v. Airbus Helicopters Incorporated*,
527 F.Supp.3d 1112 (D. Ariz. 2020) ......................................................12

*Boschetto v. Hansing*,
539 F.3d 1011 (9th Cir. 2008) ................................................................10

*Bowen v. YouTube, Inc.*,
2008 WL 1757578 (W.D. Wash. Apr. 15, 2008) ..................................13

*Briskin v. Shopify, Inc.*,
135 F.4th 739 (9th Cir. 2025) ................................................................11

*Calder v. Jones*,
465 U.S. 783 (1984).................................................................................12

*Chancy v. Fossil Grp., Inc.*,
No. 25-cv-1566-AJB-DEB, 2025 U.S. Dist. LEXIS 229665 (S.D. Cal. Nov. 21, 2025) ..................................................................................27, 28

*Chapman v. Journal Concepts, Inc.*,
No. 07-00002 JMS/LEK, 2008 U.S. Dist. LEXIS 104448, at *58 (D. Haw. Dec. 24, 2008) ...........................................................................22

*Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.*,
173 F.3d 725 (9th Cir. 1999) ..............................................................i, 11

*Crosby v. Bradstreet Co.*,
312 F.2d 483 (2d Cir. 1963) ..................................................................35

*Cybersell, Inc. v. Cybersell*,
130 F.3d 414 (9th Cir. 1997) ................................................................11

*Daimler AG v. Bauman*,
571 U.S. 117 (2014)...............................................................................10

*Dean v. Kaiser Found. Health Plan, Inc.*,
562 F. Supp. 3d 928 (C.D. Cal. 2022)...................................................30

*DODDS v. Am. Broad. Co.*,
145 F.3d 1053 (9th Cir. 1998) .........................................................17, 21

*Doe v. Gangland Prods., Inc.*,
730 F.3d 946 (9th Cir. 2013) .................................................................34

*Doshier v. Twitter, Inc.*,
417 F. Supp. 3d 1171 (E.D. Ark. 2019)................................................13

*Eliott v. Lions Gate Ent. Corp.*,
639 F. Supp. 3d 1012 (C.D. Cal. 2022).............................................31, 32

*EMI Christian Music Grp., Inc. v. MP3tunes, LLC*, 844 F.3d 79 (2d Cir. 2016) .............................................................5

*Flowers v. Carville*,
310 F.3d 1118 (9th Cir. 2002) ..............................................................30

KOI SECURITY INC.'S MOTION TO DISMISS AND ANTI-SLAPP MOTION TO STRIKE
ACTIVE 722818961

*Found. for Anime & Niche Subcultures v. Tex. Anime Conventions*,
769 F. Supp. 3d 1034 (N.D. Cal. 2025) ..................................................................8

*Freestream Aircraft (Berm.) Ltd. v. Aero Law Grp.*,
905 F.3d 597 (9th Cir. 2018) ...........................................................................9, 10

*Georgalis v. Facebook, Inc.*,
324 F. Supp. 3d 955 (N.D. Ohio 2018) .............................................................13

*Gershman v. Bayer HealthCare LLC*,
No. 14-CV-05332-HSG, 2015 WL 2170214 (N.D. Cal. May 8, 2015) ....................9

*Gertz v. Robert Welch, Inc.*,
418 U.S. 323 (1974)..............................................................................................20

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
564 U.S. 915 (2011)..............................................................................................10

*Gopher Media LLC v. Melone*,
154 F.4th 696 (9th Cir. 2025) ..............................................................................34

*Gunder's Auto Ctr. v. State Farm Ins.*,
617 F. Supp. 2d 1222 (M.D. Fla. 2009), *aff'd*, 442 F. App'x 819 (11th Cir. 2011) ...............................................................................................................35

*Harte-Hanks Commc'ns v. Connaughton*,  491 U.S. 657, 667 (1989)
491 U.S. 657 (1989)..............................................................................................18

*Harris v. City of Seattle*,
315 F. Supp. 2d 1112 (W.D. Wash. 2004) ..........................................................30

*Heller v. NBC Universal, Inc.*,
No. CV-15-09631-MWF-KS, 2016 WL 6583048 (C.D. Cal. June 29, 2016) ....................................................................................................................32

*Herring Networks, Inc. v. Maddow*,
8 F.4th 1148 (9th Cir. 2021) ..........................................................................31, 32

*Int'l Shoe Co. v. Washington*,
326 U.S. 310 (1945)..............................................................................................10

*Intercarrier Commc'ns LLC v. WhatsApp Inc.*,
2013 WL 5230631 (E.D. Va. Sept. 13, 2013) .....................................................13

viii

*Isuzu Motors Ltd. v. Consumers Union*,
   12 F. Supp. 2d 1035 (C.D. Cal. 1998) ........................................................23

*Janus v. Freeman*,
   840 F. App'x 928 (9th Cir. 2020) ..............................................................12

*Kenner v. Kelly*,
   No. 11-cv-1538, 2018 WL 1726440 (S.D. Cal. Apr. 10, 2018) ..................14

*Konigsberg v. Time, Inc.*,
   288 F. Supp. 989 (S.D.N.Y. 1968) .............................................................35

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
   572 U.S. 118 (2014)............................................................................ii, 29

*Lopez v. Shopify, Inc.*,
   2017 WL 2229868 (S.D.N.Y. May 23, 2017) ............................................13

*Mahmoodian v. Pirnia*,
   No. 3:11-cv-005, 2012 WL 4458160 (W.D. Va. June 7, 2012), *aff'd*, 489
   F. App'x 711 (4th Cir. 2012) .....................................................................35

*Makaeff v. Trump Univ., LLC*,
   715 F.3d 254 (9th Cir. 2013) ..............................................................20, 33

*Marcus v. Nationstar Mortg. LLC*,
   No. 19-56288, 2022 WL 1486831 (9th Cir. May 11, 2022) ...................9, 18

*McHenry v. Renne*,
   84 F.3d 1172 (9th Cir. 1996) .....................................................................14

*Metabolife Int'l, Inc. v. Wornick*,
   264 F.3d 832 (9th Cir. 2001) .....................................................................30

*Milkovich v. Lorain Journal Co.*,
   497 U.S. 1 (1990)................................................................................16, 17

*Morrill v. Scott Fin. Corp.*,
   873 F.3d 1136 (9th Cir. 2017) ...................................................................11

*N.Y. Times Co. v. Sullivan*,
   376 U.S. 254 (1964)...................................................................................30

*NewNet, Inc. v. Lavasoft*,
   356 F. Supp. 2d 1090 (C.D. Cal. 2004).....................................................33

KOI SECURITY INC.'S MOTION TO DISMISS AND ANTI-SLAPP MOTION TO STRIKE

*U.S. ex rel. Newsham v. Lockheed Missiles & Space Co., Inc.*,
190 F.3d 963 (9th Cir. 1999) ...................................................................................30

*Nicosia v. De Rooy*,
72 F. Supp. 2d 1093 (N.D. Cal. 1999)......................................................................17

*O'Handley v. Padilla*,
579 F. Supp. 3d 1163 (N.D. Cal. 2022), *aff'd sub nom O'Handley v. Weber*, 62 F.4th 1145 (9th Cir. 2023).............................................................................8

*Obsidian Financial Group, LLC v. Cox*,
740 F.3d 1284 (9th Cir. 2014) ..................................................................................19

*Partington v. Bugliosi*,
56 F.3d 1147 (9th Cir. 1995) ....................................................................................17

*PC Drivers Headquarters, LP v. Malwarebytes Inc.*,
371 F.Supp.3d 652 (2019) ........................................................................................17

*Planet Aid, Inc. v. Reveal*,
44 F.4th 918 (9th Cir. 2022) ...............................................................................19, 20

*Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*,
890 F.3d 828 (9th Cir. 2018) ...............................................................................32, 34

*Ponomarenko v. Shapiro*,
287 F. Supp. 3d 816 (N.D. Cal. 2018)......................................................................26

*Ranza v. Nike, Inc.*,
793 F.3d 1059 (9th Cir. 2015) ..................................................................................21

*Roe v. CoreCivic, Inc.*,
No. 3:25-CV-02471-GPC-DDL, 2026 WL 218946 (S.D. Cal. Jan. 27, 2026) ........................................................................................................................9

*Sajfr v. BBG Communs., Inc.*,
No. 10cv2341 AJB (NLS), 2012 U.S. Dist. LEXIS 15198 (S.D. Cal. Jan. 10, 2012) (Battaglia, J.) .........................................................................................28

*Schwarzenegger v. Fred Martin Motor Co.*,
374 F.3d 797 (9th Cir. 2004) ................................................................................8, 11

*Silcox v. State Farm Mut. Auto. Ins. Co.*,
No. 14cv2345 AJB (MDD), 2014 U.S. Dist. LEXIS 176297 (S.D. Cal. Dec. 22, 2014) (Battaglia, J.).................................................................................27

KOI SECURITY INC.'S MOTION TO DISMISS AND ANTI-SLAPP MOTION TO STRIKE

ACTIVE 722818961

*Silicon Knights v. Crystal Dynamics,*
983 F. Supp. 1303 (N.D. Cal. 1997) ...................................................................24, 25

*Somers v. Apple, Inc.,*
729 F.3d 953 (9th Cir. 2013) .........................................................................................9

*Storm Mfg. Group v. Weather Tec Corp.,*
2013 U.S. Dist. LEXIS 136882 (C.D. Cal. 2013) ......................................................23

*Thomas v. L.A. Times Commc'ns, LLC,*
189 F. Supp. 2d 1005 (C.D. Cal. 2002) ......................................................................31

*Tilton v. Capital Cities/ABC Inc.,*
827 F. Supp. 674 (N.D. Okla. 1993)............................................................................35

*Unelko Corp. v. Rooney,*
912 F.2d 1049 (9th Cir. 1990) .........................................................................16, 22, 24

*United Tactical Sys. LLC v. Real Action Paintball, Inc.,*
108 F. Supp. 3d 733 (N.D. Cal. 2015).........................................................................25

*Walden v. Fiore,*
571 U.S. 277 (2014).................................................................................................11, 12

*Wasco Prods., Inc. v. Southwall Techs., Inc.,*
435 F.3d 989 (9th Cir. 2006) .......................................................................................26

*Wells v. Facebook Inc.,*
No. 19-2379-DDC-JPO, 2019 WL 6894681 (D. Kan. Dec. 18, 2019) .....................13

*Wheeler v. City of Santa Clara,*
894 F.3d 1046 (9th Cir. 2018) .....................................................................................35

*Wisk Aero LLC v. Archer Aviation Inc.,*
No. 3:21-cv-02450-WHO, 2023 U.S. Dist. LEXIS 100960 (N.D. Cal.
May 30, 2023)...............................................................................................................18

*Witt v. Ross,*
No. 5:25-CV-02776-BLF, 2026 WL 926898 (N.D. Cal. Apr. 6, 2026)....................31

*WPEngine, Inc. v. Automattic Inc.,*
No. 24-cv-06917-AMO, 2025 U.S. Dist. LEXIS 179595 (N.D. Cal. Sep.
12, 2025) .......................................................................................................................33

xi

*In re ZF-TRW Airbag Control Units Prods. Liability Litig.*,
   601 F. Supp. 3d 625 (C.D. Cal. 2022) ...................................................................................8

*Ziencik v. Snap, Inc.*,
   2021 WL 4076997 (W.D. Pa. Sept. 8, 2021).........................................................................13

**California Cases**

*Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*,
   7 Cal. 4th 503 (1994)...........................................................................................................25

