Bradley K. Moores (SBN: 193995)
brad@bradleymoores.com
6811 Alvarado Rd. 20
San Diego, CA 92120
(619) 742-8612
Attorney for Plaintiff,
MEETINGTV INC.

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MEETINGTV INC.,<br><br>                                    Plaintiff,<br><br>v.<br><br>KOI SECURITY INC.; KOI SECURITY LTD.; AMIT ASSARAF; IDAN DARDIKMAN; TUVAL ADMONI; GAL HACHAMOV; PALO ALTO NETWORKS, INC.; and DOES 1 – 25, Inclusive,<br><br>                                    Defendants. | Case No.: 3:26-cv-01705-AJB-MMP<br><br>**PLAINTIFF MEETINGTV INC.'S NOTICE OF MOTION AND MOTION FOR LIMITED EXPEDITED DISCOVERY REGARDING PRESERVATION, DELETION, MODIFICATION, AND AVAILABILITY OF KOIDEX RECORDS; MEMORANDUM OF POINTS AND AUTHORITIES** |

PLEASE TAKE NOTICE: That Plaintiff MeetingTV, Inc. ("MeetingTV") hereby moves pursuant to Federal Rules of Civil Procedure Rules 26(d), 26(b), and 34, and the Court's May 29, 2026, Order granting leave to file a motion for early discovery, for an order permitting narrowly tailored expedited discovery concerning the preservation, deletion, modification, restoration, custodianship, and availability of records associated with 18 browser extensions specifically identified in Defendants' publication entitled *DarkSpectre: Unmasking the Threat Actor Behind 8.8 Million Infected Browsers* (the "DarkSpectre Report").

This motion is based upon this Notice, the accompanying Memorandum of Points and Authorities, all pleadings and papers on file, and such additional argument and evidence as may be presented.

1

3:26-cv-01705-AJB-MMP

Dated: June 8, 2026

Respectfully Submitted,

/s/ Bradley K. Moores
BRADLEY K. MOORES
Attorney for Plaintiff,
MEETINGTV INC.
E-mail: brad@bradleymoores.com

3:26-cv-01705-AJB-MMP

**MEMORANDUM OF POINTS AND AUTHORITIES TABLE OF CONTENTS**

Pg.

I.  INTRODUCTION ....……………………………………………………........6

II.  PROCEDURAL BACKGROUND.………………………………………………6

  A. Filing of the Action ……………………........................ …………………….....6

  B. Preservation Efforts.…………………………………………………………………7

  C. Informal Discovery Conference.………………………………………………………7

  D. Court Authorization to File This Motion.………………………………………………8

III.  FACTUAL BACKGROUND.……………………………………………………8

  A. The DarkSpectre Report Identified 18 Browser Extensions.……………………………...8

  B. The Complaint and First Amended Complaint Cite Koidex Records.……………………8

  C. Koidex Records Identified in the Original Complaint Changed After Filing.……………8

  D. New Copycat Records Are Appearing.………………………………………………..…9

  E. The Koidex Records Appear to Be AI-Generated.……………………………………….…9

  F. Palo Alto's Acquisition Heightens Preservation Concerns.……………………………....9

IV.  LEGAL STANDARD.………………………………………………………...10

  A. Federal Rules of Civil Procedure Rule 26(d) Permits Expedited Discovery Upon Court Order.………………………………………………………………………..10

  B. Courts Within the Ninth Circuit Apply a Good-Cause Standard.………………….…...10

  C. Preservation Concerns and Dynamic Electronically Stored Information Support Expedited Discovery.……………………………………………………………11

V.  ARGUMENT.………………………………………………………………13

  A. Good Cause Exists for Expedited Discovery.……………………………………………13

    1. The Requested Discovery Is Narrowly Tailored.……...………………………………13

    2. The Requested Information Is Central to the Claims and Defenses.……………...13

    3. The Information Is Uniquely Within Defendants' Possession, Custody, or Control.……………………………………………………………13

    4. Relevant Evidence Has Already Changed During the Pendency of the Litigation.………………………………………………………………14

    5. Delay Risks Loss of Unique AI-Generated Historical Evidence.………………14

    6. The Burden on Defendants Is Minimal.………………………………………...15

    7. The Balance of Equities Strongly Favors Expedited Discovery.…………..……15

3:26-cv-01705-AJB-MMP

B.  Defendants' IDC Position Misstates the Nature of Plaintiff's Request and Further Demonstrates the Need for Limited Expedited Discovery……………………….…....…..16

