Michael Burshteyn (SBN 295320)
Marcelo Barros (SBN 339069)
**GREENBERG TRAURIG, LLP**
101 Second Street, Suite 2200
San Francisco, California 94105-3668
Telephone: 415.655.1300
michael.burshteyn@gtlaw.com
marcelo.barros@gtlaw.com

Vincent H. Chieffo (SBN 49069)
Nina D. Boyajian (SBN 246415)
**GREENBERG TRAURIG, LLP**
1840 Century Park East, Suite 1900
Los Angeles, CA 90067-2121
Telephone: 310.586.7700
chieffov@gtlaw.com
nina.boyajian@gtlaw.com

Additional Counsel On Following Page

*Attorneys for Defendants,*
KOI SECURITY INC. AND PALO
ALTO NETWORKS, INC.

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MEETINGTV INC., | Case No. 3:26-cv-01705-AJB-MMP |
| Plaintiff, | Judge: Hon. Anthony J. Battaglia |
| v. | **KOI SECURITY INC.'S AND PALO ALTO NETWORKS, INC.'S NOTICE OF MOTIONS AND [1] MOTION TO DISMISS FIRST AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 8, 12(b)(2) and 12(b)(6), AND [2] SPECIAL MOTION TO STRIKE PURSUANT TO CCP § 425.16; MEMORANDUM OF POINTS AND AUTHORITIES** |
| KOI SECURITY INC.; KOI SECURITY LTD.; AMIT ASSARAF; IDAN DARDIKMAN; TUVAL ADMONI; GAL HACHAMOV; PALO ALTO NETWORKS, INC.; and DOES 1 – 25, Inclusive, | |
| Defendants. | Date: October 15, 2026 |
| | Time: 10:00 A.M. |
| | Action Filed: March 18, 2026 |
| | Trial Date:    Not set |

Peter Wahby (*pro hac vice*)
Holmes Hampton (*pro hac vice*)
**GREENBERG TRAURIG, LLP**
2200 Ross Avenue, Suite 5200
Dallas, TX 75201
Telephone: 214.665.3667
peter.wahby@gtlaw.com
holmes.hampton@gtlaw.com

Candra Connelly (*pro hac vice*)
**GREENBERG TRAURIG, LLP**
10260 SW Greenburg Road, Suite 400
Portland, OR 97223
Telephone: 503.200.6200
candra.connelly@gtlaw.com

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD.**

PLEASE TAKE NOTICE that, on October 15, 2026, at 10:00 A.M., or as soon thereafter as the matter may be heard, before the Honorable Anthony J. Battaglia, United States District Judge for the Southern District of California, located in Courtroom 4A at the Edward J. Schwartz United States Courthouse, 221 West Broadway, San Diego, CA 92101, Defendants Koi Security Inc. ("Koi Corp.") and Palo Alto Networks, Inc. ("Palo Alto Networks" or "PANW") will, and hereby do, move the Court: (1) to dismiss the First Amended Complaint ("FAC") pursuant to Federal Rules of Civil Procedure 8, 12(b)(2) (as to Defendant Koi Corp. only), and 12(b)(6); and (2) to strike the First Amended Complaint and to award Defendants Koi Corp. and PANW their reasonable attorneys' fees and costs per California Code of Civil Procedure § 425.16.

As set forth in the accompanying memorandum of law, dismissal under Rule 12(b)(2) is warranted because Koi Corp. is a Delaware corporation with no relevant ties to California.

Dismissal under Rule 8 is warranted because, despite amendment, the FAC still uses collective and shifting defendant labels and leaves Koi Corp. and PANW unable to discern which statements, publications, theories, and remedies are asserted against which defendant.

Dismissal under Rule 12(b)(6) is warranted because Plaintiff fails to state a claim on each of its six counts:

(i) The defamation claims fail as a matter of law for multiple reasons. First, the FAC does not plausibly plead that the report at issue regarding DarkSpectre (the "Report") explicitly states or implies that MeetingTV is DarkSpectre or knowingly acted with it. The Report attributes DarkSpectre to a well-resourced Chinese operation and references MeetingTV-related domains only as technical artifacts in a broader threat-intelligence analysis. (FAC ¶¶ 8, 78, 104-08, 162-65; FAC Ex. 1.) Second, the Report's attribution is non-actionable analytical judgment, protected by the First Amendment and the

California Constitution, based on disclosed technical material. Third, the FAC fails to plead plausible falsity, fault, or causation;

(ii)    The trade libel claim is derivative of the defamation theory and fails for the same reasons. The FAC also does not plead product-quality disparagement or special damages;

(iii)    The Lanham Act § 43(a) claim fails because the Report is not commercial advertising or promotion and the FAC does not plead Lanham Act causation;

(iv)    The UCL § 17200 claim fails because it too is derivative; and

(v)    The FAL claim fails for the same reasons, because the Report would not deceive a reasonable reader, and because the equitable remedies MeetingTV seeks are unavailable.

Dismissal and striking of the FAC is further warranted under California's anti-SLAPP statute, Cal. Code Civ. Proc. § 425.16. The FAC targets constitutionally protected security research on a matter of public concern. Because the claims arise from protected speech and MeetingTV cannot show a probability of prevailing given the same merits defects, the FAC should be stricken and fees awarded under § 425.16(c)(1).

This Motion is based on this Notice of Motion, the accompanying Memorandum of Points and Authorities, the concurrently filed Declarations of Amit Assaraf and Marcelo Barros, the pleadings and records on file in this Action, Defendants' Request for Judicial Notice, and such further argument and evidence as may be presented at the hearing on this Motion.

This Motion is made following the conference of counsel that took place on April 21, 2026. During that conference, counsel for Koi Corp. raised the grounds for dismissal and suggested that Plaintiff amend to make its pleading comprehensible. Plaintiff declined, forcing the first motion, and its later amendment still did not cure the threshold and merits defects. Accordingly, counsel for the Parties met again on June 25, 2026, and counsel for Koi Corp. and PANW raised the grounds for dismissal discussed herein.

Dated: June 30, 2026                    By:

Michael Burshteyn
Marcelo Barros
Vincent H. Chieffo
Nina D. Boyajian
Peter Wahby (*pro hac vice*)
Holmes Hampton (*pro hac vice*)
Candra Connelly (*pro hac vice*)

GREENBERG TRAURIG, LLP
*Attorneys for Defendants*
KOI SECURITY INC. AND PALO ALTO
NETWORKS, INC.

# **TABLE OF CONTENTS**

Page

I.      INTRODUCTION ...................................................................................5

II.     FACTUAL BACKGROUND...................................................................7

    A.     The Parties ...................................................................................7

    B.     Multiple Other Parties Uninvolved in this Litigation Flagged MeetingTV's Domains Months Before the Report's Publication .....................................8

    C.     The Report at Issue Attributes the DarkSpectre Campaign to a Chinese Threat Actor—Not MeetingTV.......................................................10

    D.     Based on MeetingTV's Representations, Koi Ltd. in Good Faith Supplemented its Report ...........................................................11

III.    LEGAL STANDARD ...........................................................................11

IV.     ARGUMENT.........................................................................................12

    A.     The Court Lacks Personal Jurisdiction Over Defendant Koi Corp.............12

        1.     Koi Corp. Is Not Subject to General Jurisdiction in California.........13

        2.     Koi Corp. is Not Subject to Specific Jurisdiction in California ........13

    B.     Despite Amendment, the FAC Still Lumps All Defendants Together and Fails Rule 8.................................................................................17

    C.     The FAC Fails to State Any Claim Under Rule 12(b)(6) ...........................18

        1.     The Same Four Defects Defeat Every Count....................................18

        2.     The FAC Fails to State a Claim for Defamation Per Se (Count I) .....................................................................................18

            a.     None of the "Core Factual Falsities" Alleged in the FAC Are "Of and Concerning" MeetingTV ...................................19

            b.     No Reasonable Defamatory Implication Can Be Inferred From the Report...........................................................................20

            c.     The Report's Classification of Domains as IOCs Is Protected Opinion ...................................................................21

        3.     The FAC Pleads Itself Out of Causation...........................................22

        4.     Plaintiff Fails to Plead Actual Malice ...............................................23

        5.     The FAC Fails to State a Claim for Trade Libel (Count II).............25

        6.     The FAC Fails to State a Claim for Lanham Act False Advertising and Unfair Competition (Count III)..............................27

3

        a.     The Report Is Not Commercial Advertising or Promotion ..................................................................27

        b.     Plaintiff's Boilerplate Pleading is Insufficient to Sustain a Claim .......................................................28

        c.     Even if Plaintiff Adequately Alleged the Elements of a Lanham Act Claim, Such Claim Fails at the First Step of the Analysis ...............................................................29

    7.     The FAC Fails to State a Claim under California's Unfair Competition Law (Count IV)...............................................29

    8.     The FAC Fails to State a Claim under California's False Advertising Law (Count V) ...............................................31

    9.     Count VI is Duplicative and Should Be Dismissed on that Basis ...............................................................................32

    10.    The FAC Otherwise Fails to State a Claim Against Palo Alto Networks ......................................................................33

D.    California's anti-SLAPP law mandates dismissal because the FAC is an attempt to chill constitutionally protected speech and there is no probability of prevailing ..........................................................................33

    1.     California's anti-SLAPP statute applies broadly in federal court......34

    2.     The FAC targets allegations at protected activity on a matter of public concern under the anti-SLAPP statute .....................................35

    3.     Plaintiff cannot satisfy the requirement that it will prevail on the merits, even looking only to the FAC and judicially noticeable facts...............................................................37

E.    Plaintiff's Demand for Injunctive Relief is an Improper Prior Restraint on Speech....................................................................37

V.    CONCLUSION........................................................................38

KOI CORP.'S AND PANW'S MOTION TO DISMISS AND ANTI-SLAPP MOTION TO STRIKE
ACTIVE 725792470

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Aquilina v. Certain Underwriters at Lloyd's Syndicate #2003,*
    406 F. Supp. 3d 884 (D. Hawaii 2019)........................................................................17

*Ariix, LLC v. NutriSearch Corp.,*
    985 F.3d 1107 (9th Cir. 2021) ...................................................................................28

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009)................................................................................12, 23, 29

*Axiom Foods, Inc. v. Acerchem Int'l, Inc.,*
    874 F.3d 1064 (9th Cir. 2017) ..............................................................................15, 16

*Baton v. Ledger SAS,*
    740 F. Supp. 3d 847 (N.D. Cal. 2024)........................................................................15

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007)................................................................................12, 23, 29

*Bolger v. Youngs Drug Prods. Corp.,*
    463 U.S. 60 (1983)........................................................................................................28

*Boehm v. Airbus Helicopters Inc.,*
    527 F. Supp. 3d 1112 (D. Ariz. 2020) ......................................................................14

*Boschetto v. Hansing,*
    539 F.3d 1011 (9th Cir. 2008) ...................................................................................13

*Bowen v. YouTube, Inc.,*
    No. C08-5050FDB, 2008 WL 1757578 (W.D. Wash. Apr. 15, 2008) ......................16

*Briskin v. Shopify, Inc.,*
    135 F.4th 739 (9th Cir. 2025) ............................................................................ 13-14

*Calder v. Jones,*
    465 U.S. 783 (1984)......................................................................................................14

*Chancy v. Fossil Grp., Inc.,*
    No. 25-CV-1566, 2025 U.S. Dist. LEXIS 229665 (S.D. Cal. Nov. 21, 2025) ....................................................................................................................................31

4

*Chapman v. Journal Concepts, Inc.*,
   No. 07-00002 JMS/LEK, 2008 U.S. Dist. LEXIS 104448 (D. Hawaii
   Dec. 24, 2008) .................................................................................................26

*Children's Health Def. v. Facebook Inc.*,
   546 F. Supp. 3d 909 (N.D. Cal. 2021), aff'd sub nom ........................................ 28-29

*Children's Health Def. v. Meta Platforms, Inc.*,
   112 F.4th 742 (9th Cir. 2024), cert. denied, 145 S. Ct. 2846 (2025) ..........................29

*Creditors Adjustment Bureau, Inc. v. All Season Power LLC*,
   No. 25-CV-09888, 2026 WL 712870 (C.D. Cal. Feb. 13, 2026) ...............................33

*Crittendon v. Muldrow*,
   No. 22-CV-09153-RS, 2023 WL 2743582 (N.D. Cal. Mar. 31, 2023).......................27

