UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

MEETINGTV, INC.,

Plaintiff,

v.

KOI SECURITY INC., et al.

Defendants.

Case No.: 26-cv-1705-AJB-MMP

**ORDER DENYING WITHOUT PREJUDICE PLAINTIFF'S MOTION FOR LIMITED EXPEDITED DISCOVERY**

[ECF No. 31]

Pending before the Court is Plaintiff MeetingTV, Inc.'s ("Plaintiff") Motion for Limited Expedited Discovery Regarding Preservation, Deletion, Modification, and Availability of Koidex Records under Federal Rules of Civil Procedure ("Rule") 26 and 34. ECF No. 31. Defendants Koi Security Inc. ("Koi US") and Palo Alto Networks, Inc. ("PANW") (together "US Defendants") filed an opposition, to which Plaintiff replied. ECF Nos. 34, 39. The Court finds the motion suitable for determination on the papers and without oral argument pursuant to Rule 78(b) and Civil Local Rule 7.1(d)(1). For the reasons set forth below, the Court **DENIES** the motion.

# I. BACKGROUND

On March 18, 2026, Plaintiff filed the Complaint, initiating this action against Koi US, Koi Security Ltd. ("Koi Israel"), Amit Assaraf, Idan Dardikman, Tuval Admoni, Gal Hachamov, and Does 1–10. ECF No. 1. PANW was not a named Defendant in the Complaint. *Id.* On April 28, 2026, Koi US filed a motion to dismiss and a motion to strike under California's anti-SLAPP statute. ECF No. 11. On May 13, 2026, Plaintiff filed a First Amended Complaint ("FAC") adding PANW and Does 11-25 as Defendants. ECF No. 23. On June 30, 2026, US Defendants filed a motion to dismiss the FAC and motion to strike under California's anti-SLAPP statute. ECF No. 40.[1]

In the pending motion, Plaintiff seeks to compel early discovery concerning 18 browser extensions specifically identified in Defendant's publication *DarkSpectre: Unmasking the Threat Actor Behind 8.8 Million Infected Browsers* (the "DarkSpectre Report"). ECF No. 31 at 1.

Plaintiff is a "technology company focused on video meetings" that operates a "webinar search engine." ECF No. 23 ¶ 58. Plaintiff explains the "webinars indexed by Plaintiff's search engine are public in nature and are open to any member of the public to register and view. To facilitate its search engine, Plaintiff aggregates and indexes publicly available webinar URLs, metadata, titles, descriptions, dates, times, and registration links." *Id.* Furthermore, Plaintiff alleges it "provides a personal recording service enabling subscribers to record their own meetings called Zoomcorder." *Id.* ¶ 59.

Koi US is the "U.S. commercial and distribution subsidiary" of Koi Israel and "resells and distributes [Koi Israel's] platform[.]" ECF No. 40 at 19. PANW is "a global cybersecurity company that provides cybersecurity solutions and platforms across network, cloud, security operations, AI, and identity." *Id.* at 20.

---

[1] On the current record before the Court, there is no evidence of complete service of the FAC on Defendants Koi Israel, Amit Assaraf, Idan Dardikman, Tuval Admoni, and Gal Hachamov. Nor have these defendants appeared. *See* ECF No. 35.

Plaintiff alleges Koi US and Koi Israel are a cybersecurity firm that published the DarkSpectre Report on December 30, 2025. ECF No. 23 ¶ 8. Plaintiff claims Defendants relied on unverified conclusions of "Koi's . . . Wings AI platform," when they categorized Plaintiff's domains and browser extensions as malware tied to an alleged Chinese criminal organization called "DarkSpectre." *Id.* ¶¶ 8, 9. Plaintiff states the "consequences were immediate and devastating. Within hours of publication, major cybersecurity vendors, internet service providers, and network operators worldwide ingested the Report's false Indicators of Compromise (IOCs) and began blocking Plaintiff's domains." *Id.* ¶ 10.

Plaintiff argues when it filed the Complaint on March 18, 2026, Defendants listed Plaintiff's domains as "Critical" in their searchable database, "Koidex." ECF No. 31 at 8. However, Plaintiff claims "approximately 12 days after" it filed the Complaint, Koidex no longer returned the same results. *Id.* On April 9, 2026, Plaintiff represents it issued a formal preservation and anti-spoliation demand to Defendants requesting "preservation and recovery of records associated with the browser extensions identified in the DarkSpectre Report and sought assurances concerning the existence, location, and preservation of those records." *Id.* at 7.