*Barrett v. Rosenthal*,
   40 Cal.4th 33 (2006)............................................................................................................33

*Blatty v. N.Y. Times Co.*,
   42 Cal. 3d 1033 (1986) ............................................................................................15, 16, 22

*Briggs v. Eden Council for Hope & Opportunity*,
   19 Cal. 4th 1106 (1999) .......................................................................................................30

*Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*,
   20 Cal. 4th 163 (1999) .........................................................................................................27

*ComputerXpress, Inc. v. Jackson*,
   93 Cal. App. 4th 993 (2001) ................................................................................................22

*Cross v. Facebook, Inc.*,
   14 Cal.App.5th 190 (2017) ..................................................................................................33

*FilmOn.com Inc. v. DoubleVerify Inc.*,
   7 Cal.5th 133 (2019) ............................................................................................................34

*Geiser v. Kuhns*,
   13 Cal.5th 1238 (2022) ........................................................................................................34

*Hunter v. CBS Broad., Inc.*,
   221 Cal. App. 4th 1510 (2013) ............................................................................................32

*Ingels v. Westwood One Broad. Servs., Inc.*,
   129 Cal. App. 4th 1050 (2005) ............................................................................................26

*Ketchum v. Moses*,
   24 Cal. 4th 1122 (2001) .......................................................................................................35

*Korea Supply Co. v. Lockheed Martin Corp.*,
  29 Cal. 4th 1134 (2003) ...........................................................................................24

*MeetingTV v. Proofpoint*,
  No. 25CU066512N (Cal. Sup. Ct. Dec. 12, 2025) ......................................................5

*Muddy Waters, LLC v. Superior Court*,
  62 Cal. App. 5th 905, 277 Cal. Rptr. 3d 204 (2021) ................................................22

*Navellier v. Sletten*,
  29 Cal. 4th 82 (2002) ................................................................................................32

*Nygård, Inc. v. Uusi-Kerttula*,
  159 Cal. App. 4th 1027 (2008) .............................................................................31, 33

*Pridonoff v. Balokovich*,
  36 Cal. 2d 788 (1951) ...............................................................................................23

*Taus v. Loftus*,
  40 Cal. 4th 683 (2007) ..............................................................................................21

*Varian Med. Sys., Inc. v. Delfino*,
  35 Cal. 4th 180 (2005) ..............................................................................................31

*Wilbanks v. Wolk*,
  121 Cal. App. 4th 883 (2004) ....................................................................................34

*Wong v. Jing*,
  189 Cal. App. 4th 1354 (2010) ..................................................................................33

**Federal Statutes**

Lanham Act...............................................................................................28, 29, 35

Lanham Act
  § 43(a) ........................................................................................................................ii

**California Statutes**

Cal. Bus. & Prof. Code
  § 17200.................................................................................................................ii, 26

California Code of Civil Procedure
  § 425.16...............................................................................................................*passim*

California's Unfair Competition Law (UCL) ........................................................26, 27

**Other Authorities**

First Amendment ................................................................................................*passim*

California Constitution ............................................................................................3

Fed. R. Civ. P. 8 ...........................................................................................*passim*

Fed. R. Civ. P. Rule 9(b) .........................................................................................27

Fed. R. Civ. P. 12(b)(2) ...................................................................................i, 1, 8

Fed. R. Civ. P. 12(b)(6) .................................................................................*passim*

KOI SECURITY INC.'S MOTION TO DISMISS AND ANTI-SLAPP MOTION TO STRIKE

ACTIVE 722818961

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

Plaintiff MeetingTV Inc. ("MeetingTV") seeks to silence a cybersecurity research firm and stop it from publishing global threat intelligence. MeetingTV does so because it dislikes the fact that three of its Internet domain names were referenced in a threat intelligence report about unknown Chinese hackers.[1] Threat intelligence alerts are critical to the worldwide cybersecurity ecosystem. They enable worldwide security teams to guard against cybersecurity risks from malicious third parties intent on destroying infrastructure and stealing data. The law in the Ninth Circuit protects security researchers from precisely the type of strategic lawsuit against public participation that Plaintiff attempts so that speech on important public safety issues is not chilled.

As a threshold issue, however, the Complaint merits dismissal pursuant to Rule 12(b)(2) because the Court lacks personal jurisdiction over Defendant Koi Security Inc. ("Koi Corp."). The Koi report and research at issue was developed by Koi Ltd., not Koi Corp. Koi Ltd. is an Israeli cybersecurity company with no California presence.[2] Koi Corp., Koi Ltd.'s subsidiary, is a Delaware Corporation with a remit limited to selling software developed by Koi Ltd. in the United States. It did not author, approve, or publish the Report of which MeetingTV complains. Koi Corp. too has no California presence—neither offices nor officers, directors, or executives. Koi Corp. does not direct its conduct to California and has no minimum contacts with California sufficient to form a basis for jurisdiction.

---

[1] The latest version of the publication, "DarkSpectre: Unmasking the Threat Actor Behind 8.8 Million Infected Browsers" (the "Report") is available at https://www.koi.ai/blog/darkspectre-unmasking-the-threat-actor-behind-7-8-million-infected-browsers.

[2] For the avoidance of doubt, Koi Ltd. is an unserved named Defendant in this action who must be served through the Hague Convention. Koi Corp.'s reference to details about Koi Ltd. in this motion does not waive Koi Ltd.'s arguments regarding service of process or its jurisdictional defenses. Koi Ltd. has not appeared in this action. The details provided are necessary given Plaintiff's improper group pleading.

KOI SECURITY INC.'S MOTION TO DISMISS AND ANTI-SLAPP MOTION TO STRIKE

ACTIVE 722818961

Apart from the insurmountable jurisdictional hurdle, the Complaint constitutes a blatant violation of Rule 8's requirement that it plead a short plain statement of the case. The Complaint spans more than 600 paragraphs (many of which are misnumbered) and over 130 pages. It is a classic example of a shotgun pleading that lumps multiple defendants together. Its indecipherable allegations do not put Koi Corp. on notice of the claims against it. No amount of studying the Complaint, for instance, reveals what actual statements contained in the threat intelligence report at issue MeetingTV claims are false. It is not clear to whom MeetingTV even attributes the statements—whether Koi Corp. or one of the other (unserved) defendants.

The Complaint also fails to state a claim for any cause of action and must be dismissed pursuant to Rule 12(b)(6). First, the defamation cause of action fails the most basic requirement that Plaintiff must allege a defamatory statement 'of and concerning' it. The Report, on its face, is not 'of and concerning' MeetingTV. It is about a "well-resourced Chinese operation" called "DarkSpectre" and does not, at any point, claim that MeetingTV is DarkSpectre or is acting in concert with it. The initial iteration of the Report referenced over a dozen Internet domain names and Internet Protocol ("IP") addresses as well as over 100 Internet browser extensions that, based on technical artifacts and diligent security research, were potential "indicators of compromise" ("IOC") when they appeared in a network infrastructure. Three of the domains belong to the Plaintiff. Nowhere, however, does the Complaint allege that the Report states that the IOCs themselves were the threat actor. Nor could it, as IOCs are commonly understood in the cybersecurity industry to refer to benign IPs and websites that threat actors misuse, and are not necessarily the threat actor themselves.

Second, in addition to this incurable flaw, the Complaint also squarely targets non-defamatory opinion based on good-faith security research. The Report discloses all of the facts upon which it is based over the course of many pages, enabling any reader to evaluate its conclusions for themselves. This Circuit's law protects researchers who disclose the factual basis behind their findings and merits dismissal for this reason alone.

KOI SECURITY INC.'S MOTION TO DISMISS AND ANTI-SLAPP MOTION TO STRIKE

Third, the Complaint suffers from a fatal causation problem: multiple other third parties reported that MeetingTV's domains were malicious or suspicious well **before** the alleged statements at issue in this case were published. Plaintiff, in fact, sued another cybersecurity company in state court before the publication of the Report at issue, claiming **that** company defamed MeetingTV by blocking its domain as "malicious" **months before** Koi's Report was even published. That case is now dismissed. These and other judicially noticeable facts make it impossible for Plaintiff to plead causation for any cause of action.

Fourth, Plaintiff fails to clear the high bar for pleading malice required for its defamation claims. Beyond conclusory allegations based "on information and belief," there is no allegation that the Report was published with knowledge that it was false. On the contrary, the Report itself, which is attached to the Complaint, details the meticulous investigation, careful research, and painstaking analysis behind the Report.

These four flaws permeate not only Plaintiff's defamation claim, but every derivative cause of action, including trade libel, tortious interference, unfair competition, false advertising, and conspiracy.

Finally, the Complaint is also subject to dismissal under California's anti-SLAPP statute, California Code of Civil Procedure § 425.16 ("CCP § 425.16"). It is a transparent attempt to silence speech protected by the First Amendment and the California Constitution. The statute's two prongs are easily satisfied here. First, the Complaint arises from protected speech on a matter of public concern. Second, MeetingTV cannot establish a probability of prevailing because each of its seven causes of action fails as a matter of law.

MeetingTV's attempt to drag a security research entity with no ties to California into federal court on a specious defamation theory would have sweeping implications and stifle global security research. Because no amendment can cure its flaws, the Court should dismiss the Complaint with prejudice.

KOI SECURITY INC.'S MOTION TO DISMISS AND ANTI-SLAPP MOTION TO STRIKE
ACTIVE 722818961

## II.    FACTUAL BACKGROUND

### A.    The Parties

Koi Corp., the only defendant served, is incorporated in Delaware. Koi Corp. has a mail service that it uses in Washington, D.C.  (Declaration of Amit Assaraf ("Assaraf Decl.") ¶¶ 15, 18.)  It is Koi Security Ltd.'s U.S. commercial and distribution subsidiary. (*Id.* ¶ 3.)  Koi Corp.'s function is limited to U.S. go-to-market activities: it resells and distributes Koi Ltd.'s platform and executes U.S. commercial contracts.  (*Id.* ¶ 16.)  Koi Corp. does not have a California office or property located in California, nor does it have any officers, directors, or executives in California.  (*Id.* ¶ 19-20.)  All security research, engineering, product development, and publication decisions reside with Koi Ltd. in Israel.  (*Id.* ¶ 5.)  Koi Corp. played no role in researching, drafting, reviewing, approving, or publishing the Report.  (*Id.* ¶ 17.)

The Complaint references "Wings," Koi Ltd.'s AI-assisted analytical platform for identifying malicious browser extensions and threat actors. (Compl. ¶ 128.)  As of January 2026, there were 25 Wings customers—primarily New York City financial firms, Israeli tech companies, and international clients.  (Assaraf Decl. ¶ 7.)  Less than five "Wings" clients are based in California, and all five are global businesses whose interactions with Koi Corp. are not focused on California and do not involve California-centered services or deliverables.  (*Id.* ¶ 8.)  No Wings customer is in this District.  (*Id.* ¶ 9.)

MeetingTV is a Delaware corporation with its principal place of business in San Diego, California.  (Compl. ¶ 72.)  Its CEO is Michael Robertson.  (*Id.* ¶ 438.)  MeetingTV's products consist of a webinar search engine branded as WebinarTV, which "aggregates and indexes publicly available webinars" from businesses and academic institutions. (Compl. ¶¶ 92, 94-95.)  MeetingTV also "provides a personal recording service enabling subscribers to record their own meetings called Zoomcorder" (Compl. ¶ 100) and distributes browser extensions for Chrome, Edge, and Firefox.  (Compl. ¶¶ 91-120; *see also* Compl. ¶ 182.)