    1.    Plaintiff Is Not Seeking Broad Discovery……………………………….…………16

    2.    Plaintiff Does Not Possess the Information It Seeks………………….…………16

    3.    The Issue Is the Disappearance of Records, Not Routine Updating…….………..16

VI.    SCOPE OF PROPOSED EXPEDITED DISCOVERY…………………….…....……..17

    A.  Proposed Requests for Production.……………………………………………………17

    B.  Proposed Limitations.…………………………………………………………………17

VII.    CONCLUSION.………………………………………………………………….......17

VIII.    REQUEST FOR RELIEF………………………………………………………...…18

EXHIBIT 8………………………………………………...………………….…..19

## MEMORANDUM OF POINTS AND AUTHORITIES TABLE OF AUTHORITIES

**FEDERAL CASES** **Page**

*American LegalNet, Inc. v. Davis,*
    673 F. Supp. 2d 1063 (C.D. Cal. 2009)……………………………………………….10

*Apple Inc. v. Samsung Elecs. Co.,*
    2011 LX 60373 (N.D. Cal. May 18, 2011)…………………………………………11

*Balboa Threadworks, Inc. v. Stucky,*
    2006 U.S. Dist. LEXIS 29265, 2006 WL 763668 (D. Kan. Mar. 24, 2006)…………….12

*Columbia Pictures, Inc. v. Bunnell,*
    245 F.R.D. 443 (C.D. Cal. 2007)………………………………………………...12

*Pod-Ners, LLC v. Northern Feed & Bean of Lucerne, Ltd. Liability Co.,*
    204 F.R.D. 675 (D. Colo. 2002)……………………………………………11 – 13

*Qwest Commc'ns Int'l, Inc. v. WorldQuest Networks, Inc.,*
    213 F.R.D. 418 (D. Colo. 2003)…………………………………………………11

*Semitool, Inc. v. Tokyo Electron Am., Inc.,*
    208 F.R.D. 273 (N.D. Cal. 2002)………………………………………………..10

**FEDERAL STATUTES**

**Federal Rules of Civil Procedure**

Rule 26(b)(2)(B)………………………………………………………………...12

Rule 26(d)……………………………………………………………………1, 8, 10

Rule 26(d)(1)…………………………………………………………………...10, 12

Rule 26(f)……………………………………………………………………10, 12

Rule 37………………………………………………………………………..11

Rule 37(e)……………………………………………………………………..11

Rule 37(f)……………………………………………………………………..11

3:26-cv-01705-AJB-MMP

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

Plaintiff MeetingTV Inc. seeks narrowly tailored expedited discovery concerning 18 specific browser extensions identified by Defendants in the DarkSpectre Report. This motion concerns the existence, preservation, alteration, availability, and recoverability of records associated with those extensions within Koi's' Koidex platform and related systems.

At the time Plaintiff commenced this action on March 18, 2026, Koidex publicly displayed records concerning browser extensions identified in the DarkSpectre Report. (Declaration of Michael Robertson "Robertson Dec." ¶¶ 3 – 5, Ex. 1 – 3.) Those records appeared to contain AI-generated analytical findings and technical information that formed part of the basis for Defendants' accusations that Plaintiff's software, browser extensions, domains, and infrastructure were associated with an alleged malware campaign.

Within approximately 12 days after the Complaint was filed, records associated with the extensions identified in the DarkSpectre Report ceased returning the reports that existed when this action commenced. (Robertson Dec. ¶¶ 6, 7, Ex. 4, 5.) Searches that previously returned records no longer did so. (*Ibid.*) URLs that previously displayed extension-specific reports began returning generic placeholder pages or "Unknown Item" pages. (*Ibid*.)

Plaintiff promptly issued a preservation demand requesting preservation of all relevant records, versions, logs, metadata, backups, AI outputs, and related electronically stored information. (Robertson Dec. ¶ 9, Ex. 7.) Since that time, preservation concerns have increased.

Plaintiff has documented changes to Koidex records, newly appearing similarly named entries, and preservation risks arising from AI-generated technical records and post-acquisition system integration. (Robertson Dec. ¶ 8, Ex. 6.)