*Crosby v. Bradstreet Co.*,
   312 F.2d 483 (2d Cir. 1963) .............................................................................37

*Cruz v. City of San Diego*,
   No. 24-CV-00287, 2025 WL 591072 (S.D. Cal. Feb. 24, 2025) ...............................33

*Cybersell, Inc. v. Cybersell*,
   130 F.3d 414 (9th Cir. 1997) ............................................................................14

*Daimler AG v. Bauman*,
   571 U.S. 117 (2014)........................................................................................13

*Dawson v. Better Booch, LLC*,
   716 F. Supp. 3d 949 (S.D. Cal. 2024)..................................................................31

*Dodds v. Am. Broad. Co.*,
   145 F.3d 1053 (9th Cir. 1998) ..........................................................................25

*Doe v. Gangland Prods., Inc.*,
   730 F.3d 946 (9th Cir. 2013) ............................................................................37

*Dole Food Co., Inc. v. Watts*,
   303 F.3d 1104 (9th Cir. 2002) ..........................................................................12

*Doshier v. Twitter, Inc.*,
   417 F. Supp. 3d 1171 (E.D. Ark. 2019)................................................................16

*Eliott v. Lions Gate Ent. Corp.*,
   639 F. Supp. 3d 1012 (C.D. Cal. 2022) ...............................................................35

5

*EMI Christian Music Grp., Inc. v. MP3tunes, LLC*,
   844 F.3d 79 (2d Cir. 2016) ............................................................................9

*Flowers v. Carville*,
   310 F.3d 1118 (9th Cir. 2002) ....................................................................34

*Found. for Anime & Niche Subcultures v. Tex. Anime Conventions*,
   769 F. Supp. 3d 1034 (N.D. Cal. 2025)......................................................12

*Freestream Aircraft (Berm.) Ltd. v. Aero Law Grp.*,
   905 F.3d 597 (9th Cir. 2018) ......................................................................13

*Georgalis v. Facebook, Inc.*,
   324 F. Supp. 3d 955 (N.D. Ohio 2018) ......................................................16

*Gertz v. Robert Welch, Inc.*,
   418 U.S. 323 (1974).....................................................................................24

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
   564 U.S. 915 (2011).....................................................................................13

*Gopher Media LLC v. Melone*,
   154 F.4th 696 (9th Cir. 2025) .....................................................................37

*Gunder's Auto Ctr. v. State Farm Ins.*,
   617 F. Supp. 2d 1222 (M.D. Fla. 2009), aff'd, 442 F. App'x 819 (11th Cir. 2011) ....................................................................................................38

*Harris v. City of Seattle*,
   315 F. Supp. 2d 1112 (W.D. Wash. 2004) .................................................34

*Harte-Hanks Commc'ns v. Connaughton*,
   491 U.S. 657 (1989).....................................................................................25

*Henry v. Angelini Pharma, Inc.*,
   No. 17-CV-02593, 2020 U.S. Dist. LEXIS 56429 (E.D. Cal. 2020) .........15

*Int'l Shoe Co. v. Washington*,
   326 U.S. 310 (1945).....................................................................................13

*Intercarrier Commc'ns LLC v. WhatsApp Inc.*,
   No. 12-CV-0776, 2013 WL 5230631 (E.D. Va. Sept. 13, 2013)...............17

*Isuzu Motors Ltd. v. Consumers Union*,
   12 F. Supp. 2d 1035 (C.D. Cal. 1998) ................................................ 26-27

6

*Kenner v. Kelly*,
No. 11-CV-1538, 2018 WL 1726440 (S.D. Cal. Apr. 10, 2018) ................................17

*Konigsberg v. Time, Inc.*,
288 F. Supp. 989 (S.D.N.Y. 1968) ................................................................38

*Lopez v. Shopify, Inc.*,
No. 16-CV-9761, 2017 WL 2229868 (S.D.N.Y. May 23, 2017), report
and recommendation adopted, 2018 WL 481891 (S.D.N.Y. Jan. 17,
2018) ................................................................................................ 16-17

*Mahmoodian v. Pirnia*,
No. 11-CV-005, 2012 WL 4458160 (W.D. Va. June 7, 2012), aff'd, 489
F. App'x 711 (4th Cir. 2012) ................................................................ 37-38

*Makaeff v. Trump Univ.*,
LLC, 715 F.3d 254 (9th Cir. 2013)......................................................24, 36

*Marcus v. Nationstar Mortg. LLC*,
No. 19-56288, 2022 WL 1486831 (9th Cir. May 11, 2022) ........................23

*McHenry v. Renne*,
84 F.3d 1172 (9th Cir. 1996) ................................................................17

*Metabolife Int'l, Inc. v. Wornick*,
264 F.3d 832 (9th Cir. 2001) ................................................................34

*Milkovich v. Lorain Journal Co.*,
497 U.S. 1 (1990)................................................................................22

*Morrill v. Scott Fin. Corp.*,
873 F.3d 1136 (9th Cir. 2017) .......................................................... 13-14

*N.Y. Times Co. v. Sullivan*,
376 U.S. 254 (1964)......................................................................24, 34

*Netafim Irrigation, Inc. v. Jain Irrigation, Inc.*,
562 F. Supp. 3d 1073 (E.D. Cal. 2021) ................................................29

*New.Net, Inc. v. Lavasoft*,
356 F. Supp. 2d 1090 (C.D. Cal. 2004) ......................................28, 35, 37

*U.S. ex rel. Newsham v. Lockheed Missiles & Space Co., Inc.*,
190 F.3d 963 (9th Cir. 1999) ................................................................34

7

*Nicosia v. De Rooy*,
    72 F. Supp. 2d 1093 (N.D. Cal. 1999)................................................................22

*O'Handley v. Padilla*,
    579 F. Supp. 3d 1163 (N.D. Cal. 2022)............................................................12

*O'Handley v. Weber*,
    62 F.4th 1145 (9th Cir. 2023) ...........................................................................12

*Obsidian Fin. Grp., LLC v. Cox*,
    740 F.3d 1284 (9th Cir. 2014) ...................................................................... 23-24

*Partington v. Bugliosi*,
    56 F.3d 1147 (9th Cir. 1995) .............................................................................22

*PC Drivers Headquarters, LP v. Malwarebytes Inc.*,
    371 F. Supp. 3d 652 (N.D. Cal. 2019)...............................................................22

*Pet Care Prods., LLC v. PurLife Brands, Inc.*,
    703 F. Supp. 3d 1022 (N.D. Cal. 2023).............................................................27

*Planet Aid, Inc. v. Reveal*,
    44 F.4th 918 (9th Cir. 2022) .............................................................................24

*Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*,
    890 F.3d 828 (9th Cir. 2018) ......................................................................35, 37

*Prager Univ. v. Google LLC*,
    951 F.3d 991 (9th Cir. 2020) .............................................................................29

*Price v. Stossel*,
    620 F.3d 992 (9th Cir. 2010) ......................................................................20, 21

*Roe v. CoreCivic, Inc.*,
    No. 25-CV-02471-GPC-DDL, 2026 WL 218946 (S.D. Cal. Jan. 27,
    2026) ................................................................................................................12

*Schwarzenegger v. Fred Martin Motor Co.*,
    374 F.3d 797 (9th Cir. 2004) ......................................................................12, 13

*Silcox v. State Farm Mut. Auto. Ins. Co.*,
    No. 14-cv-2345 AJB (MDD), 2014 U.S. Dist. LEXIS 176297 (S.D. Cal.
    Dec. 22, 2014)..................................................................................................30

8

*Skydive Arizona, Inc. v. Quattrocchi,*
    673 F.3d 1105 (9th Cir. 2012) ................................................................................27

*Somers v. Apple, Inc.,*
    729 F.3d 953 (9th Cir. 2013) ..................................................................................12

*Tilton v. Capital Cities/ABC Inc.,*
    827 F. Supp. 674 (N.D. Okla. 1993).......................................................................38

*Unelko Corp. v. Rooney,*
    912 F.2d 1049 (9th Cir. 1990) ................................................................................26

*Walden v. Fiore,*
    571 U.S. 277 (2014)..................................................................................14, 15, 16

*Wells v. Facebook Inc.,*
    No. 19-2379-DDC-JPO, 2019 WL 6894681 (D. Kan. Dec. 18, 2019) ....................16

*Wheeler v. City of Santa Clara,*
    894 F.3d 1046 (9th Cir. 2018) ................................................................................38

*Williams v. Gerber Prods. Co.,*
    552 F.3d 934 (9th Cir. 2008) ............................................................................ 31-32

*Wisk Aero LLC v. Archer Aviation Inc.,*
    No. 21-cv-02450-WHO, 2023 U.S. Dist. LEXIS 100960 (N.D. Cal. May
    30, 2023) ...............................................................................................................22

*WPEngine, Inc. v. Automattic Inc.,*
    No. 24-cv-06917-AMO, 2025 U.S. Dist. LEXIS 179595 (N.D. Cal. Sept.
    12, 2025) ...............................................................................................................36

*In re ZF-TRW Airbag Control Units Prods. Liability Litig.,*
    601 F. Supp. 3d 625 (C.D. Cal. 2022) ...................................................................12

*Ziencik v. Snap, Inc.,*
    No. 21-CV-49, 2021 WL 4076997 (W.D. Pa. Sept. 8, 2021) ..................................17

**State Cases**

*Barrett v. Rosenthal,*
    40 Cal. 4th 33 (2006) .............................................................................................36

*Bently Reserve LP v. Papaliolios,*
    218 Cal. App. 4th 418 (2013) .................................................................................18

9

*Blatty v. N.Y. Times Co.*,
   42 Cal. 3d 1033 (1986) ...............................................................................19, 20, 26

*Briggs v. Eden Council for Hope & Opportunity*,
   19 Cal. 4th 1106 (1999) .................................................................................. 34-35

*Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*,
   20 Cal. 4th 163 (1999) .......................................................................................30, 32

*ComputerXpress, Inc. v. Jackson*,
   93 Cal. App. 4th 993 (2001) ............................................................................. 25-26

*Cross v. Facebook, Inc.*,
   14 Cal.App.5th 190 (2017) .....................................................................................36

*FilmOn.com Inc. v. DoubleVerify Inc.*,
   7 Cal. 5th 133 (2019) .............................................................................................37

*Forsher v. Bugliosi*,
   26 Cal. 3d 792 (1980) .......................................................................................20, 21

*Franklin v. USX Corp.*,
   87 Cal.App.4th 615 (2001) .....................................................................................33

*Heller v. NBC Universal, Inc.*,
   No. CV-15-09631-MWF-KS, 2016 WL 6583048 (C.D. Cal. June 29, 2016) ......................................................................................................................35

*Hunter v. CBS Broad., Inc.*,
   221 Cal. App. 4th 1510 (2013) ........................................................................ 35-36

*Ingels v. Westwood One Broad. Servs., Inc.*,
   129 Cal. App. 4th 1050 (2005) ...............................................................................30

*Kasky v. Nike, Inc.*,
   27 Cal. 4th 939 (2002) .......................................................................................28, 32

*Ketchum v. Moses*,
   24 Cal. 4th 1122 (2001) ..........................................................................................39

*MeetingTV v. Proofpoint*,
   No. 25CU066512N (Cal. Sup. Ct. Dec. 12, 2025) ...................................................9

*Muddy Waters, LLC v. Superior Court*,
   62 Cal. App. 5th 905 (2021) ........................................................................ 25, 36-37

10

*Mullins v. Thieriot*,
19 Cal. App. 3d 302 (1971) .................................................................................19, 20

*Navellier v. Sletten*,
29 Cal. 4th 82 (2002) .................................................................................35

*Nygård, Inc. v. Uusi-Kerttula*,
159 Cal. App. 4th 1027 (2008) .................................................................................36

*Palm Springs Villas II Homeowners Assn., Inc. v. Parth*,
248 Cal.App.4th 268 (2016) .................................................................................33

*ParaFi Digital Opportunities LP v. Egorov*,
108 Cal. App. 5th 124 (2025) ............................................................................. 14-15

*Pavlovich v. Superior Court*,
29 Cal. 4th 262 (2002) .................................................................................16

*Pridonoff v. Balokovich*,
36 Cal. 2d 788 (1951) ............................................................................. 26-27

*Safieddine v. MBC FZ, LLC*,
103 Cal. App. 5th 1086 (2024) ............................................................................. 15-16