Furthermore, Plaintiff asserts there are heightened preservation concerns due to PANW's "acquisition of the Koi entities" on or about April 14, 2026. *Id.* at 9. Plaintiff states corporate "acquisitions commonly involve system integration, database migration, infrastructure consolidation, personnel changes, and modifications to data-management practices. Such activities can complicate identification, preservation, and recovery of historical electronically stored information." *Id.*

In its motion, Plaintiff originally requests four forms of relief from the Court:

1. Leave to serve and require responses and production of responsive documents of twelve (12) requests for production,[2]

---

[2] Plaintiff requests the Court require the responses and responsive documents to be served and produced within fourteen (14) days of service of the Requests for Production. *Id.* at 18.

> 2. Require Defendants to "preserve all records, versions, backups, metadata, logs, AI-generated outputs, audit trails, version histories, archives, snapshots, restoration sources, and related electronically stored information associated with the 18 browser extensions[,]"
> 3. Require Defendants to "identify any affiliated entity, successor entity, acquired entity, custodian, contractor, employee, or third party that possesses, controls, maintains, or has access to records responsive to the discovery authorized by the Court[,]" and
> 4. Require Defendants to "identify whether any responsive records were affected by migration, consolidation, integration, retention-policy modification, platform transition, database migration, or other activities associated with Palo Alto Networks' acquisition of the Koi entities[.]"

*Id.* at 18. However, in Plaintiff's reply, it requests a phased approach for discovery by limiting the scope of the early discovery to:

> 1. Production of all current and historical versions of Koidex records for the [18 browser] extensions [,]
> 2. Documents sufficient to show the creation, modification, archival, restoration, replacement, regeneration, deletion, merger, or other alteration of those records[,] [and]
> 3. Documents sufficient to identify the repositories, databases, or systems where such records are (or were) maintained[.]

ECF No. 39 at 4.

Therefore, the Court analyzes Plaintiff's reduced-scope early discovery request as articulated in its reply. The Court highlights that in Plaintiff's limited request, it no longer seeks a preservation order from the Court. *See id.*

## II. LEGAL STANDARD

Rule 34 authorizes a party to:

> Serve on any other party a request within the scope of Rule 26(b) . . . to produce and permit the requesting party . . . to inspect, copy, test, or sample the following items in the responding party's possession, custody, or control . . . any designated documents or electronically stored information--including writings, drawings, graphs, charts, photographs, sound recordings, images, and other data or data compilations--stored in any medium from which information can be obtained either directly or, if necessary, after translation by the responding party into a reasonably usable form[.]

Fed. R. Civ. P. 34(a)(1)(A).

In turn, Rule 26(b)(1) defines the scope of discovery:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1).

As both parties acknowledge, discovery is generally not permitted until after the parties have conferred pursuant to Rule 26(f), which has not yet occurred in this case. *See* Fed. R. Civ. P. 26(d)(1). In the context of early discovery, courts apply a "good cause" standard to determine whether "the need for expedited discovery, in consideration of the administration of justice, outweighs the prejudice to the responding party." *Semitool, Inc. v. Tokyo Electrom Am., Inc.*, 208 F.R.D. 273, 276 (N.D. Cal. 2002). The Court weighs the following non-exclusive factors in considering whether expedited discovery is appropriate: "(1) whether a preliminary injunction is pending, (2) the breadth of the discovery requests, (3) the purpose for requesting the expedited discovery, (4) the burden on the defendants to comply with the requests, and (5) how far in advance of the typical discovery process the request was made." *Am. LegalNet, Inc. v. Davis*, 673 F. Supp. 2d 1063, 1067 (C.D. Cal. 2009) (citation omitted).

**III. ANALYSIS**

First, the Court reviews the breadth of the discovery requests to determine relevance under Rule 26(d)(1). Next, the Court weighs the *Am. LegalNet* factors to determine if good cause exists for granting early discovery.

Upon weighing the breadth and relevance of the requests, the *Am. LegalNet* factors to determine if good cause exists for granting early discovery, analyzing the anti-SLAPP statute, and in consideration of the administration of justice, the Court concludes Plaintiff has not established its need for early discovery outweighs the prejudice articulated by US

Defendants of producing records in response to Plaintiff's request at this early stage of the case. *See Semitool*, 208 F.R.D. at 276.