ACTIVE 722818961

## B.  Multiple Other Parties Uninvolved in this Litigation Flagged MeetingTV's Domains Months Before the Report's Publication

Certain of the 600+ paragraphs in the Complaint, together with judicially noticeable public records, establish that multiple third parties flagged and blocked MeetingTV's domains as malicious well before the publication of Koi's report in December 2025.

- Since at least March 2025, online users have expressed concerns about meetingtv.us.  (Koi Corp.'s Request for Judicial Notice ("RJN") ¶¶ 3-8, Exs. 3-8.)

- In or around October 2025, a Canadian governmental cybersecurity division, CyberAlberta, published a threat report finding that MeetingTV's WebinarTV "is actively scraping and redistributing both public and private Zoom webinars without knowledge or consent of organizers" through "third-party browser extensions[.]" (RJN ¶ 2, Ex. 2.)    This government report identified numerous MeetingTV and WebinarTV domains as "IOCs."  (*Id.*)[3]  The report notes that "many users . . . repeatedly argue that content is being harvested without permission, often appearing confused as to how WebinarTV gained access to a webinar the organizers believed to be private." (*Id.*)  It further notes that the CEO of the company, Michael Robertson, "previously served as CEO of the now-defunct online music library MP3Tunes, which was found liable for copyright infringement and ordered to pay USD $41 million in 2014." (*Id.*)  *See also See EMI Christian Music Grp., Inc. v. MP3tunes*, LLC, 844 F.3d 79, 99-101 (2d Cir. 2016) (affirming verdict and finding that the "evidence showed that Robertson acted in a manner intended to promote infringement").

- MeetingTV itself has admitted that, "[s]ince at least October 2025," at least one other cybersecurity company, Proofpoint, "began labeling Plaintiff's domain, webinartv.us, as 'malicious,' suggesting the site hosted malware or engaged in credential theft." (*See MeetingTV v. Proofpoint*, No. 25CU066512N (Cal. Sup. Ct. Dec. 12, 2025); RJN ¶1, Ex. 1 at ¶ 8.) In December 2025, after Proofpoint declined

---

[3] The Court may take judicial notice of the publication of the CyberAlberta.

KOI SECURITY INC.'S MOTION TO DISMISS AND ANTI-SLAPP MOTION TO STRIKE

ACTIVE 722818961

to remove this warning, MeetingTV sued Proofpoint in San Diego Superior Court, alleging that Proofpoint's alleged conduct caused MeetingTV's "lost business, reputational injury, and economic harm," and asserting five of the same claims MeetingTV now asserts against the Defendants in this action. (RJN ¶1, Ex. 1 at ¶¶ 13-42.) [4]  That case has since been dismissed.

Thus, by the time that Koi Ltd. published the Report, on December 30, 2025 (Compl. ¶ 16), MeetingTV's domains had already been publicly flagged by a government agency and blocked by another security vendor for malicious or suspicious activity.

### C.    The Report at Issue Attributes the DarkSpectre Campaign to a Chinese Threat Actor—Not MeetingTV

The Report identified three malware campaigns (Zoom Stealer, ShadyPanda, GhostPoster) linked to a single threat actor dubbed "DarkSpectre." The Report stated that "[e]verything we've uncovered points in one direction—a well-resourced *Chinese operation*." (Compl. ¶¶ 250-251, 508 (emphasis added).) Three MeetingTV domains (meetingtv.us, webinarstvus.cloudfunctions.net, zoomcorder.firebaseio.com) were listed as technical IOCs under the "Zoom Stealer" campaign.

Nowhere does the Report state that MeetingTV is a threat actor or is acting in concert with a threat actor. Koi's detailed, nearly 30-page Report briefly references domains owned by MeetingTV (not MeetingTV itself) only three times: (1) stating that the threat actor was "accessing video conferencing platforms and harvesting meeting data" using "webinarstvus[.]cloudfunctions[.]net"; (2) stating that the threat actor "collected data in a Firebase Realtime Database (zoomcorder.firebaseio.com)" and "used a *legitimate* recording service – Zoomcorder.com"; and (3) listing three MeetingTV domains under "IOCs" among dozens of other domains and extensions. (Compl. Ex. 1 at 9, 12, 21-28 (emphasis added).) An IOC is a technical artifact observed during an investigation: a data point, not a verdict. (Compl. ¶ 370 (defining IOC).) The Complaint

---

[4] The Court may take judicial notice of a publicly filed lawsuit. *See* Request for Judicial Notice, filed concurrently.

KOI SECURITY INC.'S MOTION TO DISMISS AND ANTI-SLAPP MOTION TO STRIKE
ACTIVE 722818961

itself recognizes that "IOCs commonly include domain names, IP addresses, software hashes, browser extension identifiers, and other artifacts associated with malware or threat actors." (Compl. ¶ 371.)  It is neither plausible nor reasonable to conclude that brief references to a threat actor's use of "*legitimate*" services and the listing of domains related to those services as IOCs, means that the Report stated or even implied that the owner of those domains is the malicious threat actor or is acting in concert with it.

As to Koi Corp., the only Defendant that has been served and that is moving to dismiss, it did not conduct any security research, author, edit, approve, or publish the Report.  (Assaraf Decl. ¶ 17.)  All research was conducted in Israel by personnel based in Israel; the Report was authored in Israel; and all publication decisions regarding content, timing, and distribution were made from Israel.  (*Id.* ¶ 5.)

### D.    Based on MeetingTV's Representations, Koi Ltd. in Good Faith Supplemented its Report

On February 11, 2026, MeetingTV sent a formal retraction demand.  (Compl. ¶ 435.)[5]  The next day, despite having no obligation to do so, Koi Ltd. confirmed that "the reference to your domain (which was the only reference to MeetingTV inside the blog) was removed from the IOCs list for good faith." (Compl. ¶ 444, Ex. 14.)  Koi Ltd. further stated that the Report had "never made any claims that your company is related to the malicious actors[.]" (*Id.*)

Koi Ltd. also removed the Report's entire "Domains – The Zoom Stealer" section, which had previously listed the three MeetingTV's domains, along with related references to MeetingTV's infrastructure. (Compl. ¶¶ 457-458.)  Koi Ltd. added the following public update to the Report regarding one of the domains (meetingtv[.]us):

> After publication, we conducted additional validation regarding the domain meetingtv[.]us, which was originally included in the IOC list. While the domain appeared in code analyzed during our investigation, we have

---

[5] The Complaint's paragraph numbers are duplicated, with ranges ¶¶ 435-438 appearing twice on consecutive pages (pages 36 and 37).

KOI SECURITY INC.'S MOTION TO DISMISS AND ANTI-SLAPP MOTION TO STRIKE

ACTIVE 722818961

determined that there is no evidence that this domain is connected or related in any way to the malicious infrastructure or the threat actor group described in this report. (Compl. ¶ 454, Ex. 16.)

Despite Koi Ltd.'s confirmation that it had never put MeetingTV in the same category as the unknown Chinese hacker group, and its good faith reflection of MeetingTV's representations on its website, MeetingTV filed this case. Without any basis in law or fact, MeetingTV sued not only Koi Ltd., the Israeli parent, but also its Delaware subsidiary and multiple individuals who work at Koi Ltd.

## III.   LEGAL STANDARD

**Rule 12(b)(2).** "Where a defendant moves to dismiss a complaint for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that jurisdiction is appropriate." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). If a court lacks personal jurisdiction over a defendant, the complaint must be dismissed as to that defendant. *See Found. for Anime & Niche Subcultures v. Tex. Anime Conventions*, 769 F. Supp. 3d 1034, 1041–42 (N.D. Cal. 2025) (granting motion to dismiss for lack of personal jurisdiction without leave to amend).

"On such a motion, the Court can consider evidence contained in affidavits and is not limited to the allegations of the plaintiff's complaint." *Found. for Anime & Niche Subcultures v. Tex. Anime Conventions*, 769 F. Supp. 3d at 1041–42 (citing *Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1108 (9th Cir. 2002)). "To establish personal jurisdiction, a party must show both that the long-arm statute of the forum state confers personal jurisdiction over an out-of-state defendant, and that the exercise of jurisdiction would be consistent with federal due process requirements." *In re ZF-TRW Airbag Control Units Prods. Liability Litig.*, 601 F. Supp. 3d 625, 691 (C.D. Cal. 2022). Bare bones assertions of minimum contacts with the forum or legal conclusions unsupported by specific factual allegations are insufficient to satisfy a plaintiff's burden. *O'Handley v. Padilla*, 579 F. Supp. 3d 1163, 1178 (N.D. Cal. 2022) (citation omitted), *aff'd sub nom O'Handley v. Weber*, 62 F.4th 1145 (9th Cir. 2023).

ACTIVE 722818961

**Rule 8.** "A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The purpose of Rule 8 is to ensure that the opposing party has proper notice of the claims to "defend himself or herself effectively." *Roe v. CoreCivic, Inc.*, No. 3:25-CV-02471-GPC-DDL, 2026 WL 218946, at *4 (S.D. Cal. Jan. 27, 2026) (citing *Starr v. Baca*, 652 F.3d 1202, 1212 (9th Cir. 2011)). "To satisfy the notice requirements of Rule 8, a plaintiff must allege the basis of his claim against each defendant, rather than lumping all defendants together in a single, broad allegation." *Id.* (cleaned up and citing *Gauvin v. Trombatore*, 682 F. Supp. 1067, 1071 (N.D. Cal. 1988)).

**Rule 12(b)(6).** Rule 12(b)(6) requires that a complaint plead sufficient factual matter to state a claim that is plausible on its face. *Somers v. Apple, Inc.*, 729 F.3d 953, 959 (9th Cir. 2013). "A plaintiff must provide 'more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.'" *Gershman v. Bayer HealthCare LLC*, No. 14-CV-05332-HSG, 2015 WL 2170214, at *2 (N.D. Cal. May 8, 2015) (quoting *Twombly*, 550 U.S. at 555). "A court need not accept as true allegations that contradict matters properly subject to judicial notice or by exhibit" or other materials central to or incorporated by reference into the complaint. *Id.* Allegations on information and belief without supporting facts are "naked assertion[s]" insufficient to state a claim. *Marcus v. Nationstar Mortg. LLC*, No. 19-56288, 2022 WL 1486831, at *1 (9th Cir. May 11, 2022).

## IV.    ARGUMENT

### A.    The Court Lacks Personal Jurisdiction Over Defendant Koi Corp.

"There are two categories of personal jurisdiction: (1) general jurisdiction and (2) specific jurisdiction." *Freestream Aircraft (Berm.) Ltd. v. Aero Law Grp.*, 905 F.3d 597, 602 (9th Cir. 2018). Even if Koi Corp. published the Report—which it did not—there would still be no personal jurisdiction over it. Koi Corp. is not at home in this forum and does not have the requisite minimum contacts with California for the Court to exercise

KOI SECURITY INC.'S MOTION TO DISMISS AND ANTI-SLAPP MOTION TO STRIKE
ACTIVE 722818961

specific jurisdiction.[6]

### 1.    Koi Corp. Is Not Subject to General Jurisdiction in California

General jurisdiction applies when a defendant's contacts with the forum are "so 'continuous and systematic' as to render them essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). "With respect to a corporation, the place of incorporation and principal place of business are 'paradig[m]…bases for general jurisdiction.'" *Daimler AG*, 571 U.S. at 137.

Here, Koi Corp. is not incorporated in California, nor does it maintain its principal place of business in California.  (Assaraf Decl. ¶¶ 15, 18.)  The paragraphs addressing jurisdictional allegations (Compl. ¶¶ 74, 86-88) do not allege any facts that would render Koi Corp. "essentially at home" in California.  General jurisdiction over Koi Corp. in California would consequently be improper.