The requested discovery is narrowly tailored and limited to determining the existence, preservation, alteration, and recoverability, and is necessary to prevent potential loss of unique evidence.

### II.   PROCEDURAL BACKGROUND

#### A.   Filing of the Action

Plaintiff commenced this action on March 18, 2026. On May 13, 2026, Plaintiff filed its First Amended Complaint ("FAC"). The operative FAC challenges statements and technical

3:26-cv-01705-AJB-MMP

assertions published by Defendants in the DarkSpectre Report concerning Plaintiff's software, browser extensions, domains, and related infrastructure. Plaintiff alleges that Defendants falsely associated Plaintiff and Plaintiff's technology with an alleged Chinese cybercriminal operation and malware activities and that those accusations were subsequently republished and relied upon by third parties.

### B. Preservation Efforts

After discovering that records associated with extensions identified in the DarkSpectre Report were no longer publicly accessible through Koidex, Plaintiff documented the disappearance of records that had previously been available through the platform. (Robertson Dec. ¶¶ 4 – 9, Ex. 2 – 7.)

On April 9, 2026, Plaintiff served a formal preservation and anti-spoliation demand requesting that Defendants preserve all copies, versions, backups, logs, metadata, AI-generated outputs, database records, audit trails, and related electronically stored information associated with the Koidex records relevant to this litigation. (Robertson Dec. ¶ 9, Ex. 7.) Plaintiff specifically requested preservation and recovery of records associated with the browser extensions identified in the DarkSpectre Report and sought assurances concerning the existence, location, and preservation of those records. (*Ibid.*) Plaintiff further requested preservation of any records that had already ceased being publicly accessible, including prior versions, backups, archives, snapshots, restoration sources, and related metadata. (*Ibid.*)

To date, Plaintiff has not received information sufficient to determine what happened to the records, whether they still exist, whether backups exist, whether restoration is possible, or whether original versions remain recoverable. (Robertson Dec. ¶¶ 4 – 9.)

### C. Informal Discovery Conference

The parties subsequently participated in the Court's Informal Discovery Conference process. In the Joint Discovery Statement submitted to the Court, Plaintiff identified concerns regarding the disappearance of Koidex records, the appearance of replacement or similarly named records, the potential loss of AI-generated historical outputs, and risks associated with the ongoing acquisition and integration of the Koi entities by Palo Alto Networks.

///

///

3:26-cv-01705-AJB-MMP

### D. Court Authorization to File This Motion

On May 29, 2026, the Court granted Plaintiff leave to file a motion for expedited discovery and established a briefing schedule for resolution of the dispute. Plaintiff now brings this Motion pursuant to the Court's authorization and Federal Rule of Civil Procedure Rule 26(d).

### III.    FACTUAL BACKGROUND

### A. The DarkSpectre Report Identified 18 Browser Extensions

On December 30, 2025, Defendants published the DarkSpectre Report, which accused Plaintiff's software, browser extensions, domains, and infrastructure of participation in an alleged malware campaign. (Robertson Dec. ¶ 4, Ex. 1.) As part of those accusations, Defendants identified 18 browser extensions by extension ID or name and characterized those extensions as components of the alleged "Zoom Stealer" campaign. (*Ibid*.)

### B. The Complaint and First Amended Complaint Cite Koidex Records

The operative FAC specifically alleges that Defendants published records through their KoiDex threat intelligence database relating to the extensions. (FAC ¶ 132.)

### C. Koidex Records Identified in the Original Complaint Changed After Filing

Within approximately 12 days after Plaintiff filed this action on March 18, 2026, records associated with the extensions identified in the original complaint ceased returning the reports that previously existed. (Robertson Dec. ¶¶ 6, 7, Ex. 4, 5.) The sequence of events is illustrated by the extension "Twiter X Video Downloader". Before the March 18, 2026, filing of the original complaint:

- Koidex returned a report for the extension
- The extension appeared in search results
- Koidex displayed a Critical classification
- Koidex displayed summary findings

(Robertson Dec. ¶¶ 4, 5, Ex. 2, 3.)

After commencement of this action, previously functioning report URLs ceased displaying the report that previously existed; and Koidex instead returned placeholder pages and "Unknown Item" pages. (Robertson Dec. ¶¶ 6, 7, Ex. 4, 5) Search results which previously returned a result now state "No items found matching your search." (*Ibid*.)