*Simpson Strong-Tie Co. v. Gore*,
49 Cal. 4th 12 (2010) .................................................................................35

*Summit Bank v. Rogers*,
206 Cal. App. 4th 669 (2012) .................................................................................18

*Varian Med. Sys., Inc. v. Delfino*,
35 Cal. 4th 180 (2005) .................................................................................35

*Weller v. Am. Broad. Co.*,
232 Cal. App. 3d 991 (1991) .................................................................................20

*Wilbanks v. Wolk*,
121 Cal. App. 4th 883 (2004) .................................................................................37

*Wong v. Jing*,
189 Cal. App. 4th 1354 (2010) .................................................................................36

*ZL Techs., Inc. v. Does 1-7*,
13 Cal. App. 5th 603 (2017) .................................................................................18

11

**Federal Statutes**

15 U.S.C. § 1125(a) ...........................................................................................27, 28

**State Statutes**

Cal. Bus. & Prof. Code § 17200 ...............................................................................30

Cal. Bus. & Prof. Code § 17500 ...............................................................................31

Cal. Civ. Code § 45 ...................................................................................................17

Cal. Civ. Proc. Code § 425.16 .......................................................................7, 33, 36

Cal. Civ. Proc. Code § 425.16(a) ......................................................................... 34-35

Cal. Civ. Proc. Code § 425.16(c) ..............................................................................39

Cal. Civ. Proc. Code § 425.16(e) ..............................................................................36

**Rules**

Fed. R. Civ. P. 8 ...............................................................................................*passim*

Fed. R. Civ. P. 9 .......................................................................................................31

Fed. R. Civ. P. 12 .......................................................................................................5

Fed. R. Civ. P. 12(b)(2)..................................................................................12, 15, 38

Fed. R. Civ. P. 12(b)(6)....................................................................................*passim*

**Constitutional Provisions**

U.S. Const. amend. I .........................................................................................*passim*

12

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.      INTRODUCTION

Plaintiff MeetingTV Inc. ("MeetingTV") seeks to silence a cybersecurity research firm and stop it from publishing global threat intelligence. MeetingTV does so because it dislikes the fact that three of its Internet domain names were referenced in a threat intelligence report about unknown Chinese hackers. Threat intelligence alerts are critical to the worldwide cybersecurity ecosystem. They enable worldwide security teams to guard against cybersecurity risks from malicious third parties intent on destroying infrastructure and stealing data. The law in the Ninth Circuit protects security researchers from precisely the type of strategic lawsuit against public participation that Plaintiff attempts so that speech on important public safety issues is not chilled.

In its initial Complaint, MeetingTV itself treated the same publication as research when that label suited its claims and as advertising when that label suited its response to dismissal. The original Complaint, for instance, called Koi a "cybersecurity research firm," called the Report a "marketing, sales, and research report," and attacked Koi's alleged failure to meet "professional cybersecurity research standards." (Compl. (Dkt. 1) ¶¶ 13-14, 350-77.) The FAC now reverses course and relabels the same Report as a "marketing asset" that was only "presented as research." (FAC ¶¶ 8, 69.)   This gamesmanship approach does not save the pleading. The report was research when the case was filed, and it is still research now. The Report is branded "KOI RESEARCH" and states that it was authored by Koi's research team. (FAC Ex. 1.)[1]

The FAC fails at the threshold: this Court lacks personal jurisdiction over Koi Security Inc. ("Koi Corp."). The Report of which MeetingTV complains and the

---

[1] That repackaging fits the procedural history. After Defendants offered to stipulate to an amended pleading, Plaintiff declined, forcing a Rule 8, Rule 12, and anti-SLAPP motion against the original complaint; Plaintiff then amended only in response to that motion, and the FAC still rests on the same relabeling of the same publication. (ECF 11 at 3-5; ECF 25 at 3.)

KOI CORP.'S AND PANW'S MOTION TO DISMISS AND ANTI-SLAPP MOTION TO STRIKE
ACTIVE 725792470

underlying research were developed by Koi Security Ltd. ("Koi Ltd."), an Israeli cybersecurity company with no California presence. Koi Corp. is a Delaware subsidiary with a limited U.S. commercial remit; it did not author, approve, or publish the Report, and it has no California office, property, officers, directors, or executives. PANW did not research, author, approve, publish, or update the Report either; the FAC pleads that PANW acquired Koi only on or about April 14, 2026, months after the December 30, 2025 Report and February 12, 2026 update. (FAC ¶¶ 8, 128, 134; Assaraf Decl. ¶¶ 5, 15-20.)

Even after an opportunity to remedy the initial Complaint's egregious Rule 8 violations, the FAC still falls short. It is a 44-page pleading with 187 numbered allegations and a 171-page ECF package; it engages in impermissible group pleading and lumps all seven defendants together as "Koi Defendants"; it incorporates all preceding allegations into each count and shifts among Koi-only publication theories, Koidex allegations, Palo Alto post-acquisition republication theories, successor-liability labels, and a Palo Alto-only count. A defendant should not have to reconstruct which statements, publications, theories, and remedies are asserted against which defendant.

The FAC also fails under Rule 12(b)(6). First, the Report is not "of and concerning" MeetingTV. It is about a "well-resourced Chinese operation" called DarkSpectre. It does not say MeetingTV is DarkSpectre or acted with it. The FAC's implication theory rests on domain and Indicators of Compromise ("IOC") references, not a direct statement about MeetingTV. This speculation and inference does not plausibly state a claim for violation of any law.

Second, the FAC targets protected analytical judgment based on disclosed security research. The Report discloses the artifacts and reasoning behind its conclusions, enabling readers to evaluate them for themselves. That is protected opinion, not actionable falsehood.

Third, the FAC pleads itself out of causation. Numerous third parties – including a Canadian governmental cybersecurity agency - reported, flagged, or blocked MeetingTV-related domains well before the Report, and the alleged post-Report harm flows through

6

downstream vendors and automated systems outside Defendants' control.

Fourth, the FAC fails to clear the high bar for pleading malice required for defamation claims. Beyond conclusory allegations based "on information and belief," it pleads no facts showing that the Report was published with knowledge of falsity or serious subjective doubt. The incorporated Report instead details the investigation and analysis behind its conclusions.

These four flaws permeate not only Plaintiff's defamation claim, but every derivative cause of action, including trade libel, unfair competition, and false advertising.

Finally, the FAC is also subject to California's anti-SLAPP statute, California Code of Civil Procedure § 425.16. It is a transparent attempt to silence speech protected by the First Amendment and the California Constitution. The statute's two prongs are satisfied: the FAC arises from protected speech on a matter of public concern, and MeetingTV cannot establish a probability of prevailing because each of its claims fails as a matter of law.

MeetingTV's attempt to drag a security research entity with no ties to California into federal court on a specious defamation theory would have sweeping implications and stifle global security research.

## II.    FACTUAL BACKGROUND

### A.    The Parties

Koi Corp. is incorporated in Delaware. Koi Corp. has a mail service that it uses in Washington, D.C. (Declaration of Amit Assaraf ("Assaraf Decl.") ¶¶ 15, 18.) It is Koi Security Ltd.'s U.S. commercial and distribution subsidiary. (*Id.* ¶ 3.) Koi Corp.'s function is limited to U.S. go-to-market activities: it resells and distributes Koi Ltd.'s platform and executes U.S. commercial contracts. (*Id.* ¶ 16.) Koi Corp. does not have a California office or property located in California, nor does it have any officers, directors, or executives in California. (*Id.* ¶¶ 19-20.) All research, engineering, product-development, and publication decisions regarding the Report were made by Koi Ltd. in Israel. (*Id.* ¶ 5.) Koi Corp. played no role in researching, drafting, reviewing, approving, or publishing the

7

Report. (*Id.* ¶ 17.)

The FAC references Koi's "Wings" AI analytical platform, Koi Ltd.'s AI-assisted analytical platform for identifying malicious browser extensions and threat actors. (FAC ¶ 65; Assaraf Decl. ¶ 6.) As of January 2026, Wings had 25 customers, primarily New York City financial firms, Israeli tech companies, and international clients. (Assaraf Decl. ¶ 7.) Fewer than five are based in California, all are global businesses whose interactions with Koi Corp. are not California-focused, and none are in this District. (*Id.* ¶¶ 8-9.)

Palo Alto Networks, Inc. ("Palo Alto Networks" or "PANW") is a global cybersecurity company that provides cybersecurity solutions and platforms across network, cloud, security operations, AI, and identity. (FAC ¶ 68 & Ex. 20.)

MeetingTV alleges that it is headquartered in California. (FAC ¶ 31; *see also id.* ¶ 53.) Its CEO is Michael Robertson. (*Id.* ¶ 102.) MeetingTV alleges that it operates a webinar search engine that aggregates and indexes publicly available webinar URLs, metadata, titles, descriptions, dates, times, and registration links, primarily from businesses, academic institutions, government agencies, and non-profits. (*Id.* ¶ 58.) MeetingTV also alleges that it provides a personal recording service called Zoomcorder. (*Id.* ¶ 59.) MeetingTV alleges that its software consists of publicly available Chrome browser extensions that were disclosed to users, approved by Google for availability in the Chrome Web Store, and distributed through the official Chrome Web Store. (*Id.* ¶¶ 79, 82.)

**B.** **Multiple Other Parties Uninvolved in this Litigation Flagged MeetingTV's Domains Months Before the Report's Publication**

The FAC and judicially noticeable materials show that third parties had already publicly characterized, flagged, or blocked MeetingTV-related domains before Koi Ltd. published the Report in December 2025.

- Since at least March 2025, online users have expressed concerns about meetingtv.us. (Defendants' Request for Judicial Notice ("RJN") ¶¶ 3-8; Declaration of Marcelo Barros ("Barros Decl.") ¶¶ 5-10, Exs. 3-8.)

8

- In or around October 2025, a Canadian governmental cybersecurity division, CyberAlberta, published a threat report stating that MeetingTV's WebinarTV "is actively scraping and redistributing both public and private Zoom webinars without knowledge or consent of organizers" through "third-party browser extensions[.]" (RJN ¶ 2; Barros Decl. ¶ 4, Ex. 2.)[2] The report identified numerous MeetingTV and WebinarTV domains as IOCs, noted user complaints about content appearing to be harvested without permission, and stated that the company's CEO, Michael Robertson, "previously served as CEO of the now-defunct online music library MP3Tunes, which was found liable for copyright infringement and ordered to pay USD $41 million in 2014." (*Id.*); *see also EMI Christian Music Grp., Inc. v. MP3tunes, LLC*, 844 F.3d 79, 99-101 (2d Cir. 2016) (affirming the verdict and holding that the evidence showed Robertson acted in a manner intended to promote infringement).

- MeetingTV itself has admitted that, "[s]ince at least October 2025," at least one other cybersecurity company, Proofpoint, "began labeling Plaintiff's domain, webinartv.us, as 'malicious,' suggesting the site hosted malware or engaged in credential theft." (*See MeetingTV v. Proofpoint*, No. 25CU066512N (Cal. Sup. Ct. Dec. 12, 2025); RJN ¶ 1; Barros Decl. ¶ 3, Ex. 1 at ¶ 8.) In December 2025, after Proofpoint declined to remove this warning, MeetingTV sued Proofpoint in San Diego Superior Court, alleging that Proofpoint's alleged conduct caused MeetingTV's "lost business, reputational injury, and economic harm," and asserting multiple of the same claims MeetingTV now asserts against the Defendants in this action. (RJN ¶ 1; Barros Decl. ¶ 3, Ex. 1 at ¶¶ 13-42.) That case has since been

---

[2] The CyberAlberta report has been independently referenced in other litigation involving MeetingTV. Specifically, a putative class action was filed in the United States District Court for the Southern District of California just days before this Motion against MeetingTV's WebinarTV operation and its principal.  That complaint outlines the same CyberAlberta report. *See Gaines v. Robertson*, No. 3:26-cv-03696-LL-DDL, Compl. ¶¶ 67–71 (S.D. Cal. filed June 24, 2026).  (RJN ¶ 11, Barros Decl. ¶ 11, Ex. 9.)

KOI CORP.'S AND PANW'S MOTION TO DISMISS AND ANTI-SLAPP MOTION TO STRIKE
ACTIVE 725792470

dismissed. (RJN ¶ 10.)

Thus, by the time Koi Ltd. published the Report on December 30, 2025 (FAC ¶ 8), MeetingTV-related domains had already been publicly flagged by a government agency and blocked by at least one other security vendor for malicious or suspicious activity — conduct MeetingTV itself claimed defamed it and caused its harm.