**A. Plaintiff's Requests are Overly Broad**

First, the party seeking to compel discovery, here Plaintiff, has the burden of establishing relevance under Rule 26(b)(1). *Alves v. Riverside Cnty.*, 339 F.R.D. 556, 559 (C.D. Cal. 2021). "District courts have broad discretion in determining relevancy for discovery purposes." *Surfvivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625, 635 (9th Cir. 2005) (citing *Hallett v. Morgan*, 296 F.3d 732, 751 (9th Cir. 2002)). This burden exists for early discovery requests as well as discovery requests in a normal course. *See Kachele v. El-Maasri*, No. 25-cv-3458-AGS-MMP, 2026 WL 972748, at *1 (S.D. Cal. Apr. 10, 2026) (explaining relevance and proportionality under Rule 26(b)(1) are considered for early discovery requests alongside other factors); *Chung v. San Diego Police Dep't*, No. 25-cv-2686-JES-KSC, 2026 WL 926714, at *7 (S.D. Cal. Apr. 6, 2026) (denying motion for early discovery where movant fell "short of the showing of relevance necessary for early discovery.")

If the party seeking to compel discovery meets the relevance burden, then the burden shifts to the responding party. "Once the propounding party establishes that the request seeks relevant information, '[t]he party who resists discovery has the burden to show discovery should not be allowed, and has the burden of clarifying, explaining, and supporting its objections.'" *Goro v. Flowers Foods, Inc.*, 334 F.R.D. 275, 283 (S.D. Cal. 2018) (citations omitted).

Plaintiff's requests, on their face, are overly broad and therefore seek information beyond what is relevant to the case.

The discovery requests, while narrowed in Plaintiff's reply, are overly broad. Plaintiff seeks, amongst other requests, documents "sufficient to identify the repositories, databases, or systems where such records are (or were) maintained[.]" ECF No. 39 at 4. The repositories, databases, or systems where the 18 extensions were maintained is indicative of Koidex's internal infrastructure and goes beyond information about the 18

extensions themselves. Similarly, "the creation, modification, archival, restoration, replacement, regeneration, deletion, merger, or other alteration of" the 18 extensions could net thousands of results and is unbounded in time. *Id.* Plaintiff's early discovery requests present an issue of data deletion or reorganization for the 18 extensions, but the requests themselves are far broader than a search for documents about how or why the search results changed.

In sum, Plaintiff fails at the first step, to establish relevance where the requests are overbroad. Ultimately, the Court weighs the *Am. LegalNet* factors below and the result is the same; the factors weigh against early discovery and the Court denies Plaintiff's motion.

### B. The *Am. LegalNet* Factors Weigh Against Granting Early Discovery

Looking at the totality of the factors, the Court finds they weigh against granting early discovery.

#### 1. The Burden of Compliance on US Defendants is Neutral

US Defendants fail to demonstrate the early discovery requests are overly burdensome. However, this factor is neutral because the requests are overbroad.

Plaintiff seeks information concerning 18 browser extensions, all of which are identified in the DarkSpectre Report. ECF No. 39 at 4. This information includes documents "sufficient to show the creation, modification, archival, restoration, replacement, regeneration, deletion, merger, or other alteration of those records" as well as documents sufficient to identify repositories, systems, and databases where the records are, or were, maintained. *Id.* US Defendants classify Plaintiff's requests as requiring production of "sensitive technical, security, corporate, and merits material before the parties negotiate a protective order, define ESI boundaries, exchange Rule 26 disclosures, or test the pleadings." ECF No. 34 at 10–11. US Defendants argue production before a protective order is in place cannot later be protected via protective order or confidentiality designation. *Id.* Additionally, US Defendants provide their claims of overreach for each individual RFP. *Id.* at 12–15.

First, the parties can negotiate a protective order before formal discovery opens.

Therefore, the Court finds US Defendants' argument about burden and harm due to lack of a current protective order unpersuasive. Second, the nature of early discovery permits discovery before the pleadings are necessarily "test[ed]" and Rule 26 disclosures completed. The Court finds US Defendants' general arguments regarding case posture unpersuasive where they are untethered from the instant case.

Second, the Court agrees with US Defendants where certain RFPs in Plaintiff's original request are overly burdensome, including but not limited to RFP 4 requesting documents sufficient to identify "custodians, personnel, contractors, employees, analysts, engineers, systems, or automated processes" associated with the 18 extensions. ECF Nos. 31 at 20; 34 at 14. While Plaintiff significantly narrows its requests in Reply, the Court finds the requests are still overbroad. ECF No. 39 at 4.