### 2.    Koi Corp. Is Not Subject to Specific Jurisdiction in California

Absent general personal jurisdiction, Plaintiff must show that the Court can exercise specific personal jurisdiction. *Freestream Aircraft (Berm.) Ltd.*, 905 F.3d at 602-603.  The Ninth Circuit has "established a three-prong test for analyzing a claim of specific personal jurisdiction: (1) the non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of

---

[6] "When no federal statute governs personal jurisdiction, the district court applies the law of the forum state . . . California's long-arm statute is co-extensive with federal standards, so a federal court may exercise personal jurisdiction if doing so comports with federal constitutional due process." *Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008); *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014).  Due process requires that defendants have sufficient "minimum contacts" with the forum such that exercising jurisdiction would not offend traditional notions of fair play and substantial justice. *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

KOI SECURITY INC.'S MOTION TO DISMISS AND ANTI-SLAPP MOTION TO STRIKE

jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable." *Schwarzenegger*, 374 F.3d at 802; *Morrill v. Scott Fin. Corp.*, 873 F.3d 1136, 1142 (9th Cir. 2017).

The Ninth Circuit "generally appl[ies] the purposeful availment test when the underlying claims arise from a contract, and the purposeful direction test when they arise from alleged tortious conduct." *Id.* In the tort context, as here, the purposeful direction test requires an intentional act expressly aimed at the forum state that causes harm the defendant knows is likely to suffer in the forum. *See Briskin v. Shopify, Inc.*, 135 F.4th 739, 751 (9th Cir. 2025). The minimum-contacts analysis looks to the defendant's contacts with the forum state itself, not its contacts with forum residents. *Walden v. Fiore*, 571 U.S. 277, 285 (2014) ("[T]he plaintiff cannot be the only link between the defendant and the forum.").

Plaintiff fails to establish that Koi Corp.'s activities constitute purposeful direction towards California. ***First***, the Complaint alleges that "Defendants" published a research report on a globally accessible website. (Compl. ¶ 123.) But Koi Corp. was not the publisher. (Assaraf Decl. ¶¶ 5, 17.) Even if it were, this would be insufficient to establish purposeful direction to California. The mere operation or publication of content on a worldwide website does not demonstrate that Defendant expressly aimed at California, or purposefully availed itself of the privilege of conducting activities with California. *See Cybersell, Inc. v. Cybersell*, 130 F.3d 414, 415 (9th Cir. 1997) (finding that Arizona could not "exercise personal jurisdiction over an allegedly infringing Florida web site advertiser who ha[d] no contacts with Arizona other than maintaining a home page that is accessible to Arizonans, and everyone else, over the Internet.") As to Plaintiff's allegation that the Report was "directed" at California, "knowing that Plaintiff is headquartered in California," this is nothing more than a conclusory assertion lacking factual support. (Compl. ¶ 86.) It is also wrong. (Assaraf Decl. ¶¶ 15, 18.)

Unlike cases where the "reputation-based 'effects'" of alleged tortious conduct "connected the defendants to California," *Walden* at 287, the "effects" allegedly felt by

KOI SECURITY INC.'S MOTION TO DISMISS AND ANTI-SLAPP MOTION TO STRIKE
ACTIVE 722818961

Plaintiff here have no nexus to California.  Plaintiff alleges a "global blocking of Plaintiff's services" with no California-specific loss of reputation. (Compl. ¶ 437); *see also Janus v. Freeman*, 840 F.App'x 928, 931 (9th Cir. 2020) ("[T]he mere making of defamatory comments to persons known to be Californians is not sufficient, without more, to establish purposeful direction…").

*Second*, the Report's preparation involved no investigation, research, or analysis performed in California.  *Calder v. Jones*, 465 U.S. 783, 788–89 (1984) (finding publication of allegedly defamatory story constituted purposeful direction in part because "[t]he article was drawn from California sources").  The Report was authored in Israel and all requisite publication decisions were made in Israel.  (Assaraf Decl. ¶ 5.)

*Third*, Koi Corp. has no office in California, employs no officers, directors, or executives in California, and uses no targeted marketing to specifically distribute the publication at issue to California residents.  (Assaraf Decl. ¶¶ 10, 19-20); *see also Boehm v. Airbus Helicopters Incorporated*, 527 F.Supp.3d 1112, 1121 (D. Ariz. 2020) (noting that the defendant "had no physical presence in Arizona" as one of the key factors supporting dismissal for lack of specific personal jurisdiction).

*Fourth*, residents of California do not comprise a large proportion of the users who accessed the Report.  (Assaraf Decl. ¶ 12.)  Nor do entities residing in California comprise a large proportion of Koi Corp. or its affiliates' customers.  (*Id*. ¶ 8.)  Koi Corp.'s knowledge that Plaintiff is headquartered in California would not be sufficient.  (Compl. ¶ 86); *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1069-71 (9th Cir. 2017) (noting Supreme Court's rejection of the notion that a defendant's "knowledge of the plaintiffs' strong forum connections, plus the foreseeable harm the plaintiffs suffered in the forum, comprised sufficient minimum contacts" (cleaned up) (citing *Walden*, 571 U.S. at 289)).

In similar situations, multiple courts have declined to find personal jurisdiction based on passive websites, internet publications, and third-party downstream effects.

- **YouTube.**  *Bowen v. YouTube, Inc.*, 2008 WL 1757578, at *5 (W.D. Wash. Apr. 15,

KOI SECURITY INC.'S MOTION TO DISMISS AND ANTI-SLAPP MOTION TO STRIKE

ACTIVE 722818961

2008) (finding no personal jurisdiction over YouTube where plaintiff's allegations arose from her use of YouTube, and no conduct ha[d] been alleged to provide the "something more" required for personal jurisdiction);

- **Facebook.** *Wells v. Facebook Inc.*, No. 19-2379-DDC-JPO, 2019 WL 6894681, at *9-12 (D. Kan. Dec. 18, 2019) (allegations that Facebook operates a website accessible everywhere, including in a forum state, are insufficient to confer specific jurisdiction); *Georgalis v. Facebook, Inc.*, 324 F. Supp. 3d 955, 960 (N.D. Ohio 2018) (millions in revenue earned from advertising to forum-state users "unavailing" for personal jurisdiction);

- **Twitter.** *Doshier v. Twitter, Inc.*, 417 F. Supp. 3d 1171, 1177 (E.D. Ark. 2019) (declining to exercise specific personal jurisdiction over Twitter based on allegations that Twitter's website directs advertising to users in the forum state);

- **Shopify.** *Lopez v. Shopify, Inc.*, 2017 WL 2229868, at *8 n.9 (S.D.N.Y. May 23, 2017), *report and recommendation adopted*, 2018 WL 481891 (S.D.N.Y. Jan. 17, 2018) (declining to find Shopify purposefully directed activities to New York based on the "theoretical availability" of allegedly infringing goods on Shopify's website to persons with internet access);

- **WhatsApp.** *Intercarrier Commc'ns LLC v. WhatsApp Inc.*, 2013 WL 5230631, at *12 (E.D. Va. Sept. 13, 2013) (finding that a user unilaterally downloading or using an app in a forum does not establish specific jurisdiction);

- **Snap, Inc.** *Ziencik v. Snap, Inc.*, 2021 WL 4076997, at *10-11 (W.D. Pa. Sept. 8, 2021) (finding that Pennsylvania lacked personal jurisdiction over Snap because it was headquartered in California and did no more "than exist as an application that people can download while located in Pennsylvania.").

The Court should do the same here. Koi Ltd. published the Report to reach individuals globally. Any downstream impact on California or its residents is unforeseeable and passive. An exercise of personal jurisdiction by the Court would be unreasonable under the circumstances.

ACTIVE 722818961

**B.      Rule 8 Requires Dismissal Because the Complaint is an Incomprehensible Mess**

Plaintiff's Complaint consists of more than 60 pages and 680 paragraphs.  That is not a "short and plain statement" as the Federal Rules mandate—and for good reason. *McHenry v. Renne*, 84 F.3d 1172, 1179 (9th Cir. 1996) ("Prolix, confusing complaints such as the ones plaintiff[] filed in this case impose unfair burdens on litigants and judges" and are subject to dismissal); *Kenner v. Kelly*, No. 11-cv-1538, 2018 WL 1726440, at *4 (S.D. Cal. Apr. 10, 2018) (dismissing complaint under Rule 8 where it was "unnecessarily lengthy, verbose, and confusing . . . lack[ing] simple, concise, and direct allegations.")

MeetingTV's Complaint is replete with errors.  At least six separate paragraph ranges are duplicated across the Complaint, including a fifteen-paragraph range ¶¶ 473-487, which is used twice with different content. (Compl. pp. 42-44.)  At least five individual paragraphs are duplicated.  (*Id.* at ¶¶ 68, 285, 323, 444, 591.)  At least six paragraphs are skipped, without explanation.  (*Id.*  ¶¶ 635-638, 658, and 662-663.)  A ten-paragraph range (*id.*  ¶¶ 570-579) is used for Count II (Trade Libel) and then again as the opening of Count III (Intentional Interference with Prospective Economic Advantage). (*Id.*  at 52–53.)  This makes it impossible to determine whether a reference to ¶¶ 570-579 is referencing Count II or Count III.  Count V is also defective (¶ 591 used twice, once at the end of Count IV and again as the opening paragraph of Count V), as is Count VII (¶¶ 619 and 620 each used twice; with ¶¶ 635-638, 658, and 662-663 missing).

Further, many of the paragraphs are haltingly short.  The paragraph breaks and organization do not make sense.  Each count incorporates all preceding paragraphs, making it unrealistic, if not impossible, to determine which facts support which of Plaintiff's claims.  The same core allegations are restated dozens of times with minor variations across more than 60 pages.

The Complaint also exemplifies impermissible group pleading. *See Aquilina v. Certain Underwriters at Lloyd's Syndicate #2003*, 406 F. Supp. 3d 884, 903 (D. Hawaii 2019) ("The Complaint . . . uses impermissible group pleading, which violates . . . Rule

14

ACTIVE 722818961

8(a)").   The Complaint names multiple defendants but gives no notice as to which claims are against which defendants.  The purpose of Rule 8 is to put a defendant on notice.  The Complaint fails to do that and must be dismissed.

### C.   The Complaint Fails To State Any Claim Under Rule 12(b)(6)

#### 1.   Multiple Overarching Defects Infect All of Plaintiff's Claims

##### a.   Plaintiff Cannot Allege the Report is "Of and Concerning" MeetingTV Because It Does Not Identify MeetingTV as the Threat Actor

A publication is not actionable as defamation unless it is "of and concerning" the plaintiff.  *See Blatty v. N.Y. Times Co.*, 42 Cal. 3d 1033, 1046 (1986).  To satisfy this fundamental constitutional requirement, the plaintiff must plead that it is the "direct object of criticism" based on a "specific reference" to the plaintiff, not something that could be attributed to the plaintiff.  *Id.* at 1044.  The Report is far from "of and concerning" MeetingTV, the Plaintiff in this case.   Only MeetingTV-controlled domains are referenced, among many others.  Further, the Report's textual attribution of *who* operates DarkSpectre is unambiguous: an unknown Chinese operation.[7]

MeetingTV's theory requires an impermissible inferential leap: that because MeetingTV-associated domains are referenced as being used by the suspected threat actor, the Report therefore accused MeetingTV of either being the Chinese threat actor or acting in concert with it.  This makes no sense and, indeed, the Complaint itself acknowledges that the Report makes no such accusation and instead merely "*implied* that Plaintiff was either DarkSpectre or was conspiring with DarkSpectre." (Compl. ¶ 39 (emphasis added); *see also id*. ¶¶ 38, 255-56 (allegations framed in implication terms).)