The disappearance does not appear to have resulted from a general platform outage, database failure, or routine maintenance. Koidex remained operational and continued returning records for numerous other browser extensions and software packages.

Importantly, Koidex is not merely a repository of malicious software. Defendants market Koidex as a software intelligence platform containing records for both benign and allegedly malicious software. If Defendants had merely changed their assessment of an extension, the expected result would be a revised classification, modified findings, reduced risk score, or updated analysis. The record itself would still exist.

### D. New Copycat Records Are Appearing

Prior to the filing of the original complaint, there were no search results returned for "Twitter X Video Downloader." Beginning on or about May 6, 2026, Plaintiff identified newly appearing Koidex records bearing names substantially similar to extensions relevant to this litigation. (Robertson Dec. ¶ 8, Ex. 6.) One example is an extension identified within Koidex as "Twitter X Video Downloader™." (*Ibid*.) The newly appearing extension is distinct from the extension "Twiter X Video Downloader" that appeared in Koidex before this litigation commenced. It uses different spelling and includes the trademark symbol.

### E. The Koidex Records Appear to Be AI-Generated

As alleged in the FAC, The Koidex records at issue are not ordinary static documents. Defendants publicly describe Koidex as an AI-powered platform that analyzes browser extensions and generates technical findings concerning security risks, malicious activity, vulnerabilities, external communications, dependencies, and related attributes.

### F. Palo Alto's Acquisition Heightens Preservation Concerns

During the pendency of this litigation, on or about April 14, 2026, Palo Alto Networks completed its acquisition of the Koi entities.  Corporate acquisitions commonly involve system integration, database migration, infrastructure consolidation, personnel changes, and modifications to data-management practices. Such activities can complicate identification, preservation, and recovery of historical electronically stored information.

///

///

///

3:26-cv-01705-AJB-MMP

## IV.    LEGAL STANDARD

### A.  Federal Rules of Civil Procedure Rule 26(d) Permits Expedited Discovery Upon Court Order

Federal Rules of Civil Procedure Rule 26(d)(1) provides that a party generally may not seek discovery before the parties have conferred as required by Rule 26(f), except when authorized by court order.  Accordingly, federal courts possess broad discretion to permit expedited discovery when circumstances warrant departure from the normal discovery schedule.

### B.  Courts Within the Ninth Circuit Apply a Good-Cause Standard

Under Federal Rule of Civil Procedure 26(d)(1), a party may not seek discovery from any source before the parties have conferred as required by Rule 26(f), except when authorized by the Federal Rules, by stipulation, or by court order. Courts within the Ninth Circuit evaluate requests for such court-ordered early discovery under a flexible 'good cause' standard, which looks to the entirety of the circumstances. *See, Semitool, Inc. v. Tokyo Electron Am., Inc.*, 208 F.R.D. 273, 275 (N.D. Cal. 2002); *see also, American LegalNet, Inc. v. Davis*, 673 F. Supp. 2d 1063, 1066 (C.D. Cal. 2009).

Good cause exists where the need for expedited discovery outweighs the prejudice to the responding party and where the requested discovery is narrowly tailored to obtain information unavailable through other means. Courts evaluate requests for expedited discovery under Federal Rule of Civil Procedure 26(d)(1) using a conventional "good cause" standard. Under this standard, good cause is established where the need for early discovery, in consideration of the administration of justice, outweighs any prejudice to the responding party. *Semitool, Inc. v. Tokyo Electron Am., Inc.*, *supra.,* at 276. To determine whether a moving party has demonstrated good cause under the totality of the circumstances, courts commonly look to a non-exhaustive set of factors, examining whether:

- **The request is narrowly tailored:** The discovery must be narrowly directed toward the immediate, urgent issues rather than an expansive exploration of the merits. *Am. LegalNet, Inc. v. Davis*, 673 F. Supp. 2d 1063, 1067, 1069 (C.D. Cal. 2009)
- **The information is uniquely possessed:** The sought-after information resides uniquely within the custody, possession, or control of the opposing party

3:26-cv-01705-AJB-MMP

- **There is a risk of evidence destruction or unavailability:** A specific, imminent risk exists that critical evidence will be lost, altered, or destroyed absent prompt discovery. *Pod-Ners, LLC v. Northern Feed & Bean of Lucerne, Ltd. Liability Co.*, 204 F.R.D. 675, 676 (D. Colo. 2002) [expedited discovery may also be appropriate in cases where physical evidence may be consumed or destroyed with the passage of time, thereby disadvantaging one or more parties to the litigation]