On June 24, 2026, a federal class action was filed in this District against WebinarTV, Inc. and its principal asserting claims arising from alleged practices associated with the platform. *Gaines v. Robertson*, No. 3:26-cv-03696-LL-DDL (S.D. Cal. June 24, 2026) (RJN ¶ 11, Barros Decl. ¶ 11, Ex. 9 at ¶¶ 2-7, 36-46).

**C.    The Report at Issue Attributes the DarkSpectre Campaign to a Chinese Threat Actor—Not MeetingTV**

The Report identified three malware campaigns (Zoom Stealer, ShadyPanda, GhostPoster) linked to a single threat actor dubbed "DarkSpectre." The Report stated that "[e]verything we've uncovered points in one direction – a well-resourced Chinese operation." (FAC ¶¶ 8-9, 91-92; FAC Ex. 1.) Three MeetingTV domains (meetingtv.us, webinarstvus.cloudfunctions.net, zoomcorder.firebaseio.com) were listed as technical IOCs under the "Zoom Stealer" campaign.

Nowhere does the Report state that MeetingTV is a threat actor or is acting in concert with a threat actor. Koi's detailed, nearly 30-page Report briefly references MeetingTV-related domains only in a limited technical narrative: the threat actor's use of webinarstvus[.]cloudfunctions[.]net, the Firebase/Zoomcorder discussion, and an IOC list containing three MeetingTV-related domains among many other domains, IP addresses, extension identifiers, account handles, and infrastructure artifacts. (FAC Ex. 1 at 9, 12, 21-23.) Plaintiff alleges that IOC designations can signal malicious infrastructure in the cybersecurity context and treats IOCs as a term of art. (FAC ¶¶ 140, 370-71.) Even accepting that pleaded meaning, an IOC is a technical artifact observed during an investigation—a data point, not a verdict. It does not reasonably follow that the owner of a listed domain is the malicious threat actor or knowingly acted with it.

10

**D.     Based on MeetingTV's Representations, Koi Ltd. in Good Faith Supplemented its Report**

On February 11, 2026, MeetingTV sent a formal retraction demand. (FAC ¶ 123.) The next day, despite having no obligation to do so, Koi Ltd. confirmed that "the reference to your domain (which was the only reference to MeetingTV inside the blog) was removed from the IOCs list for good faith." (FAC ¶ 126, Ex. 19.) Koi Ltd. further stated that the Report had "never made any claims that your company is related to the malicious actors[.]" (*Id.*)

Koi Ltd. also removed the Report's entire "Domains – The Zoom Stealer" section, which had previously listed MeetingTV-related domains and infrastructure references. (FAC ¶¶ 126, 128; Exs. 19, 22.) Koi Ltd. added the following public update to the Report regarding one of the domains (meetingtv[.]us):

> After publication, we conducted additional validation regarding the domain meetingtv[.]us, which was originally included in the IOC list. While the domain appeared in code analyzed during our investigation, we have determined that there is no evidence that this domain is connected or related in any way to the malicious infrastructure or the threat actor group described in this report. (FAC ¶ 128, Ex. 22.)

Despite Koi Ltd.'s confirmation that it had never put MeetingTV in the same category as the unknown Chinese hacker group, and its good faith reflection of MeetingTV's representations on its website, MeetingTV filed this case. Without any basis in law or fact, MeetingTV sued not only Koi Ltd., the Israeli parent, but also its Delaware subsidiary and multiple individuals who work at Koi Ltd.

## III.    LEGAL STANDARD

**Rule 12(b)(2)**. MeetingTV bears the burden to show personal jurisdiction. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). When a Rule 12(b)(2) motion is decided on written materials, the Court may consider affidavit evidence and is not limited to the complaint's allegations. *Found. for Anime & Niche*

11

*Subcultures v. Tex. Anime Conventions*, 769 F. Supp. 3d 1034, 1041-42 (N.D. Cal. 2025) (*citing Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1108 (9th Cir. 2002)). "To establish personal jurisdiction, a party must show both that the long-arm statute of the forum state confers personal jurisdiction over an out-of-state defendant, and that the exercise of jurisdiction would be consistent with federal due process requirements." *In re ZF-TRW Airbag Control Units Prods. Liability Litig.*, 601 F. Supp. 3d 625, 691 (C.D. Cal. 2022). Bare assertions of minimum contacts and legal conclusions unsupported by specific facts are insufficient. *O'Handley v. Padilla*, 579 F. Supp. 3d 1163, 1178 (N.D. Cal. 2022), *aff'd sub nom.*, *O'Handley v. Weber*, 62 F.4th 1145 (9th Cir. 2023). If personal jurisdiction is lacking, the claims against that defendant must be dismissed.

**Rule 8**. A complaint must provide a short and plain statement that gives each defendant fair notice of the claims against it. Fed. R. Civ. P. 8(a)(2); *Roe v. CoreCivic, Inc.*, No. 3:25-CV-02471-GPC-DDL, 2026 WL 218946, at *4 (S.D. Cal. Jan. 27, 2026). Lumping multiple defendants together without alleging each defendant's role does not satisfy Rule 8. *Id.*

**Rule 12(b)(6)**. A complaint must plead facts stating a plausible claim for relief. *Somers v. Apple*, Inc., 729 F.3d 953, 959 (9th Cir. 2013). Labels, conclusions, and formulaic element recitations do not suffice, and courts need not accept legal conclusions or unwarranted inferences as true. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## IV.    ARGUMENT

### A.    The Court Lacks Personal Jurisdiction Over Defendant Koi Corp.

"There are two categories of personal jurisdiction: (1) general jurisdiction and (2) specific jurisdiction." *Freestream Aircraft (Berm.) Ltd. v. Aero Law Grp.*, 905 F.3d 597, 602 (9th Cir. 2018). Koi Corp. is subject to neither. It is not "at home" in this forum, nor

KOI CORP.'S AND PANW'S MOTION TO DISMISS AND ANTI-SLAPP MOTION TO STRIKE
ACTIVE 725792470

does it possess the requisite minimum contacts with California necessary to support the exercise of personal jurisdiction by this Court.[3]

### 1. Koi Corp. Is Not Subject to General Jurisdiction in California

General jurisdiction applies when a defendant's contacts with the forum are "so 'continuous and systematic' as to render them essentially at home in the forum State." *Goodyear Dunlop Tires Operations*, *S.A. v. Brown*, 564 U.S. 915, 919 (2011). "With respect to a corporation, the place of incorporation and principal place of business are 'paradig[m]…bases for general jurisdiction.'" *Daimler AG*, 571 U.S. at 137.

Koi Corp. is incorporated in Delaware, uses a Washington, D.C. mailing service, and has no California office, property, officers, directors, or executives. (Assaraf Decl. ¶¶ 15, 18-20.) The FAC's jurisdictional allegations (*see generally* FAC ¶¶ 16-44) plead no facts rendering Koi Corp. "essentially at home" in California. General jurisdiction is improper.

### 2. Koi Corp. is Not Subject to Specific Jurisdiction in California

Specific jurisdiction requires three things: the defendant must purposefully direct activities at the forum or purposefully avail itself of forum benefits; the claim must arise out of or relate to the defendant's forum-related activities; and jurisdiction must be reasonable. *Schwarzenegger*, 374 F.3d at 802; *Morrill v. Scott Fin. Corp.*, 873 F.3d 1136, 1142 (9th Cir. 2017). For tort claims, the Ninth Circuit applies purposeful direction, and *Walden* requires contacts with the forum itself, not merely with a forum resident. *Briskin v. Shopify, Inc.*, 135 F.4th 739, 751 (9th Cir. 2025); *Walden v. Fiore*, 571 U.S. 277, 285 (2014). MeetingTV cannot meet that standard.

---

[3] When no federal statute governs personal jurisdiction, the district court applies the law of the forum state. California's long-arm statute is coextensive with federal due process, so jurisdiction exists only if the defendant has minimum contacts consistent with fair play and substantial justice. *Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008); *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014); *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

KOI CORP.'S AND PANW'S MOTION TO DISMISS AND ANTI-SLAPP MOTION TO STRIKE
ACTIVE 725792470

First, Plaintiff tries to plead around the jurisdictional defect by pointing to a generic Koi Security Inc. copyright notice and alleging that the Report appeared on a globally accessible Koi website. (FAC ¶¶ 16, 21, 32, 63.) That does not establish purposeful direction to California. A copyright footer does not show where the challenged research was conceived, authored, approved, or targeted, and a globally accessible website is not express aiming at every forum where the post can be read. *See Cybersell*, *Inc. v. Cybersell*, 130 F.3d 414, 415, 419-20 (9th Cir. 1997) (holding that a Florida website advertiser with no forum contacts beyond a homepage accessible over the Internet was not subject to personal jurisdiction in Arizona). In any event, Koi Ltd. authored the Report in Israel, all publication decisions regarding the Report were made by Koi Ltd. in Israel, and Koi Corp. played no role in researching, drafting, reviewing, approving, or publishing it. (Assaraf Decl. ¶¶ 5, 17.)

Second, the Report's preparation involved no investigation, research, or analysis performed in California, in sharp contrast to *Calder v. Jones*, 465 U.S. 783, 788-89 (1984) (finding purposeful direction in part because the allegedly defamatory article was drawn from California sources). The Report was authored in Israel, and all publication decisions regarding content, timing, and distribution were made there. (Assaraf Decl. ¶¶ 4-5, 17.)

Third, Koi Corp. has no office in California, employs no officers, directors, or executives in California, and uses no targeted marketing to specifically distribute the Report to California residents. (Assaraf Decl. ¶¶ 10, 19-20.) Nor do unrelated investor or general commercial contacts supply specific jurisdiction for this publication-based tort claim. *See Boehm v. Airbus Helicopters Inc.*, 527 F. Supp. 3d 1112, 1121 (D. Ariz. 2020) (lack of physical forum presence supported dismissal for lack of specific jurisdiction); *ParaFi Digital Opportunities LP v. Egorov*, 108 Cal. App. 5th 124, 137 (2025) (California investor payments did not establish purposeful availment).

Fourth, the mere fact that two employees happen to live or work remotely in California is insufficient to create specific jurisdiction over a corporate defendant for claims unrelated to those employees' forum work. *See Baton v. Ledger SAS*, 740 F. Supp.

14

3d 847, 888 (N.D. Cal. 2024) (employee residence and work-from-home activity did not automatically establish purposeful availment); *Henry v. Angelini Pharma*, Inc., No. 17-CV-02593, 2020 U.S. Dist. LEXIS 56429, at *12-13 (E.D. Cal. 2020) (single California salesperson's speculative, remote, and unrelated conduct did not support specific jurisdiction). The FAC identifies two California-based employees, but these individuals were junior salespeople, did not target California, and had no involvement in researching, drafting, reviewing, approving, or publishing the Report. (Assaraf Decl. ¶¶ 17, 21.) That is not suit-related California conduct.

Fifth, Plaintiff's California-location and California-infrastructure allegations still do not establish express aiming. The FAC alleges that MeetingTV is headquartered in California and that Koi "knew or should have known" that fact. (FAC ¶ 31.) Even if the Court credits that allegation, knowledge of a plaintiff's forum connection plus foreseeable reputational harm is not enough. *Walden v. Fiore*, 571 U.S. 277, 289-90 (2014); *Axiom Foods, Inc. v. Acerchem Int'l*, Inc., 874 F.3d 1064, 1069-71 (9th Cir. 2017). The Rule 12(b)(2) record confirms that Koi Corp. did not target California in publishing the Report: Koi Ltd.'s research blog is globally accessible and not geo-targeted, Koi Ltd. does not use targeted marketing to distribute its publications to California, and California IP addresses accounted for less than 2% of users accessing the Report. (Assaraf Decl. ¶¶ 10, 12.) Nor does a publicly available California address, if Plaintiff relies on one, show that Koi Corp. actually aimed the Report at California. That is especially true because the Report was about DarkSpectre and global threat intelligence, not California. MeetingTV-related domains were only briefly referenced as part of the infrastructure used by suspected Chinese threat actors, and California was not the focal point of either the publication or the alleged harm. *See Walden*, 571 U.S. at 287-90; *Axiom Foods*, 874 F.3d at 1070-71; *Safieddine v. MBC FZ, LLC*, 103 Cal. App. 5th 1086, 1106-08 (2024); *Pavlovich v. Superior Court*, 29 Cal. 4th 262, 277 (2002).