Third, Defendant does not argue pulling the requested records is overly burdensome. Defendant argues the Koidex records and version history are "wholesale production of the alleged merits evidence" but not *why* or *how* producing them are overly burdensome. ECF No. 34 at 13–14. Unlike *Apple Inc. v. Samsung Elecs. Co.*, where the Court denied a 30(b)(6) deposition request in early discovery due to undue burden including needing to "interview numerous employees involved in the design and marketing of five different products[,]" here Defendant fails to argue how or why pulling the records at this stage is overly burdensome. No. 11-cv-1846-LHK, 2011 WL 1938154, at *10 (N.D. Cal. May 18, 2011).

In sum, on this record, the Court finds the requests are overbroad. However, US Defendants have not established an undue burden to comply with the early discovery requests. Therefore, the burden of compliance factor is neutral.

**2. The Remaining Factors Weigh Against Granting Early Discovery**

On the preliminary injunction factor, there is no pending preliminary injunction; nor does Plaintiff assert it intends to file for a preliminary injunction. *See* ECF Nos. 31; 39 at 3. This factor weighs against granting early discovery.

Next, the requests are overly broad. This factor also weighs against granting early

discovery.

Looking at the purpose for early discovery, this factor weighs against granting early discovery. Plaintiff asserts early discovery is necessary where the 18 extensions "identified in the DarkSpectre Report ceased returning the reports that existed when this litigation commenced." ECF No. 31 at 14. Plaintiff claims the records have "already changed during this litigation," and "may involve dynamic AI-generated outputs that cannot be reliably recreated." *Id.* at 17–18. Plaintiff argues delay until the formal discovery period opens "heightens the risk that historical versions will become more difficult—or impossible—to reconstruct amid the AI fluidity and ongoing platform integration following Koi's acquisition by Palo Alto Networks." ECF No. 39 at 6. In support of this argument, Plaintiff quotes *Pod-Ners, LLC v. Northern Feed & Bean of Lucerne Ltd.*, 204 F.R.D. 675, 676 (D. Colo. 2002) for the proposition "federal courts have allowed expedited discovery prior to the Rule 26(f) conference specifically because the evidence sought was dynamic and 'at risk of being inadvertently destroyed or altered.'" ECF No. 31 at 12.

The Court finds Plaintiff's arguments unpersuasive. As Defendant correctly observes, the language Plaintiff quotes does not appear in *Pod-Ners*.[3] ECF No. 34 at 8. Plaintiff claims in its reply that it "inadvertently misquoted what should have been stated without quotation marks." ECF No. 39 at 5. However, this does not negate the Court's concern because *Pod-Ners* does not support Plaintiff's cited proposition. *Pod-Ners* does

---

[3] Misrepresenting language exists in a case when it does not implicates Rule 11. *See* Fed. R. Civ. 11(b). Plaintiff's Attorney Bradley Moores filed Plaintiff's motion with non-existent quotations. However, Attorney Moores has been terminated from the case. ECF Nos. 43, 44. Therefore, the Court does not issue an Order to Show Cause at this time. The Court reminds parties of their Rule 11 obligations and potential penalties for misrepresentations to the Court. *See, e.g., Oneto v. Watson*, 808 F. Supp. 3d 974, 980 (N.D. Cal. 2025) ($1,000 Rule 11 sanctions after attorney cited nonexistent and erroneous caselaw); *United States v. Hayes*, 763 F. Supp. 3d 1054, 1067 (E.D. Cal. 2025) (explaining "[c]ourts across the country have issued sanctions . . . for submitting fictitious case citations, fictious quotations, and related misrepresentations to the court[.]")

not involve inadvertent destruction or alteration of AI-generated outputs or even electronically stored information. It involves physical beans. The Court in *Pod-Ners* found:

> The beans at issue are commodities and subject to sale, resale, and consumption or use with the passage of time. Consequently, the plaintiff is entitled to inspect the beans and plants in the defendants' possession and to review documents concerning the sale of the beans by the defendants so that the beans may be traced and inspected wherever they now may be found. Further passage of time under the unique facts of this case makes discovery concerning the beans and plants unusually difficult or impossible.

*Pod-Ners,* 204 F.R.D. at 676. Indeed, AI-generated outputs are a far cry from physical beans. Plaintiff's reliance on *Pod-Ners* is unpersuasive.