---

[7] The Report repeatedly attributes the DarkSpectre operation to Chinese threat actors: "the operation was connected to China" (Compl. ¶ 250); "Everything we've uncovered points in one direction – a well-resourced Chinese operation" (¶ 251); an "operation [] functioning at a nation-state scale" (¶ 261); the "Report further described the organization as a Chinese threat actor or Chinese-linked operation" (¶ 543).  Indeed, an entire subheading of the Report is titled "Attribution: The **Chinese connection**" (¶¶ 507-08 (emphasis added).)

KOI SECURITY INC.'S MOTION TO DISMISS AND ANTI-SLAPP MOTION TO STRIKE
ACTIVE 722818961

Reporting that a threat actor is using "*legitimate*" services as part of its infrastructure and listing related domains as IOCs do not amount to an accusation that the domain owner is the threat actor or knowingly associated with it. As noted above, an IOC is a technical artifact observed during an investigation, nothing more. The Complaint acknowledges this reality (*Id*. ¶¶ 370-71 (IOCs are a term of art and commonly include domain names and other technical artifacts).) Because the Complaint and the referenced report make clear repeatedly that the threat actor is *not* MeetingTV, every claim fails.

Plaintiff attempts to circumvent this deficiency by pointing to the Report's description of MeetingTV's infrastructure as associated with "The Zoom Stealer" campaign and its characterization of Zoomcorder.com as a "front." (Compl. ¶¶ 265, 276-80.) But the Report's narrative is clear: these domains were technical artifacts observed during the investigation of a campaign attributed to DarkSpectre—an unknown Chinese operation. The Report did not state that MeetingTV was DarkSpectre, operated DarkSpectre, or knowingly participated in DarkSpectre's activities. To draw that inference from the IOC listing requires precisely the kind of "impermissible inferential leap" that the "of and concerning" doctrine forecloses. *Blatty*, 42 Cal. 3d at 1046. Moreover, Koi Ltd.'s post-publication update—which the Complaint itself quotes—confirmed that the Report "never made any claims that your company is related to the malicious actors." (Compl. ¶ 444, Ex. 14.) That clarification is incorporated into the Complaint and reinforces that the Report was not "of and concerning" MeetingTV.

**b.    The Report is Protected Opinion**

The Report's references to MeetingTV's domains are non-actionable opinions of analytical judgment subject to First Amendment protection. A "statement on matters of public concern must be provable as false before there can be liability." *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 19-20 (1990); *see also Unelko Corp. v. Rooney*, 912 F.2d 1049, 1053 (9th Cir. 1990) (laying out a three-pronged inquiry in applying *Milkovich*).

As a threshold point, courts frequently find cybersecurity threat assessments, IOC classifications, and attribution analyses to be evaluative judgments (*i.e.,* opinion

KOI SECURITY INC.'S MOTION TO DISMISS AND ANTI-SLAPP MOTION TO STRIKE

ACTIVE 722818961

statements), not verifiable factual assertions, deserving of First Amendment protections. *See, e.g., PC Drivers Headquarters, LP v. Malwarebytes Inc.*, 371 F.Supp.3d 652, 664 (2019) (finding that "Malwarebytes' classification of PC Drivers Products [as malware or a 'Potentially Unwanted Program' ('PUP')] is…a nonactionable opinion," applying the principle that "statements of opinion that are not capable of being proven false do not give rise to civil liability."); *Nicosia v. De Rooy*, 72 F. Supp. 2d 1093, 1104 (N.D. Cal. 1999). Moreover, here, the Complaint itself alleges that the Report contains the facts upon which its findings are based.  (Compl. ¶ 363.)  *See, e.g., Partington v. Bugliosi*, 56 F.3d 1147, 1156-57 (9th Cir. 1995). ("[W]hen an author outlines the facts available to him, thus making it clear that the challenged statements represent his own interpretation of those facts and leaving the reader free to draw his own conclusions, those statements are generally protected by the First Amendment.").

The Report interpreted facts.  Readers are free to form different interpretations. "[A]n opinion based on an implication arising from disclosed facts is not actionable when the disclosed facts themselves are not actionable." *DODDS v. Am. Broad. Co.,* 145 F.3d 1053, 1067 (9th Cir. 1998) (citing *Partington*).  The context of the Report is that of a research blog.  (Compl. at 66 (Ex. 1).)[8]  The Complaint admits the Report was authored by "threat intelligence researchers" (*Id*. ¶¶ 389) and is structured as an investigative analysis.

MeetingTV fails to contest the factual underpinnings of the Report.  For example, the Complaint does not dispute that the threat actor used its domains as referenced in the Report, or that those domains appeared in the extensions analyzed by Koi Ltd.  Nor does MeetingTV contend that Koi invented the Alibaba Cloud infrastructure, fabricated the ICP registrations, or manufactured the Chinese-language code artifacts. The Complaint's grievance is with Koi's *analytical interpretation*—its opinions.  This is precisely what the First Amendment protects.

---

[8] Mr. Robertson, in his Feb. 10, 2026 email, acknowledges the Report was authored by "researcher[s]."  (Compl. ¶ 113, Ex. 9.)

KOI SECURITY INC.'S MOTION TO DISMISS AND ANTI-SLAPP MOTION TO STRIKE

ACTIVE 722818961

### c.    The Complaint On its Face Defeats Causation

A plaintiff must plausibly allege that the defendant's conduct caused the plaintiff's harm. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "California uses the 'substantial factor' test to determine causation." *Wisk Aero LLC v. Archer Aviation Inc.*, No. 3:21-cv-02450-WHO, 2023 U.S. Dist. LEXIS 100960, at *12 (N.D. Cal. May 30, 2023). Here MeetingTV alleges that its harm (i) flowed from independent third-party decisions, (ii) automated systems operating outside the defendant's control, and (iii) events that predate the defendant's conduct.

MeetingTV's Complaint admits that third parties independently and automatically decided to ingest and use the Report. There is no allegation that any Defendant requested, instructed, or directed any third party to do anything. The Complaint repeatedly alleges that downstream vendor blocking was "automated," triggered by ingestion of IOCs without human review. (Compl. ¶¶ 9, 393-405, 621, 626, 674.) There is no allegation Koi Corp. ever requested, instructed, or directed Verizon (¶¶ 408-09), Spectrum (¶¶ 410-12), Avast (¶¶ 413-15), Cloudflare (¶¶ 416-18), Fortinet (¶¶ 419-421), Cisco Systems (¶¶ 426-28), DNSFilter (¶¶ 429-31) or any other third-party vendor to block, flag, or take any action against Plaintiff's domains. (*See generally* ¶¶ 407-33.) Plaintiff merely alleges "Upon information and belief" that "specific vendors and network operators relied on Defendants' Report in classifying Plaintiff's domains," which is plainly insufficient. *See Marcus*, 2022 WL 1486831, at *1 (allegations on information and belief without supporting facts are "naked assertion[s]" insufficient to state a claim).[9]

Further, judicially noticeable documents establish that third parties flagged and

---

[9] The allegation that DNSFilter cited the Report as a basis for its classification (Compl. ¶¶ 429-33) does not salvage causation. Even taking this allegation as true, it demonstrates that DNSFilter made its own independent judgment to adopt and apply the Report's findings. Plaintiff does not (and cannot) allege that Koi Corp. directed DNSFilter to block any MeetingTV domain. Moreover, DNSFilter also referred to and relied on a publicly available website, https://www.virustotal.com/gui/domain/meetingtv.us/detection, to defend its classification, which reinforces its independent decision-making. (*See* Compl. Ex. 9 at 1.)

KOI SECURITY INC.'S MOTION TO DISMISS AND ANTI-SLAPP MOTION TO STRIKE
ACTIVE 722818961

identified MeetingTV's domains as malicious and IOCs months before the Report was published.  First, in October 2025, a Canadian governmental agency published a threat report (1) finding that MeetingTV's WebinarTV "is actively scraping and redistributing both public and private Zoom webinars without knowledge or consent of organizers" through "third-party browser extensions," and (2) identified numerous MeetingTV and WebinarTV domains as "IOCs." (RJN ¶ 2, Ex. 2.)  Second, in a lawsuit brought by MeetingTV against Proofpoint on December 12, 2025 (18 days before the Report), MeetingTV alleged that "[s]ince at least October 2025, Proofpoint began labeling Plaintiff's domain, webinartv.us, as 'malicious,' suggesting the site hosted malware or engaged in credential theft," which caused MeetingTV's "lost business, reputational injury, and economic harm." (RJN ¶ 1, Ex. 1 at ¶¶ 8, 13-42.)  Against this backdrop, the Report's findings were neither novel nor reckless: they corroborated what multiple independent sources had already found and reported and formed the basis of claims that MeetingTV brought against another cybersecurity vendor before Koi's Report was even published

### d.    Plaintiff Fails to Plead Actual Malice

"[L]iability for a defamatory blog post involving a matter of public concern cannot be imposed without proof of fault and actual damages." *Obsidian Financial Group, LLC v. Cox*, 740 F.3d 1284, 1287 (9th Cir. 2014).  The Ninth Circuit has "articulated a three-prong test to determine whether an individual or entity is a limited-purpose public figure" requiring a heightened actual malice standard beyond mere negligence. *Planet Aid, Inc. v. Reveal*, 44 F.4th 918, 925 (9th Cir. 2022)  This test considers whether  "(i) a public controversy existed when the statements were made, (ii) whether the alleged defamation is related to the plaintiff's participation in the controversy, and (iii) whether the plaintiff voluntarily injected itself into the controversy for the purpose of influencing the controversy's ultimate resolution." *Planet Aid, Inc. v. Reveal*, 44 F.4th 918, 925 (9th Cir. 2022).  MeetingTV satisfies each.

As to the first prong, a public controversy over browser-extension security, data-

KOI SECURITY INC.'S MOTION TO DISMISS AND ANTI-SLAPP MOTION TO STRIKE
ACTIVE 722818961

handling, and consumer harm predated the Report.  Malware-laden extensions and covert data collection have drawn sustained press, regulatory, and industry attention, as noted in the Report and the Complaint.  (*See, e.g.*, Compl. ¶ 388.)  As to the second prong, the purported defamation is related to MeetingTV's involvement in the controversy.  Before the Report was published, MeetingTV already sued Proofpoint on similar theories.  Further, the Report addressed MeetingTV's extensions, permissions, and data-handling practices, subject matter MeetingTV holds out to the public.  As to the third prong, MeetingTV voluntarily injected itself into the controversy through its mass-market promotion of its extensions to millions of users.  Under *Makaeff*, "large scale, aggressive advertising can inject a person or entity into a public controversy that arises from the subject of that advertising."  *Makaeff v. Trump Univ., LLC*, 715 F.3d 254, 261 (9th Cir. 2013).  MeetingTV cannot simultaneously publicly court millions of consumers on the safety and utility of its extensions and claim private status when a security researcher scrutinizes those representations.