- **The moving party will face prejudice:** Delaying the discovery timeline will result in irreparable injury or severely impair the moving party's ability to protect its rights or seek preliminary relief. *See, Apple Inc. v. Samsung Elecs. Co.*, No. 11-CV-01846-LHK, 2011 LX 60373 (N.D. Cal. May 18, 2011)

- **The burden is proportional:** The expedited burden imposed on the responding party remains proportionate to the immediate needs of the case pursuant to Rule 26(b)(1)

District courts routinely authorize expedited discovery where it is necessary to preserve volatile evidence, prevent the imminent loss or destruction of electronically stored information (ESI), or address urgent circumstances in which standard scheduling delays would fundamentally impair a party's ability to obtain critical data. *See, Qwest Commc'ns Int'l, Inc. v. WorldQuest Networks, Inc.*, 213 F.R.D. 418, 419 (D. Colo. 2003).

**C. Preservation Concerns and Dynamic Electronically Stored Information Support Expedited Discovery**

The Federal Rules recognize that electronically stored information may be altered, overwritten, migrated, deleted, or rendered inaccessible through the routine operation of information systems. Fed. R. Civ. P. 37(e). The Federal Rules address this phenomenon by creating a conditional "safe harbor" or limitation on sanctions when data is lost through these exact technical pathways. The conceptual framework is explicitly detailed in the Advisory Committee Note to the 2006 Amendment of Rule 37 (originally enacted as Rule 37(f)):

> Rule 37(f) [now 37(e)] responds to a distinctive and necessary feature of computer systems—the recycling, overwriting, and alteration of electronically stored information that attends normal use. The 'routine operation' of computer systems includes the alteration and overwriting of information, often without the operator's specific direction or awareness, a feature with no direct counterpart in hard-copy documents.

3:26-cv-01705-AJB-MMP

The Federal Rules recognize that data can be "rendered inaccessible." Fed. R. Civ. P. 26(b)(2)(B), which deals specifically with limitations on E-Discovery based on the technical burdens of modern data infrastructure, explicitly states: "A party need not provide discovery of electronically stored information from sources that the party identifies as not reasonably accessible because of undue burden or cost." The Advisory Committee Notes for Rule 26 supplement this by acknowledging that information systems frequently migrate, compress, or obscure data, stating that certain ESI may be difficult to obtain because it is "dependent on outdated or legacy systems" or "damaged, altered, or overwritten" via automatic technical workflows.

Where relevant information is dynamic, subject to modification, or potentially at risk of alteration, courts routinely permit limited preservation-focused discovery to identify, preserve, and protect relevant evidence pending ordinary discovery. Federal Rules of Civil Procedure, Rule 26(d)(1) provides an explicit carve-out from Rule 26(f) that grants courts the power to authorize early, limited discovery: "A party may not seek discovery from any source before the parties have conferred as required by Rule 26(f), except... when authorized by these rules, by stipulation, or by court order." Courts may rely on this phrase, "by court order," to permit early, "preservation-focused" or forensic discovery when dynamic data is actively endangered.

Such concerns are particularly compelling where the information sought consists of evolving technical records, metadata, logs, audit trails, version histories, databases, analytical outputs, or other electronically stored information maintained within proprietary systems that are inaccessible to the requesting party.

In *Columbia Pictures, Inc. v. Bunnell*, 245 F.R.D. 443, 446-447 (C.D. Cal. 2007), the Central District Court of California recognized that dynamic data held temporarily in RAM is highly volatile and subject to alteration, validating a party's demand for targeted preservation. Similarly, federal courts have allowed expedited discovery prior to the Rule 26(f) conference specifically because the evidence sought was dynamic and "at risk of being inadvertently destroyed or altered." *Pod-Ners, LLC v. Northern Feed & Bean of Lucerne Ltd., supra.*, at 676; *Balboa Threadworks, Inc. v. Stucky*, 2006 U.S. Dist. LEXIS 29265 , 2006 WL 763668 (D. Kan. Mar. 24, 2006) [court noted that because electronic data can be easily modified or deleted

3:26-cv-01705-AJB-MMP

through routine use, targeted early discovery to image hard drives is an acceptable preservation safeguard].