Lastly, Plaintiff's California-customer allegations do not supply suit-related minimum contacts. The FAC points to a "Book a Demo" funnel, California sales

15

employees, California-based cybersecurity companies, and California Wings customers. (FAC ¶¶ 20, 33-36.) Those allegations describe general commercial presence and third-party downstream effects, not California-directed publication of the Report. Fewer than five Wings customers are based in California (none in this District) and the two California employees Plaintiff identifies were junior salespeople with no role in or involvement with the Report. (Assaraf Decl. ¶¶ 8-9, 17, 21.) Specific jurisdiction does not stretch as far as Plaintiff needs.

In similar situations, multiple courts have declined to find personal jurisdiction based on passive websites, internet publications, apps, and third-party downstream effects:

- **YouTube.** *Bowen v. YouTube, Inc.*, No. C08-5050FDB, 2008 WL 1757578, at *5 (W.D. Wash. Apr. 15, 2008) (no personal jurisdiction where the plaintiff's allegations arose from her use of YouTube and no conduct supplied the "something more" required for forum contacts);

- **Facebook.** *Wells v. Facebook Inc.*, No. 19-2379-DDC-JPO, 2019 WL 6894681, at *9-12 (D. Kan. Dec. 18, 2019) (website accessibility in the forum was insufficient); *Georgalis v. Facebook, Inc.*, 324 F. Supp. 3d 955, 960 (N.D. Ohio 2018) (forum-state advertising revenue was "unavailing" for personal jurisdiction);

- **Twitter.** *Doshier v. Twitter, Inc.*, 417 F. Supp. 3d 1171, 1177 (E.D. Ark. 2019) (no specific jurisdiction based on allegations that Twitter directed advertising to forum-state users);

- **Shopify.** *Lopez v. Shopify, Inc.*, No. 16-CV-9761, 2017 WL 2229868, at *8 n.9 (S.D.N.Y. May 23, 2017), report and recommendation adopted, 2018 WL 481891 (S.D.N.Y. Jan. 17, 2018) (the theoretical availability of allegedly infringing goods on Shopify's website did not show purposeful direction);

- **WhatsApp.** *Intercarrier Commc'ns LLC v. WhatsApp Inc.*, No. 12-CV-0776, 2013 WL 5230631, at *12 (E.D. Va. Sept. 13, 2013) (a user's unilateral download or use of an app in the forum does not establish specific jurisdiction);

- **Snap.** *Ziencik v. Snap, Inc.*, No. 21-CV-49, 2021 WL 4076997, at *10-11 (W.D. Pa.

16

KOI CORP.'S AND PANW'S MOTION TO DISMISS AND ANTI-SLAPP MOTION TO STRIKE
ACTIVE 725792470

Sept. 8, 2021) (no personal jurisdiction where Snap did no more than exist as an app downloadable by users in Pennsylvania).

The Court should do the same here. The Report was posted on a globally accessible research blog, not targeted to California. Any downstream impact on California or its residents is, at most, the result of third-party access to global threat-intelligence material, not Koi Corp.'s express aiming at California. An exercise of personal jurisdiction by the Court would be unreasonable under the circumstances.

**B.      <u>Despite Amendment, the FAC Still Lumps All Defendants Together and Fails Rule 8.</u>**

The FAC is no short and plain statement: it is a 44-page pleading with 187 numbered allegations and, once its exhibit index and exhibits are included, a 171-page ECF filing. That is not a "short and plain statement" as the Federal Rules mandate. *McHenry v. Renne*, 84 F.3d 1172, 1179 (9th Cir. 1996); *Kenner v. Kelly*, No. 11-cv-1538, 2018 WL 1726440, at *4 (S.D. Cal. Apr. 10, 2018).

The FAC also exemplifies impermissible group pleading. *See Aquilina v. Certain Underwriters at Lloyd's Syndicate #2003*, 406 F. Supp. 3d 884, 903 (D. Hawaii 2019). It names seven defendants, and explicitly states that "[r]eferences to 'Koi Defendants' mean all of them acting in concert," including presumably PANW, which had nothing to do with the research, preparation, or publication of the Report, and did not acquire Koi until months after the Report was published. (FAC ¶ 15, Ex. 20.) The FAC also incorporates every preceding allegation into each count, and shifts among "Koi Defendants," "Palo Alto," successor-liability allegations, Koidex allegations, and Palo Alto-only republication theories. (See FAC ¶¶ 15, 18-25, 162-85.) That structure does not tell Koi Corp. or PANW which statements, publications, theories, and remedies are asserted against which defendant. Rule 8 requires notice; the FAC still requires guesswork. The FAC should be dismissed for this reason alone.

17

**C.      The FAC Fails to State Any Claim Under Rule 12(b)(6).**

**1.      The Same Four Defects Defeat Every Count**

Four defects run through every count: the Report is not "of and concerning" MeetingTV, the challenged conclusions are protected analytical judgment based on disclosed facts, the FAC pleads causation through independent downstream actors, and it does not plead actual malice. Each defeats Count I; because every other claim is derivative, overlapping, or based on the same classifications and downstream-effects theory, each defeats those claims too.

**2.      The FAC Fails to State a Claim for Defamation Per Se (Count I)**

To state a claim for defamation under California law, MeetingTV must allege "a false and unprivileged publication by writing..., which exposes any person to hatred, contempt, ridicule, or obloquy, . . . or which has a tendency to injure him in his occupation." *ZL Techs., Inc. v. Does 1-7*, 13 Cal. App. 5th 603, 623 (2017) (quoting Cal. Civ. Code § 45). "The sine qua non of recovery for defamation... is the existence of falsehood." *Id.* (quoting *Summit Bank v. Rogers*, 206 Cal. App. 4th 669, 695 (2012)). "[W]hether a challenged statement is reasonably susceptible of a defamatory interpretation" is a question of law. *Id.* (*quoting Bently Reserve LP v. Papaliolios*, 218 Cal. App. 4th 418, 428 (2013)) (cleaned up). Here, the FAC appears to group its defamation theory into three categories of alleged falsehood: (1) a cluster of China-attribution assertions that MeetingTV says the Report falsely applied to it, including statements about China-hosted servers, Chinese registration, Chinese code, Chinese comments and variables, Chinese-time-zone patterns, affiliate-fraud schemes, and Chinese-marketplace URL patterns (FAC ¶¶ 104-05); (2) the alleged implication that Zoomcorder/MeetingTV was a front for, or knowingly involved with, a Chinese criminal operation (FAC ¶¶ 106-08, 162-63); and (3) the designation, classification, or republication of MeetingTV domains, endpoints, and software as IOCs, malware, command-and-control infrastructure, or components of a criminal campaign (FAC ¶¶ 78, 121, 134-35, 162-65). As explained below, each theory fails.

ACTIVE 725792470

**a.      None of the "Core Factual Falsities" Alleged in the FAC Are "Of and Concerning" MeetingTV**

As a threshold point, Plaintiff's falsehood allegations fail because most of the complained-of statements in the Report are not about—and do not reference—MeetingTV or its domains. A publication is not actionable as defamation unless it is "of and concerning" the plaintiff. *See Blatty v. N.Y. Times Co.*, 42 Cal. 3d 1033, 1046 (1986). To satisfy this fundamental constitutional requirement, the plaintiff must plead that it is the "direct object of criticism" based on a "specific reference" to the plaintiff, not something that could be attributed to the plaintiff. *Id.* at 1044. The requirement denies a right of action to plaintiffs who merely complain about nonspecific statements they believe caused them some hurt. *Id.*

Here, the FAC includes a chart labeled "Core Factual Falsities" in which Plaintiff purports to allege "specific assertions" from the Report that are "demonstrably false as applied to Plaintiff." (FAC ¶ 105 and Ex. 1 at 19.) The assertions track a section of the Report titled "Attribution: The Chinese Connection," which presented links to China that the author identified while investigating DarkSpectre. (FAC Ex. 1 at 19.) ***Crucially, none of the statements included in the FAC's chart reference MeetingTV or any of its domains.*** (Compare FAC ¶ 105 with FAC Ex. 1 at 19.) The Report's textual attribution of who operates DarkSpectre is unambiguous: an unknown Chinese operation.

Where the Report did reference MeetingTV-related domains, it did not suggest that those domains were hosted in China, included Chinese code, or otherwise exhibited any of the Chinese connections described in Plaintiff's chart. (*See* FAC Ex. 1 at 8-12.) The FAC dances around this fact by alleging that the China-related statements are false "as applied to Plaintiff." (FAC ¶ 105.) But Plaintiff cannot manufacture a falsity allegation by taking statements in the Report and "applying" them to itself where no basis for such an inference exists.

In short, Plaintiff cannot satisfy the "of and concerning" requirement by labeling out-of-context material from the Report as "about Plaintiff." (FAC ¶ 105.) *See Blatty*, 42

19

Cal. 3d at 1044. None of the "Core Factual Falsities" alleged in the FAC can support Plaintiff's defamation per se claim.

### b.   No Reasonable Defamatory Implication Can Be Inferred From the Report

Aside from its "Core Factual Falsities," MeetingTV's other alleged falsehoods require an unreasonable inference: that because MeetingTV-associated domains are referenced as being used by the suspected threat actor, the Report therefore implied that MeetingTV either was itself the Chinese threat actor or acted in concert with it. The incorporated Report identifies DarkSpectre as the threat actor and describes The Zoom Stealer as a campaign linked through infrastructure and extension artifacts. It references MeetingTV-associated domains in that technical narrative and lists three domains among many IOCs. (FAC Ex. 1 at 9-12, 21-23; FAC ¶¶ 78, 88-92, 106, 140.) Those references do not reasonably imply that MeetingTV itself operated DarkSpectre, knowingly joined a criminal campaign, or served as the Chinese threat actor's corporate alter ego.

"To state a claim for implied defamation . . . the published statement must reasonably 'be understood as implying the alleged defamatory content.'" *Price v. Stossel*, 620 F.3d 992, 1003 (9th Cir. 2010) (emphasis added) (quoting *Weller v. Am. Broad. Co.*, 232 Cal. App. 3d 991, 1001 n.8 (1991)). Courts should "refrain from scrutinizing what is not said to find 'a defamatory meaning which the article does not convey to a lay reader.'" *Forsher v. Bugliosi*, 26 Cal. 3d 792, 803 (1980) (quoting *Mullins v. Thieriot*, 19 Cal. App. 3d 302, 304 (1971)). A claimed implication that depends on the perspective of a reader with "extra sensitive perception" is insufficient. *Id.* at 805-06.

Plaintiff's strongest implication allegation is the Report's description of Zoomcorder.com as a "public-facing front" for the operation. (FAC ¶ 106.) But even this language, read in context, does not impute knowledge or complicity to MeetingTV. The incorporated Report speaks in terms of an "operation" and suspected infrastructure; it describes how the threat actor used Zoomcorder.com, not how MeetingTV knowingly ran a front. In the cybersecurity field, threat actors routinely exploit legitimate third-party

20

services as cover. Describing a service as a "public-facing front" for a threat actor's operation attributes the deception to the threat actor, not to the service owner. A reasonable reader of threat-intelligence research would understand it the same way: DarkSpectre used a legitimate service as cover, not that the service operator itself was a knowing accomplice. Koi's post-publication email, which the FAC quotes, likewise stated that Koi had "never claimed that there was any relation between the threat actor and your company," and the later update stated there was "no evidence" that meetingtv.us was connected to the malicious infrastructure or threat-actor group.[4] (FAC ¶¶ 126, 128; Exs. 19, 22.) The FAC disagrees with the adequacy of those statements, but that disagreement does not make the alleged implication a reasonable one under *Price* and *Forsher*.

That is the inferential leap the law does not permit. Reporting that a threat actor used legitimate services as part of its infrastructure, or listing related domains as IOCs, does not accuse the domain owner of being the threat actor or knowingly associating with it. Indeed, CyberAlberta's governmental report similarly identified MeetingTV-related domains as IOCs. An IOC is a standard research-report artifact—a technical data point observed during an investigation, nothing more. The Report supplies its own narrative and repeatedly points to DarkSpectre, not MeetingTV.