Plaintiff fails to cite any other on-point case for its argument on AI-generated outputs being dynamic and fluid. Plaintiff's reliance on *Balboa Threadworks, Inc. v. Stucky, et al.*, No. 05-cv-1157-JTM-DWB, 2006 WL 763668 (D. Kan. Mar. 24, 2006) is also unconvincing. ECF Nos. 34 at 12–13; 39 at 5. As Defendant correctly points out, *Balboa* is "not an early-discovery case at all, but a routine mirror-imaging dispute that surfaced only after a scheduling conference, Rule 26(a) disclosures, Rule 33 and 34 discovery, mediation, a protective order, and a search-protocol dispute." ECF No. 34 at 15. In reply, Plaintiff acknowledges *Balboa* is not procedurally "on par" with Plaintiff but applies "in light of its addressing the manipulation of ESI." ECF No. 39 at 5–6.

The *Balboa* Court's discussion in 2006—twenty years ago—of formal discovery including mirror imaging computer equipment to preserve evidence is distinguishable. Plaintiff provides no evidence regarding the relevance nor applicability of mirror imaging computer equipment to AI-generated outputs. Not all ESI is created equally, and the Court finds the mirror-imaging analysis does not align with Plaintiff's argument regarding the dynamic nature of AI-generated outputs.

In sum, Plaintiff argues the dynamic nature of AI-generated outputs and risk of impossible reconstruction warrants early discovery. Defendant notes Plaintiff's supporting caselaw is weak. The Court agrees with Defendant and finds Plaintiff's rationale unpersuasive. This factor weighs against early discovery.

Finally, the early discovery request was made well in advance of the typical discovery process, when Plaintiff's concerns are better addressed as a preservation request. Allegations of record deletion and/or alteration present data preservation concerns but do not demonstrate good cause for early discovery. If the AI-generated outputs and other records associated with the browser extensions were not initially preserved, early discovery will not resolve that issue. As the Court ordered when granting Plaintiff leave to file a motion for early discovery, "[a]ll parties must review the undersigned's Civil Chambers Rules and 26(f) Conference Checklist, including regarding the preservation and collection of information." ECF No. 27 at 2. The 26(f) Conference Checklist includes the following instruction:

> The parties should confirm that they are preserving relevant evidence, including electronically stored information ("ESI"), and that proper litigation holds are in place. The parties should be wary of applying too narrow a definition of what constitutes relevant ESI, since a miscalculation could lead to the permanent loss of relevant information.

*Rule 26(f) Conference Checklist, U.S. District Court for the Southern District of California* at 1. The parties are on notice regarding their preservation obligations, and to be clear, AI-generated outputs related to Plaintiff's domains and browser extensions must be preserved.

In sum, this case is in its infancy, and Plaintiff has not met its burden to warrant early discovery at this juncture.

### C. US Defendants' Argument Regarding the Anti-SLAPP Statute is not Persuasive

US Defendants also argue their pending anti-SLAPP motion under California Code of Civil Procedure section 425.16 cuts against granting early discovery.[4] ECF No. 34 at 11. Section 425.16 provides for a stay of discovery as follows:

---

[4] The purpose of the "Anti-SLAPP" statute "is to protect individuals from meritless, harassing lawsuits whose purpose is to chill protected expression." *Metabolife Int'l, Inc. v. Wornick*, 264 F.3d 832, 837 n.7 (9th Cir. 2001).

> (g) All discovery proceedings in the action shall be stayed upon the filing of a notice of motion made pursuant to this section. The stay of discovery shall remain in effect until notice of entry of the order ruling on the motion. The court, on noticed motion and for good cause shown, may order that specified discovery be conducted notwithstanding this subdivision.

Cal. Civ. Proc. Code § 425.16(g).

US Defendants admit the anti-SLAPP statute's discovery stay is not automatic in federal court. ECF No. 34 at 7–8. Yet, US Defendants argue the statute's "policy merits weight in light of the extraordinary relief that [Plaintiff] seeks." *Id.* Since the Court finds Plaintiff's requests are overbroad and Plaintiff fails to establish good cause under the *Am. LegalNet* factors, the Court does not need to reach this policy argument.

## IV. CONCLUSION

In sum, upon reviewing the breadth of the discovery requests, analyzing the *Am. LegalNet* factors, considering the administration of justice, and acknowledging the pending anti-SLAPP motion, the Court finds Plaintiff has not established good cause to permit early discovery at this time. Accordingly, the Court **DENIES without prejudice** Plaintiff's motion. ECF No. 31.

**IT IS SO ORDERED**.

Dated: October 2, 2026

HON. MICHELLE M. PETTIT
United States Magistrate Judge