As detailed more fully in Part IV.D.2, *infra*, because this is a public controversy, MeetingTV must plead actual malice, which is knowledge of falsehood or reckless disregard for the truth, rather than pure negligence.  *Makaeff*, 715 F.3d at 270; *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 332 (1974).  Beyond the vacuous "upon information and belief" allegations, Plaintiff's only proffered scienter theory is that defendants published the Report to impress a prospective acquirer.  (Compl. ¶¶ 15, 133.)  Even if taken as true, which it is not, a motive to profit does not amount to knowledge of falsity.  *Harte-Hanks Commc'ns v. Connaughton*, 491 U.S. 657, 667 (1989) ("[T]he fact that the defendant published the defamatory material in order to increase its profits" cannot "suffice to prove actual malice.").  Supreme Court caselaw establishes that: "'reckless disregard' for the truth . . . requires more than a departure from reasonably prudent conduct. There must be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts . . . As a result, failure to investigate before publishing, even when a reasonably prudent person would have done so, is not sufficient[]." *DODDS*

KOI SECURITY INC.'S MOTION TO DISMISS AND ANTI-SLAPP MOTION TO STRIKE

ACTIVE 722818961

*v. Am. Broad. Co.*, 145 F.3d 1053, 1061 (9th Cir. 1998).  The Complaint offers nothing beyond conclusory allegations on the supposed failure to investigate.  Indeed, the investigation behind the Report is expressed in the Report itself.

### 2. The Complaint Fails to State a Claim For Defamation Per Se (Count I)

The Complaint's global defects described above require dismissal of the defamation per se claim.  To state a claim for defamation under California law, a plaintiff must plausibly allege: (1) publication, (2) of a false statement of fact, (3) defamatory, (4) unprivileged, and (5) has "a natural tendency to injure or [] cause[] special damages." *Taus v. Loftus*, 40 Cal. 4th 683, 720 (2007) (citations omitted).  Here, the Complaint does not allege that there is a false statement of fact about the Plaintiff, it alleges nothing more than opinion, it does not allege the facts leveraged in the investigative research were actually false, fails to allege causation, and does not clear the bar for pleading malice.

As an added independent basis, defamation presupposes publication.  The Complaint does **not** allege that Koi Corp. authored, approved, researched, or published the Report.  The Complaint attempts to bridge this gap by lumping the two entities through its "unified enterprise" theory.  But this allegation, again, on "information and belief," is conclusory and unsubstantiated.  (Compl. ¶¶ 75-77).  MeetingTV does not even attempt to plead facts sufficient to establish alter-ego status, agency, veil-piercing, or any other basis to impute Koi Ltd.'s publication to Koi Corp.  *See Ranza v. Nike, Inc.*, 793 F.3d 1059, 1070 (9th Cir. 2015) ("The existence of a parent-subsidiary relationship is insufficient, on its own, to justify imputing one entity's contacts with a forum state to another for the purpose of establishing personal jurisdiction.").  Without a basis to attribute publication to Koi Corp., the defamation claim against it fails as a matter of law.

### 3. The Complaint Fails to State a Claim For Trade Libel (Count II)

Trade libel requires a false statement disparaging the quality of a plaintiff's goods or services, malice, and special damages.  "The tort encompasses 'all false statements

KOI SECURITY INC.'S MOTION TO DISMISS AND ANTI-SLAPP MOTION TO STRIKE
ACTIVE 722818961

concerning the quality of services or product of a business which are intended to cause that business financial harm and in fact do so.' . . . To constitute trade libel, a statement must be false. . . . Since mere opinions cannot by definition be false statements of fact, opinions will not support a cause of action for trade libel." *ComputerXpress, Inc. v. Jackson*, 93 Cal. App. 4th 993, 1010-11 (2001) (internal citations omitted).

Though trade libel resembles defamation, it demands a "greater burden of proof resting on the plaintiff, and the necessity for special damage in all cases." *Muddy Waters, LLC v. Superior Court*, 62 Cal. App. 5th 905, 910, 277 Cal. Rptr. 3d 204, 210 (2021).

"Because the gravamen of Plaintiff's claim is defamation," the remaining claims are derivative and "stand or fall with the underlying defamation claim." *See Unelko Corp. v. Rooney*, 912 F.2d 1049, 1057-58 (9th Cir. 1990) (trade libel and tortious interference with business relationships are "subject to the same first amendment requirements that govern actions for defamation"); *see, e.g.*, *Chapman v. Journal Concepts, Inc.*, No. 07-00002 JMS/LEK, 2008 U.S. Dist. LEXIS 104448, at *58 (D. Haw. Dec. 24, 2008) ("claims of disparagement of trade, tortious interference with business, false light, and emotional distress are all derivative"). As California's Supreme Court has held: "First Amendment limitations are applicable to all claims, *of whatever label*, whose gravamen is the alleged injurious falsehood of a statement[.]" *Blatty*, 42 Cal. 3d at 1044-45 (emphasis added). Consequently, the arguments laid out above in Count I as to opinion, falsity, and fault defeat this claim for the same reasons.

Further, the Complaint fails to plead the required false statements concerning MeetingTV's product quality. To the contrary, the Complaint admits that "Defendants [] acknowledged in the Report that the extensions were legitimate functioning products." (Compl. ¶ 192.) The Report "further acknowledges that Plaintiff's extensions 'were functional tools that delivered real value,'" (¶ 193), that "users got what was advertised" and the extensions "earned trust and positive reviews" (¶ 194). A publication that readily acknowledges the legitimate and functional quality of the plaintiff's product cannot double

KOI SECURITY INC.'S MOTION TO DISMISS AND ANTI-SLAPP MOTION TO STRIKE

ACTIVE 722818961

as trade libel of the same alleged product.  That ends the inquiry.[10]

The Complaint also fails to plead special damages, as required by California law. Special damages are actual pecuniary loss traceable to identifiable third parties who refused to deal with the plaintiff because of the challenged statements.  *Isuzu Motors Ltd. v. Consumers Union*, 12 F. Supp. 2d 1035 (C.D. Cal. 1998).  Trade libel "requires pleading and proof of special damages in the form of pecuniary loss."  *Id*. at 1046 (citing *Leonardini v. Shell Oil Co.*, 216 Cal. App. 3d 547, 572 (1989)).  The pleading must name specific lost transactions.  *Pridonoff v. Balokovich*, 36 Cal. 2d 788, 792 (1951).  The Complaint does none of this.  It pleads broad categories of harm ("lost subscriptions, blocked services, and lost business opportunities") without identifying specific customers, contracts, or transactions lost because of the Report, as opposed to the automated, downstream third-party blocking or causes that occurred prior to the Report's publication. (*See, e.g.*, Compl. ¶ 578.)  The Complaint also fails to allege specific contracts and dollar figures.  These defects require dismissal of the trade libel claim.

### 4.    The Complaint Fails to State a Claim for Either Intentional or Negligent Interference with Prospective Economic Advantage (Counts III and IV)

Pleading tortious interference requires alleging "(1) an economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentional acts on the part of the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the acts of the defendant.'"  *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1153 (2003) (quotation omitted).    When tortious interference is alleged in the context of

---

[10] Lastly, though not pled, reputational harm is not applicable to trade libel claims.  *See, e.g.*, *Storm Mfg. Group v. Weather Tec Corp.*, 2013 U.S. Dist. LEXIS 136882 at *28 (C.D. Cal. 2013) (*citing Microtec Research, Inc. v. Nationwide Mutual Ins. Co.*, 40 F.3d 968, 972 (9th Cir. 1994) ("the purpose of a trade libel claim is to redress pecuniary harm only.").

KOI SECURITY INC.'S MOTION TO DISMISS AND ANTI-SLAPP MOTION TO STRIKE
ACTIVE 722818961

constitutionally protected speech, it is "subject to the same First Amendment requirements that govern actions for defamation." *Unelko Corp. v. Rooney*, 912 F.2d 1049, 1058 (9th Cir. 1990) (citations omitted). Plaintiff fails to meet this standard.

First, intentional interference requires an independently wrongful act "by some legal measure other than the fact of interference itself." *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1158-59 (2003). It is not enough to allege the defendant acted "with [] improper motive." *Id*. at 1158. Here, the Complaint tethers the independent wrong to Counts I (defamation) and II (trade libel). (Compl. ¶ 577.) That is Plaintiff's admitted theory of the independent wrong. Because the defamation and trade libel claims fall, so too does the intentional tortious interference claim.

Second, the Complaint does not plead targeted interference with any specific relationships. Intentional interference requires conduct targeted at a known economic relationship. *See Korea Supply*, 29 Cal. 4th 1134, 1153 (2003). The allegation here that there was knowledge of any relationship is conclusory and implausible. The most plausible inference is the opposite: the Complaint pleads that third parties blocked Plaintiff's domains automatically, on their own accord, without human review. MeetingTV admits that Koi Corp. never contacted Plaintiff's subscribers, customers, or any third party. Indeed, the Complaint explicitly asserts third parties relied on the Report (Compl. ¶ 406) when it (improperly) faults Koi Corp. for not reaching out to disabuse these third parties: "Defendants failed to contact the vendors and network operators that had already ingested the erroneous threat intelligence." (Compl. ¶ 490.)

Finally, the negligent interference claim fails for lack of duty. Pleading negligent interference requires clearing a high bar. MeetingTV's Complaint does not come close. At the outset, "[t]he tort of negligent interference with economic relationship arises only when the defendant owes the plaintiff a duty of care." *Silicon Knights v. Crystal Dynamics*, 983 F. Supp. 1303, 1313 (N.D. Cal. 1997). "This duty may arise from a contractual, statutory, or 'special relationship' . . . [which] typically arises where the plaintiff is a beneficiary of a contract between two parties." *Id.*

24

The Complaint does not allege Koi Corp. owed a duty to MeetingTV aside from a solitary allegation: "Defendants owed Plaintiff a duty of reasonable care when conducting cybersecurity attribution research." (Compl. ¶ 582.) This conclusory allegation is far from sufficient and constitutes a surreptitious novel theory of liability. Plaintiff's theory would expand liability in sweeping fashion, imposing a duty for every published research report that merely wishes to contribute to the cybersecurity ecosystem. This is not the law. If it were, it would destroy the cybersecurity research industry because no researcher could publish anything without triggering a flood of negligence claims.

MeetingTV will not be able to cite to "authority for [the] contention that a wrongful act by a defendant, without more, constitutes a 'special relationship' for which a defendant may be held liable for negligent interference with prospective economic advantage." *Silicon Knights*, 983 F. Supp. at 1313. Plaintiff's reliance on "industry standards of care" in cybersecurity research (Compl. ¶¶ 350-369) does not fill the pleading gaps. Professional norms do not automatically convert into legally cognizable tort duties under California law.

Plaintiff alleges that Koi Corp. published a report on Koi's own webpage, without any prior discussions with Plaintiff (or any third party) and without Plaintiff's knowledge. The only plausible inference is that there was no relationship at all, let alone a special one.

### 5. The Complaint Fails to State a Claim For Civil Conspiracy (Count V)

"Conspiracy is not an independent tort[.]" *Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal. 4th 503, 514 (1994). "Standing alone, a conspiracy does no harm and engenders no tort liability. It must be activated by the commission of an actual tort." *United Tactical Sys. LLC v. Real Action Paintball, Inc.*, 108 F. Supp. 3d 733, 754 (N.D. Cal. 2015) (citation omitted). Because all tort claims against Koi Corp. fail, so does the conspiracy claim.

California courts "insist upon a higher level of specificity than is usually demanded of other pleadings" for conspiracy claims. *Alfus v. Pyramid Tech. Corp.*, 764 F. Supp.