The need for prompt discovery is heightened where evidence suggests that relevant information has already changed during the pendency of the litigation and where the information necessary to determine the existence, status, preservation, and recoverability of such records is uniquely within the responding party's possession, custody, or control.

## V.    ARGUMENT

### A. Good Cause Exists for Expedited Discovery

Plaintiff easily satisfies the good-cause standard. The requested discovery is narrowly tailored, concerns information uniquely within Defendants' possession, and seeks to preserve evidence that has already changed during the pendency of the litigation. The balance of equities strongly favors permitting limited expedited discovery.

1.  The Requested Discovery is Narrowly Tailored.

Plaintiff seeks discovery concerning only the 18 browser extensions identified by Defendants in the DarkSpectre Report. The request is limited to determining the existence, preservation status, modification history, recoverability, and the existence, preservation, modification history, recoverability, and provenance and historical statuses associated with those extensions. The discovery is therefore narrowly tailored.

2.  The Requested Information is Central to the Claims and Defenses.

The records sought are central to Plaintiff's claims and Defendants' defenses because they bear directly on:

- Falsity
- Negligence
- Actual malice
- Publication and republication
- Causation
- Damages
- Defendants' analytical methodologies
- Plaintiff's allegations concerning AI-generated conclusions

3.  The Information is Uniquely Within Defendants' Possession, Custody, or Control.

Plaintiff cannot obtain the requested information from any source other than Defendants. The complete Koidex records, backend data, metadata, logs, version histories, AI-generated

3:26-cv-01705-AJB-MMP

outputs, backups, archives, and related technical information are maintained within Defendants' systems. Similarly, only Defendants can identify:

- Whether records existed
- Whether those records still exist
- Whether records remain recoverable
- What changes have occurred since publication
- Whether records were modified, archived, regenerated, or replaced
- What systems generated those records
- What information supported inclusion of any extension for which no supporting record existed

Without expedited discovery, Plaintiff has no mechanism to obtain this information.

4.  Relevant Evidence Has Already Changed During the Pendency of the Litigation.

As discussed in Section III.C, Plaintiff has documented that records associated with extensions identified in the DarkSpectre Report ceased returning the reports that existed when this litigation commenced. (Robertson Dec. ¶) Because Plaintiff cannot determine whether those records were deleted, archived, replaced, regenerated, merged, or otherwise altered, prompt discovery is necessary to determine their status and recoverability.

In addition, the appearance of similarly named records raises questions concerning the historical status, continuity, and recoverability of records associated with the extensions identified in the DarkSpectre Report.

5.  Delay Risks Loss of Unique AI-Generated Historical Evidence.

Because the records appear to be generated through AI-driven analytical processes, preservation concerns extend beyond the visible report pages themselves. Unlike a traditional document that can simply be reopened or reprinted, an AI-generated report may depend upon numerous inputs existing at a particular point in time, including:

- The version of the AI model being used
- Underlying source code being analyzed
- Threat-intelligence datasets
- Reputation feeds
- Prompts and system instructions
- Configuration settings
- Classification thresholds
- Supporting databases
- Search indexes

3:26-cv-01705-AJB-MMP

- Other dynamic inputs

AI systems are routinely updated, retrained, reconfigured, fine-tuned, or replaced as part of ordinary platform operation. Following such updates, the same software extension may produce materially different analytical output than it produced previously.

As a result, if the original Koidex records are not preserved, it may be impossible to accurately recreate the reports that existed when this action was filed. Even if Defendants later generate a report concerning the same extension, the regenerated output may differ materially from the report that existed when the challenged accusations were made.

The original AI-generated outputs, version histories, associated metadata, model information, and related records may therefore constitute unique evidence that cannot be reliably recreated once underlying systems, models, datasets, or configurations change.

6.  The Burden on Defendants Is Minimal.

The burden imposed by the requested discovery is modest. Defendants already know the identity of the 18 extensions because Defendants themselves selected those extensions for inclusion in the DarkSpectre Report. The requested discovery concerns only those extensions and seeks only information concerning the existence, preservation, modification, availability, and recoverability of associated records. Plaintiff is not requesting source code, company-wide discovery, broad merits discovery, or production relating to all Koidex records. The burden of identifying what records existed and what happened to them is minimal when compared to the substantial prejudice Plaintiff may suffer if unique historical evidence becomes unavailable.