**c.      The Report's Classification of Domains as IOCs Is Protected Opinion**

The Report's references to MeetingTV's domains are non-actionable analytical judgments subject to First Amendment protection. Cybersecurity threat assessments, IOC classifications, and attribution analyses evaluate technical artifacts; where the speaker

---

[4] The FAC also alleges that Koi's "Koidex" database continued to list MeetingTV-related domains as malicious after the February 2026 update. (FAC ¶¶ 132-33.) But Koidex is a software-risk analysis database that catalogs technical artifacts across the entire browser-extension ecosystem. (FAC ¶ 66.) Its entries are automated analytical outputs reflecting code-level and infrastructure-level observations, not editorial statements attributing MeetingTV to a criminal organization.

21

discloses the facts and reasoning, readers can assess the conclusions for themselves. *See PC Drivers Headquarters, LP v. Malwarebytes Inc.*, 371 F. Supp. 3d 652, 664 (N.D. Cal. 2019) (security-vendor malware/PUP classification was non-actionable opinion); *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 19-20 (1990); *Partington v. Bugliosi*, 56 F.3d 1147, 1156-57 (9th Cir. 1995). *See also Nicosia v. De Rooy*, 72 F. Supp. 2d 1093, 1104 (N.D. Cal. 1999).

That rule is narrow but decisive here. Defendants do not need a rule that every cybersecurity classification is automatically immune from challenge. The point is that the incorporated Report disclosed the artifacts on which it relied: the extension pivot, permissions, data-collection discussion, Firebase/Google Cloud references, China-attribution section, and IOC lists. (FAC Ex. 1 at 9-12, 19, 21-23.) The FAC attacks those conclusions as wrong, unverified, and commercially motivated. (FAC ¶¶ 65, 104-08, 117, 146-50.) But disagreement with the investigation does not turn disclosed attribution analysis into an actionable false statement of fact about MeetingTV.

The incorporated Report lays out the artifacts on which it says it relied: the extension pivot, permissions, data-collection discussion, Firebase/Google Cloud references, China-attribution section, and IOC lists. (FAC Ex. 1 at 9-12, 19, 21-23.) The FAC attacks those conclusions as wrong, unverified, and commercially motivated. (FAC ¶¶ 65, 104-08, 117, 146-50.) But disagreement with the investigation does not make MeetingTV the direct object of the Report's China-attribution statements, and it does not supply an alleged defamatory implication that a reasonable reader would draw from what the Report actually says.

### 3.    The FAC Pleads Itself Out of Causation

A plaintiff must plausibly allege that the defendant's conduct caused the plaintiff's harm. *Twombly*, 550 U.S. at 570; *Iqbal*, 556 U.S. at 678. "California uses the 'substantial factor' test to determine causation." *Wisk Aero LLC v. Archer Aviation Inc.*, No. 3:21-cv-02450-WHO, 2023 U.S. Dist. LEXIS 100960, at *12 (N.D. Cal. May 30, 2023). Here MeetingTV alleges that its harm (i) flowed from independent third-party decisions, (ii)

22

automated systems operating outside the defendant's control, and (iii) events that predate the Defendants' conduct.

The FAC pleads causation through downstream vendors and automated threat-intelligence systems. (FAC ¶¶ 6, 26-30, 140-44.) It alleges that vendors such as Verizon, Spectrum, Avast, Cloudflare, Fortinet, Cisco, and DNSFilter ingested or acted on threat-intelligence classifications, but it does not allege that any Defendant requested, instructed, or directed any vendor to block, flag, or take any action against MeetingTV's domains. (*See generally* FAC ¶¶ 407-33.) Plaintiff's remaining vendor allegations rest on "upon information and belief" assertions which are not enough without supporting facts. *See Marcus v. Nationstar Mortg. LLC*, No. 19-56288, 2022 WL 1486831, at *2 (9th Cir. May 11, 2022) (information-and-belief allegations without supporting facts are "naked assertion[s]" insufficient to state a claim). The pleaded chain depends on independent nonparty classification and blocking decisions, not conduct by Koi Corp. or PANW. Indeed, the putative class action filed days ago never references Koi or the Report. *Gaines v. Robertson*, No. 3:26-cv-03696-LL-DDL (S.D. Cal. filed June 24, 2026). (Barros Decl. ¶ 11, Ex. 9 at ¶¶ 65-74.) Instead, it references CyberAlberta, Stanford University's Information Security Office and a non-profit. (*Id*.)

Judicially noticeable materials also show that public concern and vendor blocking predated the Report. As discussed above, CyberAlberta publicly reported allegations about WebinarTV's scraping practices and listed MeetingTV-related domains as IOCs, and MeetingTV had already sued Proofpoint after Proofpoint allegedly labeled webinartv.us malicious and caused the same categories of harm MeetingTV alleges here. (RJN ¶¶ 1-2; Barros Decl. ¶¶ 3-4, Exs. 1-2.) Against that backdrop, the FAC does not plausibly plead that Defendants caused every later blocking decision or reputational injury.

### 4.    Plaintiff Fails to Plead Actual Malice

At minimum, because the Report involves speech on a matter of public concern, MeetingTV must plead fault and actual damages. *Obsidian Fin. Grp., LLC v. Cox*, 740

23

F.3d 1284, 1287 (9th Cir. 2014). And because actual malice applies, the FAC must plead facts showing knowledge of falsity or reckless disregard for truth, not negligence. *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 280 (1964); *Gertz v. Robert Welch*, Inc., 418 U.S. 323, 332 (1974); *Makaeff v. Trump Univ., LLC*, 715 F.3d 254, 270 (9th Cir. 2013). The FAC does neither. That standard is deliberately demanding: it requires a showing that the defendant "in fact entertained serious doubts as to the truth of his publication." *St. Amant v. Thompson*, 390 U.S. 727, 731 (1968).

The Ninth Circuit applies a three-prong test to determine whether a plaintiff is a limited-purpose public figure subject to the actual-malice standard. *Planet Aid, Inc. v. Reveal*, 44 F.4th 918, 925 (9th Cir. 2022). The test asks whether "(i) a public controversy existed when the statements were made, (ii) whether the alleged defamation is related to the plaintiff's participation in the controversy, and (iii) whether the plaintiff voluntarily injected itself into the controversy for the purpose of influencing the controversy's ultimate resolution." *Id.* MeetingTV satisfies each. A public controversy over browser-extension security, data handling, and consumer harm predated the Report. The alleged defamation relates to MeetingTV's participation in that controversy: before the Report, MeetingTV had already sued Proofpoint on similar theories, and the Report addressed MeetingTV's extensions, permissions, and data-handling practices—subject matter MeetingTV holds out to the public. And MeetingTV voluntarily injected itself into the controversy through its mass-market promotion of its extensions to millions of users. Under *Makaeff*, "large scale, aggressive advertising can inject a person or entity into a public controversy that arises from the subject of that advertising." *Makaeff*, 715 F.3d at 267. MeetingTV cannot simultaneously court millions of consumers on the safety and utility of its extensions and then claim private status when a security researcher scrutinizes those representations.

Beyond vacuous "upon information and belief" allegations, Plaintiff's only proffered scienter theories are that Defendants published the Report to impress a

24

prospective acquired, (FAC ¶¶ 3, 65, 148), and that the Report's "Twitter X Video Downloader" pivot extension was purportedly "fabricated." (*Id.* ¶¶ 94-96, 101,146.) Neither satisfies the demanding actual-malice standard. These allegations are also based "upon information and belief," are not supported by well-pleaded facts, and are insufficient to state a claim. Even if taken as true, a motive to profit does not amount to knowledge of falsity. *Harte-Hanks Commc'ns v. Connaughton*, 491 U.S. 657, 667 (1989). Reckless disregard requires facts showing that the defendant in fact entertained serious doubts about the truth of the publication; mere failure to investigate, even when a reasonably prudent person would have investigated, is not enough. *Dodds v. Am. Broad. Co.*, 145 F.3d 1053, 1061 (9th Cir. 1998). Nor can the FAC plead serious doubt from novelty: before the Report, CyberAlberta had published concerns about WebinarTV and MeetingTV had already sued Proofpoint over a similar malicious-domain label and the same categories of alleged harm. (RJN ¶¶ 1-2, Barros Decl. ¶¶ 3-4, Exs. 1-2.) The FAC offers nothing beyond conclusory allegations on the supposed failure to investigate. Indeed, the Report itself expresses the investigation behind its conclusions.

### 5. The FAC Fails to State a Claim for Trade Libel (Count II)

Trade libel requires a false statement disparaging the quality of a plaintiff's goods or services, malice, and special damages. "The tort encompasses 'all false statements concerning the quality of services or product of a business which are intended to cause that business financial harm and in fact do so.'... To constitute trade libel, a statement must be false.... Since mere opinions cannot by definition be false statements of fact, opinions will not support a cause of action for trade libel." *ComputerXpress, Inc. v. Jackson*, 93 Cal. App. 4th 993, 1010-11 (2001) (internal citations omitted).

Though trade libel resembles defamation, it demands a "greater burden of proof resting on the plaintiff, and the necessity for special damage in all cases." *Muddy Waters, LLC v. Superior Court*, 62 Cal. App. 5th 905, 925(2021).

"Because the gravamen of Plaintiff's claim is defamation," the remaining claims are derivative and "stand or fall with the underlying defamation claim." *See Unelko Corp.*

25

*v. Rooney*, 912 F.2d 1049, 1057-58 (9th Cir. 1990) (trade libel and tortious interference with business relationships are "subject to the same first amendment requirements that govern actions for defamation"); *see, e.g.*, *Chapman v. Journal Concepts*, Inc., No. 07-00002 JMS/LEK, 2008 U.S. Dist. LEXIS 104448, at *58 (D. Hawaii Dec. 24, 2008) ("claims of disparagement of trade, tortious interference with business, false light, and emotional distress are all derivative"). As California's Supreme Court has held: "First Amendment limitations are applicable to all claims, of whatever label, whose gravamen is the alleged injurious falsehood of a statement[.]" *Blatty*, 42 Cal. 3d at 1044-45 (emphasis added). Consequently, the arguments laid out above in Count I as to opinion, falsity, and fault defeat this claim for the same reasons.

Further, the FAC fails to plead the required false statements concerning MeetingTV's product quality. To the contrary, the FAC alleges that the Report acknowledged the extensions were legitimate functioning products, "functional tools that delivered real value," and that "users got what was advertised" and the extensions "earned trust and positive reviews." (FAC ¶ 84.) A publication that readily acknowledges the legitimate and functional quality of the plaintiff's product cannot double as trade libel of the same alleged product. That ends the inquiry.

The FAC also fails to plead special damages, as required by California law. Special damages are actual pecuniary loss traceable to identifiable third parties who refused to deal with the plaintiff because of the challenged statements. That requirement matters because trade libel protects against measurable economic loss from specific disappointed purchasers, not reputational injury in the abstract. *Isuzu Motors Ltd. v. Consumers Union*, 12 F. Supp. 2d 1035, 1046 (C.D. Cal. 1998); *see Pridonoff v. Balokovich*, 36 Cal. 2d 788, 792 (1951). The FAC pleads broad categories of harm – lost subscriptions, blocked services, and lost business opportunities – without identifying specific customers, contracts, or transactions lost because of the Report, as opposed to automated downstream third-party blocking or causes that predated the Report. (*See, e.g.*, FAC ¶¶ 6, 10, 26-30, 140-41.) These defects require dismissal of the trade libel claim.

KOI CORP.'S AND PANW'S MOTION TO DISMISS AND ANTI-SLAPP MOTION TO STRIKE
ACTIVE 725792470

**6.  The FAC Fails to State a Claim for Lanham Act False Advertising and Unfair Competition (Count III)**

The FAC also fails to state a claim under the Lanham Act, 15 U.S.C. § 1125(a). To adequately assert a false-advertising claim, a plaintiff must plead: "(1) a false statement of fact in a commercial advertisement about its own or another's product that (2) actually deceived or tended to deceive a substantial segment of its audience, (3) was material to purchasing decisions, (4) entered interstate commerce, and (5) injured or is likely to injure the plaintiff, either by direct diversion of sales from it to the defendant or by a lessening of the goodwill associated with its products." *Pet Care Prods., LLC v. PurLife Brands, Inc.*, 703 F. Supp. 3d 1022, 1031 (N.D. Cal. 2023) (citing *Skydive Arizona, Inc. v. Quattrocchi*, 673 F.3d 1105, 1110 (9th Cir. 2012)).