ACTIVE 722818961

598, 606-07 (N.D. Cal. 1991). Plaintiff must allege "with sufficient factual particularity that defendants reached some explicit or tacit understanding or agreement." *Id.* at 608. "It is not enough to show that defendants might have had a common goal unless there is a factually specific allegation that they directed themselves toward this wrongful goal by virtue of a mutual understanding or agreement." *Id.* at 607; *accord Wasco Prods., Inc. v. Southwall Techs., Inc.*, 435 F.3d 989, 992 (9th Cir. 2006); *Ponomarenko v. Shapiro*, 287 F. Supp. 3d 816, 831 (N.D. Cal. 2018).

Here, the Complaint, which suffers from group pleading, supplies none of that. It pleads only that "Defendants agreed among themselves to investigate, prepare, publish, and promote the Report" and that the publication was "reviewed, approved, authorized, or ratified by multiple Defendants acting in concert." (Compl. ¶¶ 592-593.) The Complaint's claim that Defendants "shared branding, personnel, infrastructure, and coordinated publication processes," (Compl. ¶ 594), cannot salvage the claim. *Alfus* is on point: "[t]here is no authority for inferring conspiratorial conduct from the fact of corporate position or responsibility." *Alfus*, 764 F. Supp. at 607.

### 6. The Complaint Fails to State a Claim For Violations of California's Unfair Competition Law (UCL) (Count VI)

California's UCL has three independent prongs, prohibiting any "unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. Plaintiff's claims under all three prongs fail.

First, the unlawful prong fails because there is no independent violation of the law. Plaintiff's "unlawful" is tethered to the "defamation, trade libel, and interference with economic relationships." (Compl. ¶ 602.) That is Plaintiff's only theory under the unlawful prong. To the extent Counts I through Counts IV fall, so does the unlawful prong of the UCL. *See Ingels v. Westwood One Broad. Servs., Inc.*, 129 Cal. App. 4th 1050, 1060 (2005). When "a plaintiff cannot state a claim under a 'borrowed' law[,]" the plaintiff "cannot state a UCL claim either." *Silcox v. State Farm Mut. Auto. Ins. Co.*, No. 14cv2345 AJB (MDD), 2014 U.S. Dist. LEXIS 176297, at *14 (S.D. Cal. Dec. 22, 2014)

KOI SECURITY INC.'S MOTION TO DISMISS AND ANTI-SLAPP MOTION TO STRIKE
ACTIVE 722818961

(Battaglia, J.).

Second, there is no basis for the "unfair" prong theory because the Complaint does not allege Koi Corp. competes with MeetingTV.  The "unfair" prong requires competitor conduct that "threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition."  *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 187 (1999).  The Complaint here alleges that Koi Corp. is a cybersecurity research company.  It explains that MeetingTV sells webinar-search and meeting-recording services.  These are different markets, customers, and products.  Without a competitive relationship—let alone conduct that threatens competition—the unfair prong cannot stand.

Third, the fraudulent prong fails because there was no consumer deception and the Complaint does not clear the Rule 9(b) heightened pleading bar requiring alleging 'who, what, when, where, and how'.  As to consumer deception, the "fraudulent" prong requires conduct with a capacity to deceive "reasonable consumer[s]." *Chancy v. Fossil Grp., Inc.*, No. 25-cv-1566-AJB-DEB, 2025 U.S. Dist. LEXIS 229665, at *18 (S.D. Cal. Nov. 21, 2025) (Battaglia, J.).  Under the reasonable consumer test, MeetingTV must show that members of the public are "likely to be deceived." *Id*. at *18 (citing *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008)).  MeetingTV's theory is that this prong is satisfied because "Defendants' conduct . . . had the capacity to deceive security vendors and customers into believing Plaintiff operated malicious infrastructure." (Compl. ¶ 604.)  But there is nothing to suggest that the Report's readers overlap with MeetingTV's consumers.  It is implausible that they would be the same.

Fourth, the presumption against extraterritoriality "***applies to the UCL in full force***," warranting its dismissal.  (*Id.* at *14) (bold and italics in original) (quoting *Sullivan v. Oracle Corp.*, 51 Cal. 4th 1191, 1207 (2011)).  As this Court has noted, it is immaterial whether "Plaintiffs are California residents"; the proper inquiry is as to where the conduct occurred.  *Sajfr v. BBG Communs., Inc.*, No. 10cv2341 AJB (NLS), 2012 U.S. Dist.

KOI SECURITY INC.'S MOTION TO DISMISS AND ANTI-SLAPP MOTION TO STRIKE
ACTIVE 722818961

LEXIS 15198, at *12, *15 (S.D. Cal. Jan. 10, 2012) (Battaglia, J.). MeetingTV never alleges that *any* conduct took place within, or emanated from, the State of California. No defendant is a resident of California. Because all the complained-of conduct happened extraterritorially, even taking the Complaint on its face, Count VI must be dismissed.

### 7. The Complaint Fails to State a Claim For False Advertisement Under the Lanham Act (Count VII)

"To assert a false advertising claim under the Lanham Act, a plaintiff must allege: (1) a false statement of fact in a commercial advertisement about its own or another's product that (2) actually deceived or tended to deceive a substantial segment of its audience, (3) was material to purchasing decisions, (4) entered interstate commerce, and (5) injured or is likely to injure the plaintiff, either by direct diversion of sales from it to the defendant or by a lessening of the goodwill associated with its products." *Automated Pet Care Prods., LLC v. PurLife Brands, Inc.*, 703 F. Supp. 3d 1022, 1031 (N.D. Cal. 2023) (Pitts, J.) (citing *Skydive Arizona, Inc. v. Quattrocchi*, 673 F.3d 1105, 1110 (9th Cir. 2012)). The claim fails at the threshold.

### a. The Report Is Outside The Scope of the Lanham Act Because It Is Not Commercial Speech

To plead "commercial advertising or promotion," a plaintiff must allege "(1) commercial speech, (2) by a defendant who is in commercial competition with plaintiff, (3) for the purpose of influencing consumers to buy defendant's goods or services, and (4) that is sufficiently disseminated to the relevant purchasing public." *Ariix, LLC v. NutriSearch Corp.*, 985 F.3d 1107, 1114–15 (9th Cir. 2021) (quoting *Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.*, 173 F.3d 725, 735 (9th Cir. 1999).

A cybersecurity "research report" (Compl. ¶ 14), authored by "cybersecurity researchers" (Compl. ¶ 362), published under a "KOI RESEARCH" banner (Compl. ¶ 14 & Ex. 1), is not commercial advertising under the law. It is research commentary.

Plaintiff's attempt to manufacture a commercial character from two features of the Report—a "Book a demo" link (*id.* ¶ 615) and the Report's timing relative to a business transaction (*id.* ¶ 614)—both fall short. The inquiry's "crux is on whether the speaker had

KOI SECURITY INC.'S MOTION TO DISMISS AND ANTI-SLAPP MOTION TO STRIKE
ACTIVE 722818961

an adequate economic motivation so that the economic benefit was the primary purpose for speaking." *Ariix*, 985 F.3d at 1117. But "not all types of economic motivation support commercial speech. A simple profit motive to sell copies of a publication or to obtain an incidental economic benefit, without more, does not make something commercial speech." *Id.* at 1117. The "Book a demo" link fits squarely within this type of activity. As to the second issue, the commercial motive needs to be the primary purpose and influence consumers to buy Koi Corp.'s products and services. Every researcher who publishes findings that enhance their professional reputation derives some economic benefit. If that alone sufficed to trigger the Lanham Act, every academic paper, policy report, or technical blog post that burnished its author's credentials could be recharacterized as commercial advertising—a result at odds with the First Amendment.

Further, the Lanham Act's commercial-advertising test requires that the defendant be "in commercial competition" with one another. *Ariix*, 985 F.3d at 1115. Koi Corp. and MeetingTV are not competitors. Koi Corp. sells cybersecurity threat intelligence to enterprise security teams; MeetingTV sells webinar-search and meeting-recording services to subscribers. Different markets, different customers, different products.

Under *Lexmark*, MeetingTV must plead proximate causation of a commercial injury as well. *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 134 n.6 (2014). For the reasons already explained *supra* on Part IV.C.1.c., MeetingTV cannot plead a theory of proximate cause. The Lanham Act claim consequently falls as well.

**D.    California's Anti-SLAPP law mandates dismissal because the Complaint is an attempt to chill constitutionally protected speech and there is no probability of prevailing**

Plaintiff's claims directly implicate constitutional protections for reporting on significant issues of public interest. The Court must consequently "consider this case against the background of a profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open[.]" *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 270 (1964).

KOI SECURITY INC.'S MOTION TO DISMISS AND ANTI-SLAPP MOTION TO STRIKE

ACTIVE 722818961

The Ninth Circuit has emphasized that courts should consider First Amendment concerns even at the pleading stage. *See, e.g.*, *Flowers v. Carville*, 310 F.3d 1118, 1130 (9th Cir. 2002) ("[W]here a plaintiff seeks damages . . . for conduct which is prima facie protected by the First Amendment, the danger that the mere pendency of the action will chill the exercise of First Amendment rights requires more specific allegations than would otherwise be required.") "Defamation claims, in particular, must be advanced with sufficient specificity," *Harris v. City of Seattle*, 315 F. Supp. 2d 1112, 1123 (W.D. Wash. 2004), including "the precise statements alleged to be false and defamatory, who made them and when." *Flowers*, 310 F.3d at 1131.

### 1.    California's anti-SLAPP statute applies broadly in federal court

California's anti-SLAPP statute, CCP § 425.16, "was enacted to allow early dismissal of meritless first amendment cases aimed at chilling expression through costly, time-consuming litigation." *Metabolife Int'l, Inc. v. Wornick*, 264 F.3d 832, 839 (9th Cir. 2001). Courts, "whenever possible, should interpret the First Amendment and section 425.16 in a manner 'favorable to the exercise of freedom of speech, not its curtailment.'" *Briggs v. Eden Council for Hope & Opportunity*, 19 Cal. 4th 1106, 1119 (1999) (citation omitted); CCP § 425.16(a) (the anti-SLAPP law "shall be construed broadly").

The Ninth Circuit has made clear that CCP § 425.16 applies to state law claims brought in federal court because the statute was "crafted to serve an interest not directly served by the Federal Rules: the protection of 'the constitutional rights of freedom of speech and petition for redress of grievances.'" *U.S. ex rel. Newsham v. Lockheed Missiles & Space Co., Inc.*, 190 F.3d 963, 973 (9th Cir. 1999) (citation omitted); *Dean v. Kaiser Found. Health Plan, Inc.*, 562 F. Supp. 3d 928, 934 (C.D. Cal. 2022) ("California's anti-SLAPP statute may be used to challenge state law claims in federal question cases"); *Witt v. Ross*, No. 25-cv-02776, 2026 WL 926898, at *3 (N.D. Cal. Apr. 6, 2026) ("A motion under the anti-SLAPP statute may be brought in federal court against a plaintiff's state law claims.") Koi Corp. can therefore move to strike Plaintiff's state law claims asserted

KOI SECURITY INC.'S MOTION TO DISMISS AND ANTI-SLAPP MOTION TO STRIKE
ACTIVE 722818961

in this Court pursuant to CCP § 425.16 and California case law interpreting the same. *Herring Networks, Inc. v. Maddow*, 8 F.4th 1148, 1155 (9th Cir. 2021); *Thomas v. L.A. Times Commc'ns, LLC*, 189 F. Supp. 2d 1005, 1010 (C.D. Cal. 2002).

The law creates a "two-step process for determining" whether a cause of action should be stricken under CCP 425.16. *Varian Med. Sys., Inc. v. Delfino*, 35 Cal. 4th 180, 192 (2005) (citations and quotations omitted); CCP § 425.16(b)(1).