7.  The Balance of Equities Strongly Favors Expedited Discovery.

If expedited discovery is denied and relevant records are altered, overwritten, regenerated, migrated, or rendered unavailable, Plaintiff may permanently lose access to unique evidence central to its claims. If expedited discovery is granted, Defendants need only identify and preserve information concerning 18 specifically identified extensions and provide limited information concerning the existence, location, history, and recoverability of associated records. While the burden on Defendants is slight, the potential prejudice to Plaintiff is substantial. Accordingly, the balance of equities strongly favors granting the requested relief.

///

///

3:26-cv-01705-AJB-MMP

**B. Defendants' IDC Position Misstates the Nature of Plaintiff's Request and Further Demonstrates the Need for Limited Expedited Discovery**

In the parties' Joint Informal Discovery Conference Statement, Defendants opposed expedited discovery on several grounds. Those arguments do not withstand scrutiny and, in several respects, underscore why limited preservation-focused discovery is necessary.

1. Plaintiff Is Not Seeking Broad Discovery

Defendants characterized Plaintiff's request as seeking expansive discovery concerning Koidex generally. That characterization is incorrect. Plaintiff seeks discovery concerning only 18 browser extensions identified by extension ID or name in the DarkSpectre Report. Plaintiff does not seek all Koidex records, all browser-extension records, source code, company-wide discovery, or general merits discovery. Rather, Plaintiff seeks narrowly tailored discovery directed to the existence, preservation, modification, deletion, restoration, metadata, version history, audit logs, and availability of records associated with the specific extensions that Defendants themselves identified in the publication at issue. The request is limited to determining whether records existed concerning those extensions, whether they remain available, what changes occurred after publication and after commencement of this litigation, and whether historical versions remain recoverable. The limited nature of the request strongly supports a finding of good cause.

2. Plaintiff Does Not Possess the Information It Seeks

Defendants also suggested that Plaintiff already possesses the information underlying its claims. That assertion is incorrect. Plaintiff possesses only limited screenshots and publicly available materials. The complete Koidex records—including categories identified by Koidex as Findings, API Calls, Secrets, Vulnerabilities, External Communications, and Dependencies—remain exclusively within Defendants' possession, custody, or control.

3. The Issue is the Disappearance of Records, Not Routine Updating

Defendants further suggest that the changes observed by Plaintiff may reflect ordinary updates, routine maintenance, or platform improvements. The issue is not that classifications changed. The issue is that records that previously existed ceased returning the reports that existed when this litigation commenced. Plaintiff has documented the existence of those records before filing and their subsequent disappearance afterward. Plaintiff has also identified similarly

3:26-cv-01705-AJB-MMP

named records that later appeared within Koidex, creating uncertainty regarding whether historical records were overwritten, regenerated, merged, archived, or otherwise altered. Plaintiff does not know what occurred. That uncertainty is precisely why the requested discovery is necessary.

## VI.    SCOPE OF PROPOSED EXPEDITED DISCOVERY

### A. Proposed Requests for Production

Plaintiff seeks leave to serve the Requests for Production attached hereto as Exhibit 8. The proposed requests are limited to the 18 browser extensions identified in Exhibit 1 to the Declaration of Michael Robertson and seek information concerning the existence, preservation, modification, deletion, recoverability, and supporting basis of records associated with those extensions.

### B. Proposed Limitations

To ensure proportionality and minimize burden, Plaintiff proposes the following limitations:

1.      Discovery shall be limited to records existing between December 30, 2025, and the present, except where earlier records are necessary to identify creation history, version history, preservation status, or recoverability;

2.      Defendants may produce technical records in native format or another reasonably usable format;

3.      Defendants may designate confidential technical information pursuant to an appropriate protective order; and

4.      Plaintiff does not presently seek source code except to the extent necessary to explain the existence, preservation, recoverability, or alteration of records associated with the extensions identified in Exhibit 1.

## VII.    CONCLUSION

Good cause exists for limited expedited discovery. Plaintiff seeks preservation-focused discovery concerning only 18 extensions Defendants identified in the DarkSpectre Report. The relevant Koidex records are uniquely within Defendants' control, have already changed during this litigation, and may involve dynamic AI-generated outputs that cannot be reliably recreated

3:26-cv-01705-AJB-MMP

later. The burden is minimal, and the risk of prejudice from delay is substantial. Plaintiff respectfully requests that the Court grant the requested relief.