Here, Plaintiff fails to sufficiently allege that the Report is a commercial advertisement subject to the Lanham Act in the first instance. Regardless, Plaintiff's conclusory allegations merely parrot the elements of a Lanham Act false advertising claim and fall short of its pleading burden. *See Crittendon v. Muldrow*, No. 22-CV-09153-RS, 2023 WL 2743582, at *3 (N.D. Cal. Mar. 31, 2023) (citation omitted). Finally, even assuming Plaintiff adequately alleged the elements of its Lanham Act claim — and it does not — Plaintiff's claim fails on consideration of the first prong: pleading that a defendant made a false statement of fact about its products in the course of commercial advertising.

**a.  The Report Is Not Commercial Advertising or Promotion**

Plaintiff's Lanham Act claim fails at the threshold because the Report is not "commercial advertising or promotion." 15 U.S.C. § 1125(a). The Ninth Circuit requires speech that is commercial, made by a competitor, intended to influence consumers to buy the defendant's goods or services, and sufficiently disseminated to the relevant purchasing public. *Ariix, LLC v. NutriSearch Corp.*, 985 F.3d 1107, 1114-15 (9th Cir. 2021). The FAC tries to satisfy that element by relabeling the same technical report as a "marketing asset," "commercial speech," and "integrated sales collateral." (FAC ¶¶ 69, 76, 172.) Labels do not make it so. The Report is cybersecurity research, branded "KOI

27

RESEARCH," and published under a research-team byline. (FAC Ex. 1.)

Nor does alleged reputational or indirect economic benefit make the Report commercial speech. *Ariix* requires that economic benefit be the primary purpose for speaking. 985 F.3d at 1116-17. Treating technical research as commercial advertising because it may burnish the author's credentials would sweep in academic papers, policy reports, technical blogs, and security bulletins. *New.Net* rejects that expansion: speech addressing public importance does not become commercial speech merely because it concerns another's product. *New.Net*, *Inc. v. Lavasoft*, 356 F. Supp. 2d, 1090, 1117-18 (C.D. Cal. 2004).

*Bolger* and *Kasky* do not help MeetingTV. *Bolger* involved mailings that were concededly advertisements and referred to the speaker's products, while warning that format, product reference, or economic motive is not enough standing alone. *Bolger v. Youngs Drug Prods. Corp.*, 463 U.S. 60, 66-67 (1983). *Kasky* addressed factual representations about Nike's own production practices. *Kasky v. Nike, Inc.*, 27 Cal. 4th 939, 966 (2002). The challenged statements here are threat-research conclusions about suspected malicious activity; they do not propose a transaction, make factual representations about Koi's products, or become advertising because a "Book a Demo" link allegedly appeared nearby. (FAC ¶¶ 5, 8, 20, 69-71, 76, 151, 172.)

For these reasons, Plaintiff fails to allege that the challenged statements constitute "commercial advertising or promotion" within the meaning of the Lanham Act, or that they were made with a primarily economic motivation. *See Children's Health Def. v. Facebook Inc.*, 546 F. Supp. 3d 909, 934–37 (N.D. Cal. 2021) (dismissing Lanham Act claim where challenged statements were not "commercial advertising or promotion"), aff'd sub nom. *Children's Health Def. v. Meta Platforms, Inc.*, 112 F.4th 742 (9th Cir. 2024), cert. denied, 145 S. Ct. 2846 (2025). The FAC's Lanham Act claim should therefore be dismissed.

### b. Plaintiff's Boilerplate Pleading is Insufficient to Sustain a Claim

The FAC's remaining Lanham Act allegations merely recite elements: materiality,

28

deception, dissemination, lost sales, goodwill, and reputational harm. (FAC ¶¶ 173, 175.) It does not plead facts showing actual or likely deception, materiality, interstate dissemination, or cognizable injury. *Twombly* and *Iqbal* require more than labels and formulaic recitations. As the Supreme Court explained, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Twombly*, 550 U.S. at 555. The claim also fails against PANW for the Palo Alto-specific reasons below.

### c.    Even if Plaintiff Adequately Alleged the Elements of a Lanham Act Claim, Such Claim Fails at the First Step of the Analysis

The claim fails for a second reason: the FAC does not plead a false statement of fact about MeetingTV's goods or services. The Report references MeetingTV, at most, through domains and infrastructure embedded in a broader cybersecurity analysis. That is not a representation about MeetingTV's products or services. *See Prager Univ. v. Google LLC*, 951 F.3d 991, 999-1000 (9th Cir. 2020) (requiring a sufficient connection between the challenged statement and the plaintiff's goods or services); *Netafim Irrigation, Inc. v. Jain Irrigation, Inc.*, 562 F. Supp. 3d 1073, 1094 (E.D. Cal. 2021) (boilerplate allegations that statements tended to deceive customers did not permit an inference of actual deception). An isolated and indirect reference to a URL in a threat-research report does not plausibly support the inference that consumers would attribute the Report's conclusions to MeetingTV's business, goods, or services.

For the foregoing reasons, Plaintiff's Lanham Act claim against Koi Corp. and PANW must be dismissed.

### 7.    The FAC Fails to State a Claim under California's Unfair Competition Law (Count IV)

California's Unfair Competition Law ("UCL") has three independent prongs, prohibiting any "unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. Plaintiff's claims under all three prongs fail.

First, the unlawful prong fails because MeetingTV alleges no independent violation

29

of the law. Plaintiff's "unlawful" is tethered to alleged violations under the "Lanham Act and California common law (defamation and trade libel)." (FAC ¶ 178.) That is Plaintiff's only theory under the unlawful prong. Because Counts I through Counts III and VI fall, the unlawful prong of the UCL must fall with it. *See Ingels v. Westwood One Broad. Servs., Inc.*, 129 Cal. App. 4th 1050, 1060 (2005). When "a plaintiff cannot state a claim under a 'borrowed' law[,]" the plaintiff "cannot state a UCL claim either." *Silcox v. State Farm Mut. Auto. Ins. Co.*, No. 14-cv-2345 AJB (MDD), 2014 U.S. Dist. LEXIS 176297, at *14 (S.D. Cal. Dec. 22, 2014) (Battaglia, J.).

Second, MeetingTV does not (and cannot) sufficiently allege the "unfair" prong because the FAC does not allege Koi Corp. or PANW competes with MeetingTV. And, indeed, they do not. The "unfair" prong requires competitor conduct that "threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition." *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 187 (1999). The FAC here alleges that Koi Corp. is a cybersecurity firm and that PANW is a security vendor or network operator. (FAC ¶¶ 8, 143.) It explains that MeetingTV sells webinar-search and meeting-recording services (FAC ¶¶ 58–59.) These are different markets, customers, and products. Without a competitive relationship—let alone conduct that threatens competition—the unfair prong cannot stand.

Finally, the fraudulent prong fails because MeetingTV does not plausibly allege consumer deception. The "fraudulent" prong requires conduct with a capacity to deceive "reasonable consumer[s]." *Chancy v. Fossil Grp., Inc.*, No. 25-CV-1566, 2025 U.S. Dist. LEXIS 229665, at *23 (S.D. Cal. Nov. 21, 2025) (Battaglia, J.). Under the reasonable-consumer test, MeetingTV must show that members of the public are "likely to be deceived." *Id.* at *18 (citing *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008)). The FAC also fails to plead fraud with the particularity Rule 9(b) demands—the who, what, when, where, and how of the alleged fraud. Fed. R. Civ. P. 9(b). The FAC's

theory – that the Report deceived "the public and market participants who rely on threat intelligence" – is conclusory. (FAC ¶ 178.) It pleads no facts suggesting that the Report's security-community audience overlaps with MeetingTV's webinar-search or Zoomcorder customers. (FAC ¶¶ 58-59.)

**8.     The FAC Fails to State a Claim under California's False Advertising Law (Count V)**

MeetingTV fails to state a claim under California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500 et seq. (FAC ¶¶ 180–181). Like the UCL claim, the FAL claim is a derivative claim and the Report could not, and cannot, deceive any reasonable reader.

First, this cause of action is derivative of plaintiff's other claims and fails with them. "Courts often analyze [CLRA, FAL, and UCL] statutes together because they share similar attributes." *Chancy*, 2025 U.S. Dist. LEXIS 229665, at *23 (quoting *Dawson v. Better Booch, LLC*, 716 F. Supp. 3d 949, 956 (S.D. Cal. 2024)) (brackets in original) (Battaglia, J.). FAL makes it unlawful to disseminate a statement concerning goods or services that is "untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." Cal. Bus. & Prof. Code § 17500. By its terms, the statute reaches both knowing and negligent falsity, but not innocent misrepresentation. MeetingTV must allege an untrue and misleading statement. The Report's listing of domains that incidentally belong to Plaintiff among its IOCs is not such a statement: it does not identify Plaintiff as the threat actor, it is non-actionable opinion disclosing its own reasoning, and it is not "commercial advertising or promotion" under the Lanham Act. And so, for the same reasons set out above, this claim should be dismissed in tandem with Plaintiff's UCL cause of action.

Second, no reasonable reader in the relevant audience would be deceived by the Report. An FAL claim may be dismissed when no reasonable consumer would likely be misled. *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008). The relevant audience for this Report is the cybersecurity and threat-intelligence community, not

31

MeetingTV's webinar-search or Zoomcorder customers. (FAC ¶¶ 58-59.) The Report does not state that MeetingTV is DarkSpectre, operated DarkSpectre, or knowingly participated in a criminal campaign. It lists MeetingTV-related domains and infrastructure within a technical IOC discussion in a Report focused on DarkSpectre. The FAC's theory depends on an inference the Report does not make and a reasonable threat-intelligence reader would not draw.

Third, Plaintiff cannot recover the relief it seeks. The FAL/UCL remedy scheme generally provides equitable relief, not damages - and restitution is limited to returning money obtained from the plaintiff. *Kasky*, 27 Cal. 4th at 950; *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 179 (1999). MeetingTV never purchased anything from, paid any money to, or had any business transaction with Defendants, and the FAC does not allege that Defendants acquired money or property from MeetingTV. And because the challenged statements are not actionable, there is nothing to enjoin.

### 9.    Count VI is Duplicative and Should Be Dismissed on that Basis

Count VI, captioned "Defamation and Trade Libel" against Palo Alto only, alleges that "Palo Alto independently published and continues to independently republish the Malware and C2 Classifications (as defined in Section XI) after receiving actual notice of their falsity," and that this conduct "constitutes defamation per se and trade libel." (FAC ¶¶ 183-85.) That is the identical theory already pleaded against Palo Alto in Counts I and II. (Compare FAC ¶¶ 183-85 with FAC ¶¶ 165-66, 169-70.) Count VI thus rests on the same defined statements, the same conduct, and the same two causes of action already asserted against Palo Alto in Counts I and II. A count that merely restates allegations and theories pleaded elsewhere is redundant and subject to dismissal. *See Palm Springs Villas II Homeowners Assn., Inc. v. Parth*, 248 Cal.App.4th 268, 290-91 (2016) (duplicative cause of action may be dismissed on demurrer); *Cruz v. City of San Diego*, No. 24-CV-00287, 2025 WL 591072, at *15-16 (S.D. Cal. Feb. 24, 2025) (Battaglia, J.) (dismissing duplicative claims). Because Count VI is wholly subsumed by the Palo Alto allegations in Counts I and II, it should be dismissed as duplicative. At a minimum, Count VI rises and

32

falls with those allegations and fails for the reasons set forth above.

**10.    The FAC Otherwise Fails to State a Claim Against Palo Alto Networks**

The FAC's only Palo Alto-specific allegations are post-notice Malware/C2 classifications and a conclusory successor/acquirer theory. (FAC ¶¶ 46-49, 134-39, 165, 169, 174-75, 178-81, 183-85.) But the Report was published on December 30, 2025, Koi's pleaded update occurred on February 12, 2026, and Palo Alto did not acquire Koi until on or about April 14, 2026. (FAC ¶¶ 8, 128, 134.) Those dates matter: PANW did not research, author, approve, publish, or update the Report. The FAC does not plead that PANW controlled, approved, or published either Koi act. Nor does it plead facts satisfying any recognized successor-liability exception; it offers only labels such as "adopted," "ratified," "benefited," "successor," and "assumed." Under California law, an asset purchaser generally does not assume the seller's liabilities unless the purchaser expressly or impliedly assumed them, the transaction amounted to a de facto merger or consolidation, the purchaser was a mere continuation, or the transaction was fraudulent. *Franklin v. USX Corp.*, 87 Cal.App.4th 615, 621 (2001). Conclusory successor or alter-ego labels do not satisfy Rule 8 where the pleading lacks facts supporting an exception. *See Creditors Adjustment Bureau, Inc. v. All Season Power LLC*, No. 25-CV-09888, 2026 WL 712870, at *4-6 & n.3 (C.D. Cal. Feb. 13, 2026). What remains is Palo Alto's own alleged Malware/C2 classification theory, which is already pleaded in Counts I and II and duplicated in Count VI. (FAC ¶¶ 165, 169, 183-85.) It fails for the same statement-specific, falsity, causation, and fault reasons set out above.