First, the court decides whether the defendant has made a threshold showing that "the plaintiff's suit arises from an act both (a) in furtherance of the defendant's constitutional right to free speech, *and* (b) in connection with a public issue[.]" *Eliott v. Lions Gate Ent. Corp.*, 639 F. Supp. 3d 1012, 1023 (C.D. Cal. 2022) (quotations omitted) (citing *Makaeff*, 715 F.3d at 261 and *Hilton v. Hallmark Cards*, 599 F.3d 894, 903-08 (9th Cir. 2010)).  This prong is satisfied if relief is sought based on allegations arising from activity protected under any one of the four categories outlined in Section 425.16(e). *Nygård, Inc. v. Uusi-Kerttula*, 159 Cal. App. 4th 1027, 1036 (2008); *Witt*, 2026 WL 926898, at *5 ("The defendant bears the burden of demonstrating that the protected activity supplies the elements of the plaintiff's cause of action . . . The defendant further bears the burden of demonstrating that its activity was protected by fitting its action into one or more of the four categories spelled out in the anti-SLAPP statute.")  As applicable in this case, an act in furtherance of a person's right of free speech includes: "(3) any written or oral statement or writing made in a place open to the public or in a public forum in connection with an issue of public interest, or (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest."  CCP § 425.16(e)(3)-(4).

If the first step is satisfied, "the burden then shifts to the plaintiff to establish a reasonable probability that it will prevail on its claim in order for that claim to survive dismissal." *Herring Networks, Inc.*, 8 F.4th at 1155 (cleaned up).  "Under this standard, the claim should be dismissed if the plaintiff presents an insufficient legal basis for it, or if, on the basis of the facts shown by the plaintiff, 'no reasonable jury could find for the

ACTIVE 722818961

plaintiff.'" *Anthem Blue Cross Life & Health Ins. Co. v. Halomd LLC*, No. 25-CV-01467, 2026 U.S. Dist. LEXIS 79243, at \*29-30 (C.D. Cal. Apr. 9, 2026).

Where, as here, the anti-SLAPP motion asserts only legal (rather than factual) deficiencies in the Complaint, the Court conducts its analysis under the Rule 12(b)(6) pleading standard. *Eliott v. Lions Gate Ent. Corp.*, 639 F. Supp. 3d at 1023; *Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 890 F.3d 828, 834 (9th Cir. 2018) (same). Thus, as set forth in Part III, *infra* (discussing Rule 12(b)(6) review standard), in applying Section 425.16 here, "a claim is considered legally sufficient when the allegations, viewed in the light most favorable to the [p]laintiff, as 'plausible on [their] face.'" *Heller v. NBC Universal, Inc.*, No. CV-15-09631-MWF-KS, 2016 WL 6583048, at \*3 (C.D. Cal. June 29, 2016) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

### 2. The Complaint targets allegations at protected activity under the anti-SLAPP statute

Here, all causes of action are premised on the content of the research blog on Koi's website. This implicates protected speech. Each claim therefore falls squarely within the scope of protection afforded by Section 425.16(e)(3) and (e)(4). The first prong is focused "not on the form of plaintiff's cause of action, but, rather, the defendant's activity that gives rise to his or her asserted liability—and whether that activity constitutes protected speech or petitioning." *Navellier v. Sletten*, 29 Cal. 4th 82, 92 (2002) (emphasis removed); *Hunter v. CBS Broad., Inc.*, 221 Cal. App. 4th 1510, 1520 (2013) ("In assessing whether a cause of action arises from protected activity, we disregard the labeling of the claim and instead examine the principal thrust or gravamen of the plaintiff's cause of action . . . by identifying [t]he allegedly wrongful and injury-producing conduct . . . that provides the foundation of the claim.") (cleaned up).

Within the anti-SLAPP law, "any issue in which the public is interested," is "an issue of public interest." *Nygård, Inc.*, 159 Cal. App. 4th at 1042 (internal quotations omitted, emphasis in original); *Cross v. Facebook, Inc.*, 14 Cal.App.5th 190 (2017)

KOI SECURITY INC.'S MOTION TO DISMISS AND ANTI-SLAPP MOTION TO STRIKE

ACTIVE 722818961

(reiterating the "issue of public interest" is construed broadly).

The speech that Plaintiff complains of—the results of extensive research into cybersecurity threat actors—goes to the heart of an important public issue: safety and security online. Here, the DarkSpectre report identified IOCs tied to malware campaigns affecting enterprise users worldwide. It was published on a research blog available to the public with no paywall. *See, e.g.*, *Barrett v. Rosenthal*, 40 Cal.4th 33, 59 n.4 (2006) (webpages accessible to the public are public forums for purposes of the anti-SLAPP law*); WPEngine, Inc. v. Automattic Inc.*, No. 24-cv-06917-AMO, 2025 U.S. Dist. LEXIS 179595, at *36-38 (N.D. Cal. Sep. 12, 2025) (finding that defendant's statements made on the internet (a public forum) regarding service providers constituted protected activity within the meaning of California's anti-SLAPP statute).

Moreover, the Report is safety research and not competitive mudslinging. *See, e.g.*, *NewNet, Inc. v Lavasoft*, 356 F. Supp. 2d 1090, 1105 (C.D. Cal. 2004) (finding defendant's speech to be in the public interest where defendant notified the public that unwanted software applications were being downloaded without user knowledge or consent). *See also Makaeff*, 715 F.3d at 263 ("Anonymous third-party websites" to "alert other consumers" constituted consumer protection information because the posts were intended as "a warning not to use plaintiffs' services' and came in the context of information that provided to aid consumers") (internal citations omitted); *Wong v. Jing*, 189 Cal. App. 4th 1354, 1366 (2010) ("Web sites accessible to the public are public forums for purposes of the anti-SLAPP statute[.]")

The Report's publication was undertaken in connection with an issue of public interest because it conveyed consumer-oriented warnings that transcended a private dispute between the Parties. By reporting threat intelligence information that warned of compromised platforms and malware, the publication of the report provided valuable safety information to people across the globe, illuminating matters that "affect[ed] large numbers of people beyond the direct participants." *Wilbanks v. Wolk*, 121 Cal. App. 4th 883, 898 (2004). The Report, aimed at adding to the conversation on global cybersecurity

KOI SECURITY INC.'S MOTION TO DISMISS AND ANTI-SLAPP MOTION TO STRIKE

ACTIVE 722818961

threats, "is a paradigmatic example of 'conduct in furtherance of the exercise of the constitutional right of . . . free speech in connection with a public issue or an issue of public interest." *Geiser v. Kuhns*, 13 Cal.5th 1238, 1255 (2022) (quoting CCP § 425.16(e)(4)). The "functional relationship [] between the speech and the public conversation about [a] matter of public interest" could hardly be more clear or direct in this case. *FilmOn.com Inc. v. DoubleVerify Inc.*, 7 Cal.5th 133, 149-50 (2019). Indeed, all seven of Plaintiff's claims arise from that very relationship.

> **3.     Plaintiff cannot satisfy the requirement that it will prevail on the merits, even looking only to the Complaint and judicially noticeable facts.**

Because Koi Corp. easily satisfies step one of the anti-SLAPP law analysis, the burden shifts to Plaintiff to demonstrate a probability of success on the merits. *Doe v. Gangland Prods., Inc.*, 730 F.3d 946, 953 (9th Cir. 2013). Due to the laundry list of defects with the Complaint's substantive defamation and derivative claims, striking the Complaint is appropriate. As demonstrated in the Rule 12(b)(6) analysis above, Plaintiff cannot carry that burden on any of its seven claims. Each of these deficiencies is a legal bar, not a factual gap that could be cured through discovery or amendment.

Because each of the claims fails on the merits under Rule 12(b)(6), MeetingTV cannot establish a probability of prevailing. Striking the Complaint is therefore appropriate under the anti-SLAPP statute. *Planned Parenthood*, 890 F.3d at 832-34 (stating that the 12(b)(6) standard applies when considering an anti-SLAPP motion in federal court when the motion challenges the legal, rather than factual, sufficiency of the claims); *Gopher Media LLC v. Melone*, 154 F.4th 696, 705 n.3 (9th Cir. 2025) (same).

> **E.     Plaintiff's Demand for Injunctive Relief is an Improper Prior Restraint**

In its prayer for relief, MeetingTV seeks a slew of speech-related mandatory affirmative injunctions (Compl. p. 61.) This injunction would violate the First Amendment and constitute an unconstitutional prior restraint. *See, e.g.*, *Crosby v. Bradstreet Co.*, 312 F.2d 483, 485 (2d Cir. 1963); *Mahmoodian v. Pirnia*, No. 3:11-cv-

KOI SECURITY INC.'S MOTION TO DISMISS AND ANTI-SLAPP MOTION TO STRIKE
ACTIVE 722818961

005, 2012 WL 4458160, at *9 (W.D. Va. June 7, 2012), *aff'd*, 489 F. App'x 711 (4th Cir. 2012); *Gunder's Auto Ctr. v. State Farm Ins.*, 617 F. Supp. 2d 1222, 1225 (M.D. Fla. 2009), *aff'd*, 442 F. App'x 819 (11th Cir. 2011); *Tilton v. Capital Cities/ABC Inc.*, 827 F. Supp. 674, 682 (N.D. Okla. 1993); *Konigsberg v. Time, Inc.*, 288 F. Supp. 989, 989 (S.D.N.Y. 1968).

## V.    CONCLUSION

The Complaint should be dismissed without leave to amend. *Wheeler v. City of Santa Clara*, 894 F.3d 1046, 1059 (9th Cir. 2018) ("Leave to amend may be denied if the proposed amendment is futile or would be subject to dismissal").

An amendment here would be futile: the jurisdictional flaws are fatal and cannot be cured by repleading. Plaintiff has already submitted a 680+ paragraph pleading—multiple complaints' worth of content. Speech protections will preclude liability regardless of repleading. The First Amendment protects cybersecurity research, as does California's anti-SLAPP law. The opinion doctrine, Lanham Act "commercial advertising" requirement, and trade libel special damages are all legal deficiencies that cannot be cured. They are not factual gaps that would benefit from another bite at the apple. So too with respect to MeetingTV's fundamental chain of causation problems caused by prior publications having nothing to do with Koi Corp.

For these reasons, Defendant Koi Corp. respectfully requests that the Court: (1) dismiss the Complaint with prejudice pursuant to Fed. R. Civ. P. 8, 12(b)(2), and 12(b)(6); (2) strike the Complaint pursuant to CCP § 425.16; and (3) award Defendant Koi Corp. its reasonable attorneys' fees and costs pursuant to California's Anti-SLAPP law, CCP § 425.16(c)(1). *Ketchum v. Moses*, 24 Cal. 4th 1122, 1131 (2001) ("any SLAPP defendant who brings a successful motion to strike is entitled to mandatory attorney fees," which are intended to "discourage [] strategic lawsuits against public participation by imposing the litigation costs on the party seeking to chill the valid exercise of the constitutional rights of freedom of speech") (cleaned up).

ACTIVE 722818961

Respectfully submitted,

Dated: April 28, 2026

By:   /s/ Michael Burshteyn
Michael Burshteyn
Marcelo Barros
Vincent H. Chieffo
Nina D. Boyajian
Peter Wahby (*pro hac vice forthcoming*)
Holmes Hampton (*pro hac vice forthcoming*)
Candra Connelly (*pro hac vice pending*)

GREENBERG TRAURIG, LLP
*Attorneys for Defendant*
*KOI SECURITY INC.*

36

ACTIVE 722818961