## VIII.    REQUEST FOR RELIEF

WHEREFORE, Plaintiff MeetingTV, Inc. respectfully requests that the Court enter an Order:

1.      Granting Plaintiff leave to serve the Requests for Production attached as Exhibit 8;

2.      Requiring Defendants to serve responses and produce responsive documents within fourteen (14) days of service of the Requests for Production, or such other period as the Court deems appropriate;

3.      Requiring Defendants to preserve all records, versions, backups, metadata, logs, AI-generated outputs, audit trails, version histories, archives, snapshots, restoration sources, and related electronically stored information associated with the 18 browser extensions identified in Exhibit 1 pending further order of the Court;

4.      Requiring Defendants to identify any affiliated entity, successor entity, acquired entity, custodian, contractor, employee, or third party that possesses, controls, maintains, or has access to records responsive to the discovery authorized by the Court;

5.      Requiring Defendants to identify whether any responsive records were affected by migration, consolidation, integration, retention-policy modification, platform transition, database migration, or other activities associated with Palo Alto Networks' acquisition of the Koi entities;

6.      Awarding such other and further relief as the Court deems just and proper.


Dated: June 8, 2026

Respectfully Submitted,

/s/ Bradley K. Moores
BRADLEY K. MOORES
Attorney for Plaintiff,
MEETINGTV INC.
E-mail: brad@bradleymoores.com

3:26-cv-01705-AJB-MMP

# EXHIBIT 8

REQUEST FOR PRODUCTION NO. 1

All Koidex records, reports, database entries, analytical outputs, AI-generated assessments, summaries, findings, and related records associated with each extension identified in Exhibit 1.

REQUEST FOR PRODUCTION NO. 2

All versions of the records identified in Request No. 1 that existed at any time from December 30, 2025 through the present.

REQUEST FOR PRODUCTION NO. 3

All documents and logs reflecting the creation, publication, modification, suppression, disabling, removal from public access, archiving, restoration, regeneration, replacement, merger, deletion, or other alteration of records associated with the extensions identified in Exhibit 1.

REQUEST FOR PRODUCTION NO. 4

Documents sufficient to identify the custodians, personnel, contractors, employees, analysts, engineers, systems, or automated processes responsible for creating, maintaining, modifying, suppressing, restoring, replacing, archiving, or deleting records associated with the extensions identified in Exhibit 1.

REQUEST FOR PRODUCTION NO. 5

Documents sufficient to identify backups, archives, snapshots, cached copies, database replicas, disaster-recovery systems, or other sources from which records associated with the extensions identified in Exhibit 1 may be restored or reconstructed.

REQUEST FOR PRODUCTION NO. 6

All documents concerning preservation measures implemented after March 18, 2026 with respect to records associated with the extensions identified in Exhibit 1.

REQUEST FOR PRODUCTION NO. 7

All documents concerning newly appearing, replacement, regenerated, successor, merged, or substantially similar records associated with the extensions identified in Exhibit 1.

REQUEST FOR PRODUCTION NO. 8

Documents sufficient to identify whether records associated with the extensions identified in Exhibit 1 were affected by any Palo Alto acquisition-related migration, consolidation, integration, infrastructure transition, retention-policy modification, platform replacement, or database migration.

REQUEST FOR PRODUCTION NO. 9

Documents sufficient to identify the AI models, model versions, analytical engines, automated systems, datasets, prompts, workflows, report-generation processes, and any material changes thereto after March 18, 2026, used to generate records associated with the extensions identified in Exhibit 1.

REQUEST FOR PRODUCTION NO. 10

Documents sufficient to identify whether records associated with the extensions identified in Exhibit 1 can presently be recreated, regenerated, restored, reconstructed, or otherwise recovered and, if so, the methodology by which such recovery would occur.

REQUEST FOR PRODUCTION NO. 11

For each extension identified in Exhibit 1, documents sufficient to identify the basis for its inclusion in the DarkSpectre Report, including any Koidex record, report, database entry, analytical output, AI-generated assessment, analyst report, database query, technical evidence, threat-intelligence source, or other information relied upon.

REQUEST FOR PRODUCTION NO. 12

For each extension identified in Exhibit 1, documents sufficient to identify the Koidex record identifier, database key, unique record number, URL, internal reference number, or other identifier associated with the record relied upon for inclusion of that extension in the DarkSpectre Report.