**D.    California's anti-SLAPP law mandates dismissal because the FAC is an attempt to chill constitutionally protected speech and there is no probability of prevailing.**

Plaintiff's claims directly implicate constitutional protections for reporting on significant issues of public interest. The Court must consequently "consider this case against the background of a profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open[.]" *N.Y. Times Co. v. Sullivan*,

33

376 at 270.

The Ninth Circuit has emphasized that courts should consider First Amendment concerns even at the pleading stage. *See, e.g., Flowers v. Carville*, 310 F.3d 1118, 1130 (9th Cir. 2002) ("[W]here a plaintiff seeks damages... for conduct which is prima facie protected by the First Amendment, the danger that the mere pendency of the action will chill the exercise of First Amendment rights requires more specific allegations than would otherwise be required.")

The same point applies with particular force to Plaintiff's defamation theories. "Defamation claims, in particular, must be advanced with sufficient specificity," *Harris v. City of Seattle*, 315 F. Supp. 2d 1112, 1123 (W.D. Wash. 2004), and must identify "the precise statements alleged to be false and defamatory, who made them and when." *Flowers*, 310 F.3d at 1131. MeetingTV's FAC does not satisfy that requirement because it pleads broad conclusions about the Report and alleged "Malware and C2 Classifications" rather than the required statement-by-statement, speaker-by-speaker allegations. (FAC ¶¶ 162-66, 183-85.)

### 1.    California's anti-SLAPP statute applies broadly in federal court

California's anti-SLAPP statute permits early dismissal of meritless claims aimed at protected speech and applies to state-law claims in federal court. *Metabolife Int'l, Inc. v. Wornick*, 264 F.3d 832, 839 (9th Cir. 2001); *U.S. ex rel. Newsham v. Lockheed Missiles & Space Co.*, Inc., 190 F.3d 963, 973 (9th Cir. 1999). Courts, "whenever possible, should interpret the First Amendment and section 425.16 in a manner 'favorable to the exercise of freedom of speech, not its curtailment.'" *Briggs v. Eden Council for Hope & Opportunity*, 19 Cal. 4th 1106, 1119 (1999); CCP § 425.16(a) (the anti-SLAPP law "shall be construed broadly").

The anti-SLAPP analysis proceeds in two steps. Defendants first show that the claims arise from protected speech or petitioning activity in connection with a public issue. If they do, MeetingTV must show a probability of prevailing. *Varian Med. Sys., Inc. v. Delfino*, 35 Cal. 4th 180, 192 (2005); *Eliott v. Lions Gate Ent. Corp.*, 639 F. Supp. 3d

1012, 1023 (C.D. Cal. 2022).

Where, as here, the anti-SLAPP motion asserts legal rather than factual deficiencies in the FAC, the Court conducts its analysis under the Rule 12(b)(6) pleading standard. *Eliott v. Lions Gate Ent. Corp.*, 639 F. Supp. 3d at 1023; P*lanned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 890 F.3d 828, 834 (9th Cir. 2018) (same). Thus, applying § 425.16 here, "a claim is considered legally sufficient when the allegations, viewed in the light most favorable to the plaintiff, are 'plausible on [their] face.'" *Heller v. NBC Universal, Inc.*, No. CV-15-09631-MWF-KS, 2016 WL 6583048, at *3 (C.D. Cal. June 29, 2016) (cleaned up).

The commercial-speech exemption does not apply. § 425.17(c) reaches factual representations about the speaker's or a competitor's business, goods, or services, made to promote the speaker's goods or services to buyers or influencers. Cal. Code Civ. Proc. § 425.17(c)(1)-(2); *Simpson Strong-Tie Co. v. Gore*, 49 Cal. 4th 12, 26, 30-32 (2010). MeetingTV pleads webinar-search and recording services; Koi and PANW are cybersecurity companies. (FAC ¶¶ 58-59, 68-69.) The challenged statements are threat-research conclusions about suspected malicious infrastructure and IOCs, not representations about Defendants' own products, and a noncompetitor statement does not become exempt commercial speech because the speaker allegedly used it to promote itself. *Simpson*, 49 Cal. 4th at 31-32; *New.Net*, 356 F. Supp. 2d at 1103.

**2.     The FAC targets allegations at protected activity on a matter of public concern under the anti-SLAPP statute**

Here, all causes of action are premised on the content of a research blog on Koi's website. This implicates protected speech. Each claim therefore falls squarely within the scope of protection afforded by §§ 425.16(e)(3) and (e)(4).

The first prong is focused "not on the form of plaintiff's cause of action, but, rather, the defendant's activity that gives rise to his or her asserted liability — and whether that activity constitutes protected speech or petitioning." *Navellier v. Sletten*, 29 Cal. 4th 82, 92 (2002) (emphasis removed); *Hunter v. CBS Broad., Inc.*, 221 Cal. App. 4th 1510, 1520

35

(2013) ("In assessing whether a cause of action arises from protected activity, we disregard the labeling of the claim and instead examine the principal thrust or gravamen of the plaintiff's cause of action... by identifying [t]he allegedly wrongful and injury-producing conduct... that provides the foundation of the claim.") (cleaned up). Moreover, within the anti-SLAPP law, "any issue in which the public is interested," is "an issue of public interest." *Nygård, Inc. v. Uusi-Kerttula*, 159 Cal. App. 4th 1027, 1042 (2008) (internal quotations omitted, emphasis in original); *Cross v. Facebook, Inc.*, 14 Cal.App.5th 190, 199 (2017) (reiterating the "issue of public interest" is construed broadly).

First, the publicly available research blog is protected online speech. *See Barrett v. Rosenthal*, 40 Cal. 4th 33, 59 n.4 (2006) (websites accessible to the public are public forums for anti-SLAPP purposes); *Muddy Waters*, *LLC*, 62 Cal. App. 5th at 917-18 (online investigative reports satisfied the public-forum and public-issue requirements); *WPEngine, Inc. v. Automattic Inc.*, No. 24-cv-06917-AMO, 2025 U.S. Dist. LEXIS 179595, at *36–38 (N.D. Cal. Sept. 12, 2025) (statements made on the internet regarding service providers constituted protected activity under California's anti-SLAPP statute); *Wong v. Jing*, 189 Cal. App. 4th 1354, 1366 (2010) ("Web sites accessible to the public are public forums for purposes of the anti-SLAPP statute").

And the speech at issue – the results of extensive research into cybersecurity threat actors – goes to the heart of an important public issue: safety and security online. The Report, published on a research blog available to the public with no paywall, identified IOCs tied to malware campaigns affecting enterprise users worldwide. *See, e.g., New.Net, Inc.*, 356 F. Supp. 2d at 1105 (finding speech in the public interest where defendant notified the public that unwanted software applications were being downloaded without user knowledge or consent); *Makaeff*, 715 F.3d at 263. The Report is safety research, not competitive mudslinging.

*Muddy Waters* is instructive. There, online reports accusing a company of inflated sales and fraud qualified for anti-SLAPP protection even though a referenced intermediary sued for trade libel and unfair competition. 62 Cal. App. 5th at 917-18. Koi's Report

36

likewise contributed to a public conversation about cybersecurity threats, compromised platforms, malware, and online safety — matters affecting large numbers of people beyond the direct participants. *See Wilbanks v. Wolk*, 121 Cal. App. 4th 883, 898 (2004); *FilmOn.com Inc. v. DoubleVerify Inc.*, 7 Cal. 5th 133, 145 (2019).

> **3.    Plaintiff cannot satisfy the requirement that it will prevail on the merits, even looking only to the FAC and judicially noticeable facts**

Because Koi Corp. and PANW easily satisfy step one of the anti-SLAPP law analysis, the burden shifts to Plaintiff to demonstrate a probability of success on the merits. *Doe v. Gangland Prods., Inc.*, 730 F.3d 946, 953 (9th Cir. 2013). Due to the laundry list of defects with the FAC's substantive defamation and derivative claims, striking the FAC is appropriate. As demonstrated in the Rule 12(b)(6) analysis above, Plaintiff cannot carry that burden on any of its six claims. Each of these deficiencies is a legal bar, not a factual gap that could be cured through discovery or amendment.

Because each of the claims fails on the merits under Rule 12(b)(6), MeetingTV cannot establish a probability of prevailing. Striking the FAC is therefore appropriate under the anti-SLAPP statute. *Planned Parenthood*, 890 F.3d at 832-34 (stating that the 12(b)(6) standard applies when considering an anti-SLAPP motion in federal court when the motion challenges the legal, rather than factual, sufficiency of the claims); *Gopher Media LLC v. Melone*, 154 F.4th 696, 705 n.3 (9th Cir. 2025) (same).

**E.    <u>Plaintiff's Demand for Injunctive Relief is an Improper Prior Restraint on Speech</u>**

Finally, in its prayer for relief, MeetingTV seeks a slew of speech-related mandatory affirmative injunctions. (FAC Prayer for Relief.) Such an injunction would violate the First Amendment and constitute an unconstitutional prior restraint. *See, e.g., Crosby v. Bradstreet Co.*, 312 F.2d 483, 485 (2d Cir. 1963) (vacating injunction prohibiting future publication); *Mahmoodian v. Pirnia*, No. 3:11-cv-005, 2012 WL 4458160, at *9 (W.D. Va. June 7, 2012), aff'd, 489 F. App'x 711 (4th Cir. 2012) (defamation injunction would be an impermissible prior restraint); *Gunder's Auto Ctr. v.*

*State Farm Ins.*, 617 F. Supp. 2d 1222, 1225 (M.D. Fla. 2009), aff'd, 442 F. App'x 819 (11th Cir. 2011) (injunction against future speech based on alleged defamation was an unconstitutional prior restraint); *Tilton v. Capital Cities/ABC Inc.*, 827 F. Supp. 674, 682 (N.D. Okla. 1993); *Konigsberg v. Time, Inc.*, 288 F. Supp. 989, 989 (S.D.N.Y. 1968).

## V.    CONCLUSION

The FAC should be dismissed with prejudice. *Wheeler v. City of Santa Clara*, 894 F.3d 1046, 1059 (9th Cir. 2018) (leave to amend may be denied if the proposed amendment is futile or would be subject to dismissal). Amendment here would be futile: the jurisdictional flaws are fatal and cannot be cured by repleading. MeetingTV has already amended once, adding nothing that cures the threshold or merits defects. Speech protections preclude liability regardless of repleading. The First Amendment protects cybersecurity research, as does California's anti-SLAPP law. The opinion doctrine, the Lanham Act's commercial-advertising requirement, and trade libel's special-damages requirement are legal deficiencies, not factual gaps that would benefit from another pleading.

For these reasons, Defendants Koi Corp. and PANW respectfully request that the Court: (1) dismiss the FAC with prejudice pursuant to Federal Rules of Civil Procedure 8, 12(b)(2), and 12(b)(6); (2) strike the FAC pursuant to California Code of Civil Procedure § 425.16; and (3) award Defendants their reasonable attorneys' fees and costs pursuant to § 425.16(c)(1). *Ketchum v. Moses*, 24 Cal. 4th 1122, 1131 (2001) (prevailing anti-SLAPP defendant is entitled to mandatory attorney fees).

Dated: June 30, 2026

Respectfully submitted,

By: _____
Michael Burshteyn
Vincent H. Chieffo
Nina D. Boyajian
Peter Wahby *(pro hac vice)*
Candra Connelly *(pro hac vice)*
Marcelo Barros
Holmes Hampton *(pro hac vice)*
**GREENBERG TRAURIG, LLP**

*Attorneys for Defendants*
*KOI SECURITY INC. and PALO ALTO*
*NETWORKS, INC.*

KOI CORP.'S AND PANW'S MOTION TO DISMISS AND ANTI-SLAPP MOTION TO STRIKE

ACTIVE 725792470